UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

Civil Action 2:13-MD-2433
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers


This document relates to: <u>ALL CASES</u>.


<u>DISCOVERY ORDER NO. 4</u>

**Plaintiffs' Motion to Compel Deposition of DuPont's Corporate Representative**

This matter is before the Court on Plaintiffs' First Motion to Compel, seeking an order

compelling Defendant, E. I. du Pont de Nemours and Company ("DuPont"), to appear for a

deposition on three topics (ECF No. 211), DuPont's Memorandum in Opposition (ECF No. 218),

Plaintiffs' Reply (ECF No. 224), and DuPont's Supplemental Declaration (ECF No. 239). For

the reasons that follow, Plaintiffs' First Motion to Compel is **GRANTED IN PART AND**

**DENIED IN PART**.

I.

All of the actions in this multidistrict litigation ("MDL") are personal injury or wrongful

death actions arising out of Plaintiffs' drinking of water allegedly contaminated with a chemical

known as C8 that DuPont discharged from its plant near Parkersburg, West Virginia. Plaintiffs

seek both compensatory and punitive damages.

The subject dispute involves Plaintiffs' February 3, 2014 Notice of Video Deposition of

DuPont pursuant to Federal Rule of Civil Procedure 30(b)(6). (ECF No. 219-5.) In this Notice

Plaintiffs identified the following three deposition topics:

1.      The nature, extent, substance, and timing of DuPont's knowledge of information relating to any potential hazards or risks of harm to humans from exposure to C8, including the nature, extent, substance and timing of any changes in the state of the medical, scientific, and/or industrial knowledge available to DuPont that affected any assessment or understanding by DuPont of such potential hazards and risks.

2.      The nature, extent, substance, and timing of any changes over time to any applicable industry standards that affected in any way DuPont's assessment or understanding of any potential hazards or risks of harm to humans from exposure to C8.

3.      The nature, extent, substance, and timing of any potential changes to any corporate identity or structure, assets, or liability coverage (including any insurance) within DuPont, including through any proposed spin-off or corporate reorganization, that could affect the identity or assets of whatever entity retains responsibility for the obligations and liabilities of DuPont under the 2005 Class Action Settlement Agreement in the *Leach* Case or for the claims asserted in the MDL.

(*Id.* at 2.) DuPont objected to Plaintiffs' Notice of Deposition and refused to make a witness

available to testify on any of the three topics. After repeated, unsuccessful efforts to resolve

DuPont's objections extrajudicially, Plaintiffs filed the subject Motion to Compel, seeking a

Court order compelling DuPont to appear for deposition on the identified topics and to pay the

costs they incurred in bringing the motion.

In its Memorandum in Opposition to Plaintiffs' Motion to Compel, DuPont contends that

the first two topics set forth in Plaintiffs' Notice of Deposition to Dupont are improper on

timeliness grounds and because these topics "have been covered in numerous prior depositions."

(DuPont's Opp. 8, ECF No. 218.) In support of its timeliness argument, Dupont relies upon

Pretrial Order Number Eight, which memorialized the September 5, 2013 in-person status

2

conference and provides in pertinent part as follows:

> The Court discussed with the parties the anticipated scope of discovery. The parties briefly reviewed with the Court the discovery that has been accomplished in the past litigation between the Plaintiffs and DuPont, including in *Leach v. E. I. du Pont de Nemours & Co.,* No. 01-C-608 (W. Va. Cir. Ct.). A conservative estimate is that this discovery has produced, *inter alia,* well over one million documents, hundreds of answers to interrogatories and admissions, and approximately forty-eight (48) depositions. The Court starts with the premise that all of this discovery is available for use in this MDL, with supplementation to occur as necessary and as described in the Federal Rules of Civil Procedure. . . . The depositions taken in the prior cases may be used in this case to the extent permitted by law. No party may re-depose any such witness, except upon motion and a showing of good cause. Any such motion shall be filed no later than three (3) months from the date of this Order.

(Pretrial Order No. 8 1–2, ECF No. 50.) In support of its contention that the topics identified are

duplicative of testimony already obtained, DuPont identified a number of depositions of fact

witnesses and two depositions of DuPont pursuant to Rule 30(b)(6). Plaintiffs obtained and

reviewed the deposition transcripts that DuPont identified as covering the same subject matter

and dispute DuPont's characterization of the proposed topics as duplicative of testimony already

obtained.

In Discovery Order Number Three, the Court rejected DuPont's reliance upon prior fact

witness testimony to conclude that the topics noticed in the subject Notice of Deposition are

improper on duplicity grounds, explaining as follows:

> In *Smith v. General Mills, Inc.*, No. C2 04-705, 2006 WL 7276959 (S.D. Ohio Apr. 13, 2006), this Court analyzed this very issue and concluded "the fact that individually named witnesses have testified concerning a subject is generally no obstacle to a 30(b)(6) deposition on the same subject." 2006 WL 7276959 at *5–6. In reaching this conclusion, the *Smith* Court relied upon other courts' rejection of this argument, the language of Rule 30(b)(6), and pointed out that fact witnesses (as contrasted with Rule 30(b)(6) deponents) "are or were under no duty to educate themselves about all information available to the corporation of a particular topic." Moreover, as the Court recognized, fact witnesses' testimony "does not bind [the corporation] in the same way as Rule 30(b)(6) testimony would." *Id.*

3

> For the reasons articulated in *Smith*, the Court rejects DuPont's reliance upon prior fact witness testimony to conclude that the topics noticed in the subject Notice of Deposition are improper on duplicity grounds.

(Disc. Order No. 3, ECF No. 237.) Given the parties' continued dispute over whether the topic areas in the subject Notice of Deposition are duplicative of prior corporate-representative testimony, the Court directed DuPont to file those portions of the prior two Rule 30(b)(6) depositions that it maintained cover the topic areas set forth in the subject Notice of Deposition. With regard to the fact witness deposition, the Court instructed as follows:

> [I]n the event *the parties have agreed* to stipulate to the use of a particular individual, fact witness's testimony as the corporate testimony of DuPont, DuPont must also attach excerpts of any such testimony covering the same topic areas set forth in the subject Notice of Deposition.

(*Id.* (emphasis added).)

On April 15, 2014, DuPont filed the Declaration of Defense Counsel Mr. Mace, attaching four depositions and a copy of email correspondence from Mr. Mace to Plaintiffs' counsel Mr. Bilott. (ECF No. 239.) The attached depositions included the December 10, 2007 and January 11, 2013 Rule 30(b)(6) depositions of Dr. Robert Rickard, as well as the January 9, 2013 fact-witness deposition of Dr. Rickard and the July 31, 2002 fact-witness of deposition of Dr. Gerald Kennedy. (ECF Nos. 239-1, 239-2, 239-3, and 239-4.) The attached email correspondence from Mr. Mace to Mr. Bilott, which Mr. Mace sent after 4:00 p.m. on April 15, 2014, provides in pertinent part as follows:

> Dupont hereby stipulates that the following two individual depositions may be treated as if they were 30 b 6 depositions of DuPont with respect to DuPont's knowledge and assessment of the potential harm or risk to humans from being exposed to PFOA and changes in industry standards or the state of knowledge available to DuPont on those issues:

4

January 9, 2013 deposition of Dr. Robert Rickard

July 31, 2002 deposition of Dr. Gerald Kennedy.

(Apr. 15, 2014 Mace Corres, ECF No. 239-5.)

On April 17, 2014, the Court held an in-person telephonic status conference. During this conference, Plaintiffs' counsel informed the Court that Plaintiffs did not agree to stipulate to the use of the January 9, 2013 testimony Dr. Robert Rickard or the July 31, 2002 testimony of Dr. Gerald Kennedy as the corporate testimony of DuPont.

Turning to the third and final noticed deposition topic, which relates to DuPont's announced corporate reorganization, Plaintiffs assert that they included this topic because DuPont rebuffed their efforts to obtain this information through initial disclosures and formal written discovery. Plaintiffs maintain that the information identified in the final topic is relevant to their claims for punitive damages and will assist them in formulating their settlement and litigation strategy.

DuPont objects to the third deposition topic on relevancy grounds. DuPont characterizes topic three of the noticed deposition as impermissibly seeking prospective/future financial information as contrasted with permissible discovery of its current net worth and financial condition. (DuPont's Opp. 10–1, ECF No. 218.) DuPont contends that prejudgment discovery relating to the "spin-off" is unwarranted given the absence of any basis to claim fraudulent transfer. In support of this contention, DuPont describes the proposed "spin-off" as follows:

> [T]he 'spin-off' that is being contemplated will result in the creation of a new, public, shareholder-owned entity that will remain an industry leader, will be well-capitalized, a Fortune 500 company, and will be the continuation of a business segment that generated approximately $7 billion in revenues in 2012 and has an enterprise value of more than $10.1 billion.

5

(*Id*. at 11–12.) DuPont therefore concludes that discovery seeking "information regarding the referenced 'spin-off' is irrelevant to the claims and defenses in the MDL [and] is not reasonably calculated to lead to discovery of admissible evidence." (*Id*. at 5,7.)

## II.

Federal Rule of Civil Procedure 37 permits a party to move for an order compelling disclosure or discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite to a motion to compel has been met in this case.

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In considering the scope of discovery, a court may balance a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting

6

*Bush*, 161 F.3d at 367).

III.

**A.     Proposed Deposition Topics One and Two—DuPont's Knowledge of Potential Hazards**

As a preliminary matter, DuPont's timeliness argument is misplaced and reflects its apparent confusion between fact witnesses and corporate party depositions under Rule 30(b)(6). Per Pretrial Order Number Eight, discovery accomplished between the parties in *Leach* is available for use in the MDL. Pretrial Order Number Eight further required any party seeking to re-depose a "witness" who had been deposed in a prior action to file a motion demonstrating good cause within three months of the Order. (Pretrial Order No. 8 2, ECF No. 50.) As explained in Discovery Order Number Three and summarized above, legally significant differences exist between a fact witness and a Rule 30(b)(6) party deponent. The Court therefore declines DuPont's request to extend Pretrial Order Number Eight's deadline for identifying fact witnesses to a Rule 30(b)(6) party deponent.

The Court agrees, however, that to the extent a corporate representative has already offered testimony that bound DuPont on a particular topic, good cause does not exist to permit inquiry into the same subject area. As set forth above, DuPont has identified excerpts from the December 10, 2007 and January 11, 2013 Rule 30(b)(6) depositions of Dr. Robert Rickard that it contends cover the same subject matter identified in the first two topics set forth in the subject Notice of Deposition. DuPont also offers excerpts from the January 9, 2013 fact-witness deposition of Dr. Robert Rickard and the July 31, 2002 fact-witness deposition of Dr. Gerald Kennedy. The Court, however, declines to consider whether the testimony offered in these fact-

7

witness depositions is duplicitive of the topics identified in the subject Notice of Deposition.

Discovery Order Number Three expressly indicates that DuPont was to provide excerpts from

fact-witness depositions for the Court's consideration only "in the event *the parties have agreed*

to stipulate to the use of a particular individual, fact witnesses testimony as the corporate

testimony of DuPont . . . ." (Disc. Order No. 3, ECF No. 237 (emphasis added).) DuPont did not

solicit Plaintiffs' agreement. Moreover, Plaintiffs' represent that they do not agree to DuPont's

unilateral stipulation. As the Court explained in Discovery Order Number Three, as contrasted

with Rule 30(b)(6) witnesses, fact witnesses are under no duty to educate themselves about all

information available to the corporation on a particular topic. Thus, absent an agreement to the

contrary, the Court limits its consideration to the two prior corporate representative depositions

to assess whether they have already provided testimony on deposition topics one and two.

Having reviewed the prior corporate-representative deposition notices and excerpts, the

Court concludes that there is some overlap between the noticed topics and the 2007 deposition on

several issues post-dating the 2005 *Leach* settlement agreement. (*See* Rowe Plaintiffs' Revised

Notice of Rule 30(b)(6) Videotape Deposition of DuPont 2–3 at topics one, two, and four, ECF

No. 219-13; Dec. 12, 2007 Rickard Dep. Excerpts, ECF No. 239-3.) In correspondence with

DuPont's counsel, Plaintiffs' counsel conceded as much and offered to limit its areas of inquiry

as follows:

> Based upon our discussion this morning, I went back and reviewed Dr. Rickard's
> testimony on December 12, 2007, in the *Rowe/Scott* matter, along with
> correspondence relating to the scope of the specific topics (and the actual deposition
> notice attached as Ex. 1 to the deposition) for which Dr. Rickard was designated by
> DuPont to testify. Although that prior deposition sought testimony relating to certain
> issues post-dating the *Leach* settlement in February 2005, that prior deposition did
> not encompass the same pre-2005 *Leach* settlement issues addressed in the PSC's

8

current notice. We would be willing to insert language into the current notice to expressly limit topics 1 and 2 to the pre-*Leach* settlement (pre-February 2005) time frame, if that would resolve DuPont's current concerns. If there is any other testimony from *Leach* or any other Prior Action that DuPont understands to represent the 30(b)(6) testimony of DuPont on any of these issues, please let us know so that we can finalize the scope of the topics and move forward with the deposition.

(Feb. 11, 2014 Billot Corres., ECF No. 219-6.)

 The January 11, 2013 Rule 30(b)(6) deposition of Dr. Robert Rickard likewise touches upon some of the areas identified in the subject Notice of Deposition. But again, the overlap is not substantial and primarily involves DuPont's knowledge and interpretation of information or studies post-2005. (*See* Little Hocking's Notice of Fed. R. Civ. P. 30(b)(6) Deposition of DuPont 12–13 at ¶¶ 22, 25, and 27, ECF No. 219-12; Jan. 11, 2013 Rickard Dep. Excerpts, ECF No. 239-1.) Although Dr. Rickard generally references a few earlier studies, he does not offer testimony concerning the extent, substance, and timing of DuPont's knowledge. Instead, Dr. Rickard mentions a couple of earlier studies within the context of responding to inquiries regarding DuPont's decisions concerning Lubeck's water supply and its current view of C8 as of the date of the deposition. (*See, e.g.*, Rickard Dep. Excerpts 263–91, ECF No. 239-1.)

 Based upon the foregoing, the Court finds that Plaintiffs' counsel's February 11, 2014 proposal to limit the scope of topics one and two to the pre-*Leach* settlement time frame is reasonable and appropriate. Accordingly, DuPont must appear for a deposition on the first two topics specified in the subject Notice of Deposition, but the scope of the deposition is limited to the pre-*Leach* settlement (pre-February 2005) time frame.

**B. Proposed Deposition Topic Three—"Spin-Off Entity"**

 The Court concludes that Plaintiffs are entitled to discover information relating to

DuPont's financial condition in light of their non-speculative claims for punitive damages. *See In re Heparin Prods. Liab. Lit.*, 273 F.R.D. 399, 406–09 (N.D. Ohio 2011) ("[A] party's financial position is relevant to a punitive damages claim, and therefore such discovery is permissible."); *United States v. Matusoff Rental Co.,* 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discovery information relating to the defendant's financial condition in advance of trial."). As the court in *In re Heparin* noted, both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have "recognized the relevance of a party's financial position with regard to the assessment of punitive damages." 273 F.R.D. at 407 (citing *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 462 n.28 (1993); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21–22 (1991); and *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 649 (6th Cir. 2005)).

The issue, then, is the permissible scope of such discovery. On this point, upon surveying a number of decisions, the court in *In re Heparin* concluded that "[m]ost courts addressing the proper scope of financial discovery have limited such discovery to the period providing a picture of the defendant's current financial condition and net worth, usually the most recent year or two." 273 F.R.D. at 409–10 (collecting cases). The types of discoverable information include financial reports, information relating to net worth, tax returns, balance sheets, and revenue or earnings projections/results. *Id.* (collecting cases analyzing the proper scope of financial discovery as it relates to punitive damages claims).

DuPont's contention that Plaintiffs impermissibly seek discovery regarding its future rather than its current financial condition is unavailing. Plaintiffs are not asking DuPont to create

new documents forecasting the revenue or predicting the book value of the "spin-off" entity for years to come. Instead, Plaintiffs seek *existing* information that is available about the financial condition of the "spin-off" entity. DuPont has already offered some information about this entity, including its estimated revenues and enterprise value (based upon the existing business segment this entity will operate).[1] (*See* DuPont's Mem. in Opp. 11–12, ECF No. 218.) DuPont's representations to the press or briefs filed in this action, however, fail to satisfy its discovery obligations. Instead, DuPont must produce existing documents reflecting (1) the timing of the change; (2) which entity will retain the obligations and liabilities under the 2005 Class Action Settlement Agreement in the *Leach* Case; and (3) the financial information for the entity retaining the obligations and liabilities, including documents reflecting the entity's estimated net worth, assets, liabilities, revenue, *etc.* To the extent some of the information is publically available, such as in a United States Securities and Exchange Commission Form 10-K, DuPont may designate where that information has been published.

At this juncture, however, the Court declines to compel DuPont to offer a corporate representative to testify regarding topic three. Courts allowing discovery of a party's financial condition relative to a claim for punitive damages generally contemplate written discovery. Consistently, in their Reply, Plaintiffs appear to recognize that production of written documents reflecting the financial condition of a party is preferable to obtaining such information via deposition testimony:

> Plaintiffs would not have needed to seek a corporate deposition on this topic at all, if DuPont had responded to any of the other forms of discovery Plaintiffs tried *over*

---

[1] DuPont has also represented that spin-off should be completed in early 2015, prior to the Fall 2015 scheduled commencement of the bellwether trials.

*the last eight months* (voluntary disclosures, interrogatories, document requests, stipulations) in an effort to obtain this same information.

(Pls.' Reply 8, ECF No. 224.) Accordingly, DuPont is **DIRECTED** to produce the documents outlined above **WITHIN FOURTEEN (14) DAYS** of the date of this Discovery Order.

**C.    Attorneys' Fees**

Under the circumstances presented here, the Court declines to award attorneys' fees and costs. This is not the case where DuPont has refused to engage in good-faith discussions with Plaintiffs regarding the disputed matter. Further, the Court agrees with DuPont that the scope of the noticed deposition duplicates corporate testimony offered in a prior action insofar as Plaintiffs seek to obtain testimony concerning certain issues post-dating the *Leach* settlement in February 2005. Finally, there is a dearth of authority considering the appropriateness of obtaining financial information for a company to be formed in the future relative to a claim for punitive damages. The Court cautions, however, that it is growing weary of the parties' increasingly combative tone and resolute obstinance in their negotiations regarding discovery in this case. In the past month alone, the parties have filed four motions to which the Court has been required to turn its immediate attention and devote a significant amount of time to resolve. The Court may not be as lenient in the future with respect to imposition of sanctions.

**IV.**

For the reasons set forth above, Plaintiffs' First Motion to Compel is **GRANTED IN PART AND DENIED IN PART**. (ECF Nos. 211.) DuPont is **ORDERED** appear for a deposition on the first two topics specified in the subject Notice of Deposition, but the scope of the deposition is limited to the pre-*Leach* settlement (pre-February 2005) time frame. DuPont is

further **DIRECTED** to produce information relating to its financial condition and its "spin-off"

entity as set forth above **WITHIN FOURTEEN (14) DAYS** of the date of this Discovery Order.

**IT IS SO ORDERED**.


_4/24/2014_
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**


**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**