1

1                     UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
2                        EASTERN DIVISION

3

    IN RE:  E. I. du PONT de NEMOURS AND .  CASE NO. 2:13-md-2433
4   COMPANY C-8 PERSONAL LITIGATION      .
                               .  COLUMBUS, OHIO
5                         .  FEBRUARY 26, 2015
                         .  10:00 A.M.
6                         .
    . . . . . . . . . . . . . . . . . .
7

    TRANSCRIPT OF THE PROCEEDINGS OF THE IN-PERSON STATUS CONFERENCE
8   BEFORE THE HONORABLE EDMUND A. SARGUS, JR., UNITED STATES DISTRICT
    JUDGE; AND THE HONORABLE ELIZABETH PRESTON DEAVERS, UNITED STATES
9   MAGISTRATE JUDGE

10  APPEARANCES FOR THE PLAINTIFFS:

11  MICHAEL A. LONDON, ESQ.; ROBERT A. BILOTT, ESQ.; DAVID J. BUTLER, ESQ.

12  FOR THE DEFENDANT E. I. du PONT de NEMOURS AND COMPANY:

13  DAMOND R. MACE, ESQ.; C. CRAIG WOODS, ESQ.

14                      - - -

15

16

17

18

19

20

21

22

23

24

25          LAURA L. SAMUELS, OFFICIAL FEDERAL COURT REPORTER
                 (614) 719-3245

```
 1                              Thursday Morning Session

 2                              February 26, 2015

 3                                  -  -  -  -  -

 4              CHIEF JUDGE SARGUS:  Good morning to all of you.  Please

 5      have a seat.  Nice to see all of you.  Seriously I mean that.  I

 6      kid you sometimes that I don't mean it always, but I mean it

 7      today.

 8              MR. MACE:  We will take it when we can get it, Your

 9      Honor.

10              CHIEF JUDGE SARGUS:  We're on the record, too.

11              Well, my first order of business, you may have heard, but

12      the Engle tobacco cases are settling, so I guess hope springs

13      eternal with all MDLs, including this one.  But I got a

14      notification from the judge, actually out of Massachusetts, who

15      has been organizing the visiting judges to come in, and you can

16      imagine he was pretty ecstatic.  The case that I had there is

17      still on appeal.  I don't know what's going to happen with that,

18      but we'll find out.

19              So we have a number of items on the agenda, and we'll

20      just walk right through what you've listed for us.  Let's talk

21      about the initial case time lines and the report on the pretrial

22      order.  How are we doing with those items?

23              MR. LONDON:  Your Honor, I mean -- Michael London, good

24      morning, Your Honor.

25              CHIEF JUDGE SARGUS:  Good morning.
```

3

1          MAGISTRATE JUDGE DEAVERS:  Good morning.

2          MR. LONDON:  I think things are moving along quite well.

3   The initial pretrial order, we provided a draft to Mr. Mace, and

4   he's -- we spoke about it yesterday or the day before.  So the

5   Court is aware of what to expect when this comes in, and I think

6   it's due tomorrow to the Court, but we would, perhaps, like

7   another week to finalize it.  It's going to set forth the timing

8   for the exchange of witness lists, exhibit lists, deposition

9   designations, a time line for motions *in limine,* and just so

10  between perhaps June and the September trial date, the Court is

11  aware of what's going on, and the parties are aware of what the

12  obligations are for each.

13          So it's not really a contentious document.  It's trying

14  to figure out all this work within a short amount of time and

15  providing each side an ample opportunity to respond and to object,

16  when necessary.

17          CHIEF JUDGE SARGUS:  So you would like an extra week?

18          MR. MACE:  I think two weeks may be better, Your Honor --

19          MR. LONDON:  Okay.

20          MR. MACE:  -- but I agree with Michael, Mr. London, that

21  I don't see any roadblocks to this.  He and I had talked about

22  some concepts.  He has incorporated virtually all of them in here

23  already.  We talked about a couple issues yesterday that we need

24  to further confer.

25          So you Courts are aware, we both have agreed that, which

1    I think really helps a trial, 48-hour notice during the trial

2    before you call a witness.  So I was glad that we could agree on

3    that.  And we both have agreed that there will be a jury

4    questionnaire, if Your Honor agrees.  So we've got some things

5    built in here that we think are going to help make both jury

6    selection and the actual conduct of the trial go as efficiently as

7    possible.

8              As Mr. London indicated, we had some concerns with, for

9    example, depo designations, that we have enough time to respond.

10   So we have to look at the time line.  That's the main thing that

11   we're looking at.

12             And the staging between the two first trials, this is

13   supposed to cover the first two trials, and I think we're on the

14   same page that it probably makes sense to do it all in one order

15   rather than a separate order for the Bartlett trial and a separate

16   one for the Wolf trial.  But I need to get out a calendar and

17   really plot these and make sure the dates work.

18             CHIEF JUDGE SARGUS:  And the 14 days are not going to

19   bump into any dates that are going to be in this order?

20             MR. MACE:  No, Your Honor.

21             MR. LONDON:  The earliest date in this order, as I

22   proposed it with me using a calendar, would be the witness lists

23   due by June 5 for the plaintiffs.  And, obviously, the defendants

24   would be staggered after that.

25             So what we even could propose, Your Honor, is that we

1    provide this within two weeks, and perhaps we can discuss it, if

2    necessary, at the next status conference --

3        MR. MACE:  Yes.

4        MR. LONDON:  -- which, presumably, would be at the end of

5    March to the extent that the Court didn't just want to sign the

6    proposed order and wanted to discuss it.

7        CHIEF JUDGE SARGUS:  I have no problem.  We'll push this

8    back two weeks then.

9        MR. MACE:  Yes, Your Honor.  And, you know, one issue

10   Mike and I, Mr. London and I, spoke about yesterday, that I mean I

11   guess we could get your Court's leaning on, but I have seen it

12   done differently in different courts throughout the country, what

13   I have found works best is the parties agree that witnesses,

14   you're preferred live, and they come once, and all parties'

15   questioning happens at the same time.  So you're not bringing the

16   same witness back.

17       CHIEF JUDGE SARGUS:  I mean that's one of the differences

18   in the rules of evidence between the state and federal system in

19   Ohio.  My preferred way -- I use the Ohio rule actually, not the

20   federal rule -- so when a witness testifies, I mean I wouldn't

21   compel you, unless you all agree, that you must question at that

22   time, but -- well, actually, I'm sorry, that would be the other

23   side's calling your witness as if on cross.  But on a witness

24   called by the plaintiffs, let's say, the federal rule says you are

25   limited to the scope of direct.  The state rule says, anything

1     relevant.

2            All that means is that they would have to call them back

3     in their case-in-chief if they want to get beyond what you've

4     asked that still might be relevant.  There's no reason to do that.

5     I think we all agree, we want to get somebody on and off one time.

6     There may be some exceptions to that, but I think we ought to

7     follow that as a general principle.

8            MR. MACE:  I think the thing we're still conferring on is

9     with regard to depos.  I think Mr. London was still thinking about

10    the live witnesses.  But with regard to depos, again my preference

11    is that everybody's reading is coming in at one time so you don't

12    have duplicative readings coming in later, and I think --

13           MR. LONDON:  We understand the Court's suggestion on live

14    witnesses, and I think that, frankly, is a witness-by-witness

15    issue.  But --

16           CHIEF JUDGE SARGUS:  Yes.

17           MR. LONDON:  -- and so we understand the inconvenience

18    of --

19           CHIEF JUDGE SARGUS:  Yes.

20           MR. LONDON:  -- schlepping people across the country.

21    Deposition designations, again, Mr. Mace raised this yesterday or

22    two days ago, we are probably going to be briefing.

23           So just by putting this in perspective, and I think it's

24    absolutely not ripe now nor would it be ripe for this order, but

25    if we designate four lines from a witness whose testimony we would

1      like to call, that we can call but we're going to read his

2      testimony into the record as a deposition designation, du Pont has

3      an opportunity to do counter designations, perhaps, for whatever

4      purpose.

5           We believe under -- and their argument is going to be

6      under the rule of completeness, they should have the opportunity

7      do this now.  We believe that there is ample case law that

8      suggests because it's a deposition, not a live witness, if they

9      want to get whatever they want from that deposition, they should

10     not muddy the testimony that we're getting right now, and they can

11     simply read it during --

12          CHIEF JUDGE SARGUS:  I just had this exact issue

13     yesterday in a case that was set for trial on Monday, but an hour

14     later the defendant decided to plead.

15          Here's how I see it, and this is all under evidence rule

16     106, as I remember it.  So we're looking at -- You know, the rule

17     actually says, other items that in fairness, is the phrase.  So my

18     just general view -- I don't have anything before me -- would be

19     that if one side offers, let's just say, a snippet of a

20     deposition, and there's something before and after that relates to

21     the same subject matter, that seems to be, in fairness, if one

22     side says, look, you need to get the next answer to the question

23     to really make this complete, that's one scenario.

24          The other scenario is, but there are five other issues

25     unrelated to the first issue that we want to get it in now just

8

1    because it's the same deponent, I would be less inclined to do

2    that.  I mean you want completeness on the topic testified to --

3            MR. LONDON:  And --

4            CHIEF JUDGE SARGUS:  -- but not to other topics.

5            MR. LONDON:  And that's right, judge.  I think that's the

6    position that we would follow as well.

7            I think this is completely not ripe right now because we

8    haven't designated anything, and we haven't seen the counter

9    designations.  If the counter is, you need the question before,

10   we're not going to object.  If the counter is, we need the next 45

11   pages, we may have problems.  So, perhaps, this is a foreshadowing

12   issue of the June or July time period.

13           CHIEF JUDGE SARGUS:  Right.

14           MR. MACE:  Let me just put a clarification because I

15   think in the hypothetical that's been talked about, where it's a

16   snippet, it really is a few lines, that's one thing.  But where

17   they are essentially putting in a third of the deposition or half

18   the deposition, and we just need a few more --

19           CHIEF JUDGE SARGUS:  It's their half.

20           MR. MACE:  Right.

21           CHIEF JUDGE SARGUS:  And I mean that's what really was,

22   yesterday was, that there has to be context, too.  I would really

23   have to see what it is each side is proposing factually.  But as a

24   general proposition, I don't necessarily disagree, but I think

25   that's where -- those are sort of the parameters.

1      MR. LONDON:  That makes sense, thank you.

2      CHIEF JUDGE SARGUS:  All right.  That, I think, takes us

3 to the schedule of your expert depositions.  Are we on track with

4 that?

5      MR. LONDON:  We have a color-coded calendar.  I must say

6 we are on track with that.  I believe all the depositions have

7 been scheduled with the exception of one defense witness we're

8 waiting on --

9      MR. MACE:  No, that's not true.

10      MR. LONDON:  Oh, does that --

11      MR. MACE:  Everything has been --

12      MR. LONDON:  Oh, then --

13      MR. MACE:  Everything -- I'm sorry, Mike, I didn't mean

14 to interrupt.

15      MR. LONDON:  We're all -- I'm sometimes a day or so

16 behind the actual scheduling, although I read my e-mails, but it

17 looks like they're all set.

18      CHIEF JUDGE SARGUS:  One thing that I want to warn you

19 about, and it came up yesterday, they had these great submissions

20 of:  Orange would be what the plaintiffs were offering and yellow

21 was what the defendants were offering on these transcripts that

22 went on for thousands of pages.

23      MR. BUTLER:  Oh, no.

24      MR. MACE:  Color blind.

25      CHIEF JUDGE SARGUS:  They did all that, and I'm color

1  blind.  You want to be careful when you submit these, you don't

2  have me screw this all up.

3        MR. LONDON:  Note to self.

4        MR. MACE:  Just to supplement what Mr. London said on the

5  expert scheduling, so we have -- and there has been cooperation

6  between the parties on it.  I mean we're doing some of these on

7  Saturday and Sunday evenings, but we've gotten them all scheduled.

8        We had an issue where we thought these were going to

9  start in February, and they're not starting until March.  So -- We

10 also have an agreement that our expert on the same topic goes

11 after their expert on that topic.  So what it has necessitated is

12 by agreement of the parties, I think the depos go until April 16

13 instead of April 2.  But as long as the Court has no problem with

14 that --

15       CHIEF JUDGE SARGUS:  Well, we're going to talk about the

16 pending motions for summary judgment in just a moment.  But are

17 these depositions going to be tied to any additional motions for

18 summary judgment?

19       MR. MACE:  I don't believe so, Your Honor.

20       CHIEF JUDGE SARGUS:  Then I wouldn't be concerned.  If

21 it's going to push back the motion for summary judgment dates at

22 all, I'd be worried about that.  But hopefully that doesn't

23 implicate motions.

24       MR. MACE:  I guess the one thing that I would raise, Your

25 Honor, so Mr. Amter's deposition, which is one of the plaintiffs'

1    experts, at this point I would anticipate that we're going to --

2    he's going to be part of a motion to exclude some or all of his

3    testimony --

4        CHIEF JUDGE SARGUS:  A *Daubert* motion?

5        MR. MACE:  Yes, sir.

6        CHIEF JUDGE SARGUS:  Okay.

7        MR. MACE:  So --

8        CHIEF JUDGE SARGUS:  We want those all fleshed out well

9    in advance of trial, of course.

10       MR. MACE:  But he raises similar issues to three of the

11   other plaintiffs' experts.  So I think we'll be able to flesh

12   those all out because our current due dates for *the Daubert*

13   motions is April 6.  So my current anticipation, Your Honor, would

14   be to go ahead and file on that date with the understanding

15   hopefully -- We may not have his transcript until the week

16   following --

17       CHIEF JUDGE SARGUS:  Well, a week won't make a

18   difference.  But just be sensitive, what we don't want to do is

19   push these so close to trial that you're going to want to know

20   who's in and who's out.

21       MR. LONDON:  I think in accordance with PTO 9, the

22   summary judgment motions are due by April 6.  Hopefully, that

23   answers the question.  The last plaintiffs' expert deposition is

24   April 3, Dr. Amter that Mr. Mace just referred to.  So I would not

25   expect that summary judgment motions need to be extended beyond

1    the April date.

2            The depositions that are after that April date are

3    defense witnesses.  And it's -- I don't think it's going to impact

4    our summary judgment/*Daubert* motions.

5            CHIEF JUDGE SARGUS:  Okay.

6            MR. MACE:  So -- and my only clarification, Your Honor,

7    we're still fully intending to file by April 6.  I just would want

8    the understanding that we may need to supplement our exhibits with

9    Dr. Amter's deposition once it's available.

10           CHIEF JUDGE SARGUS:  If we're just waiting for a

11   deposition, I don't think that that's going to be a problem.

12           MR. MACE:  Thank you.

13           CHIEF JUDGE SARGUS:  I wouldn't -- We wouldn't be working

14   on it until at least the second brief was filed anyway, if not the

15   third.  So --

16           MR. MACE:  Good.

17           CHIEF JUDGE SARGUS:  All right.  And then the next is

18   pending motions.  The motions for summary judgment are being

19   reviewed.  This is an FYI.  You've all met Penny Barrick.  She's

20   not here.  She's skiing this week.  But starting Monday, we have

21   an MDL clerk, which is really a staffing description because that

22   person will pick up the work Penny normally does, and Penny, who

23   has been with this case and will continue to be with the case,

24   will pick up the MDL work.  So she will be assigned as of Monday

25   full time on this case.  So those things will move.  And then

1    there are some discovery issues that Judge Deavers is working on.

2    So you can expect some decisions in the next few weeks on all of

3    this stuff.  All right.

4         And then the fourth item, these are matters not fully

5    briefed, so you can expect we'll -- we won't decide until all the

6    briefs are in.  We try to do that.

7         MR. MACE:  That's a novel concept.

8         CHIEF JUDGE SARGUS:  And then the fifth item is the

9    process for trials three and four.  And you'll remember that I had

10   mentioned that we would use the -- I wouldn't want to call them

11   rejects, but the people who weren't picked for one and two unless

12   there was some compelling reason not to.  And I know you may have

13   different views of this, but I -- you know, realistically, if we

14   get to this part of the case -- Tell me if you disagree -- I

15   assume, you know we would have already tried two cases, and the

16   matter would not have settled, we're going to try probably at

17   least some more, three and four and maybe beyond that.

18        So I guess I'm not exactly sure why the order is

19   important because, obviously if the -- if either side thinks that

20   these are not representative and typical of the other people in

21   the class -- or not the class but the group, we'll try some more.

22        MR. MACE:  Your Honor, if I could update you on the

23   status of this discussion between the parties, because earlier

24   this week, Mr. London and I had some further discussions because

25   he had sent in a letter with regard to the status a few weeks ago,

1    but we are in agreement now that with regard to three and four,

2    trials three and four, they will designate one of their remaining

3    two.  I will designate one of the defense's remaining two.

4            CHIEF JUDGE SARGUS:  Good.

5            MR. MACE:  At a date certain -- I don't know if you want

6    to pick March 15 or something?  Do you want me to just pick a

7    date?  At a date certain, we will simultaneously send those to

8    each other and Your Honors, and we'll just leave it up to you to

9    pick which one is three and which one is four.

10           CHIEF JUDGE SARGUS:  Well, you know, that's fine.  Give

11   me a couple pages, don't make this anything massive, of which ones

12   you prefer.

13           MR. MACE:  Well, we had actually agreed, Your Honor, that

14   no further letters were necessary.

15           CHIEF JUDGE SARGUS:  So I will rely on what you have sent

16   to decide which of the ones to pick from each.

17           You know, the other simple thing to do is why don't we

18   designate the other two as five and six.

19           MR. MACE:  Well -- and that's where there's still -- Your

20   Honor knows that throughout the past year, I've put a placeholder

21   in on this, and I know you've indicated your strong preference --

22           CHIEF JUDGE SARGUS:  Well --

23           MR. MACE:  -- but at this point we have 3500 cases that

24   are -- will be in the MDL, but they are not all here yet.  We only

25   have about, I think it is, 1200, 1300 of those fact sheets.  So

1    where these fall out among the diseases and what we know about

2    these people is still pretty limited.  We'll know a lot more by

3    the fall, which will still be a year away from when five and

4    six would ever be --

5              CHIEF JUDGE SARGUS:  So we have three and four.  You're

6    thinking of March of '16 --

7              MR. MACE:  Yes, Your Honor.

8              CHIEF JUDGE SARGUS:  -- for three.

9              MR. MACE:  Yes, Your Honor.

10             CHIEF JUDGE SARGUS:  And four would be a couple months

11   after that?

12             MR. MACE:  Yeah, I think you had indicated maybe April --

13   your preliminary was April.

14             CHIEF JUDGE SARGUS:  All right.

15             MR. LONDON:  We have set trial dates, I think.

16             MR. MACE:  Yeah.

17             CHIEF JUDGE SARGUS:  All right.  So -- But that takes us

18   through April of '16.

19             MR. MACE:  Right.

20             CHIEF JUDGE SARGUS:  All right.  Well, I mean in terms of

21   the plaintiffs' side, you do have a mutual interest in making sure

22   these are representative cases.  So that's -- But as far as five

23   and six, you still would like going with the original list?

24             MR. LONDON:  We absolutely do.  This is the exact

25   argument that we heard when we laid out this pool, when we knew

1    that this pool was based on the 100 or so initial cases, when we

2    recognized that the 20 cases would be winnowed down, when we have

3    said from day one that the avalanche of cases would be coming into

4    these -- you know, the summer, the fall and early winter, we knew

5    this would happen.

6         The way to metrics and look at those other cases is, what

7    we have also proposed, sharing data, the use of Mr. Ray.  But

8    these are the cases that the parties knowingly picked, that the

9    parties excluded the high cholesterol and the preeclampsias from

10   that initial order.  And, frankly, these are the six cases that

11   should be worked up.

12        It's the same argument that we heard when counsel -- when

13   the Court issued CMO 7 and said, the presumption is these will be

14   the six tried first, the same when the Court issued PTO 26 when

15   the Court said, the strong presumption, and it will be difficult

16   to overcome.  So it's simply the same argument.

17        The best course right now is to keep these six trials.

18   And if there's a separate track that Mr. Mace wants to discuss

19   with Mr. Ray on other cases as the fact sheets develop, we're

20   amenable to that.  We always have been.  But the trials, frankly,

21   should be the trials that have been set, that are cases that have

22   been worked up, and we'll pick them.

23        CHIEF JUDGE SARGUS:  What, simply, do you think is

24   missing from the first six?

25        MR. MACE:  And that's the thing, Your Honor.  When we

1 made the decisions for the 20 that became the 6, it was out of

2 about 80.  Those are about 87 cases that qualified for selection.

3 Now we have 3500.

4   But what has changed dramatically is not only more of the

5 diagnosed high cholesterol, but also it seems to me, based on the

6 fact sheets we're seeing now, a much larger percentage than what

7 was originally shown of thyroid disease.

8   CHIEF JUDGE SARGUS:  How many high cholesterol cases

9 would you estimate that we have of the 3500?

10   MR. MACE:  My current figures on the fact sheets we have,

11 which are only about, I think the last time we looked and did the

12 calculations was based on 1200 fact sheets, but it was about 45

13 percent were raising --

14   CHIEF JUDGE SARGUS:  Does that sound about right?

15   MR. MACE:  -- high cholesterol.

16   CHIEF JUDGE SARGUS:  I mean give or take 5 percent?

17   MR. LONDON:  Maybe give or take 10 percent?  But it's a

18 number in that realm.

19   CHIEF JUDGE SARGUS:  About half.

20   MR. LONDON:  I would think that it's less than half.

21 Judge, if I had to completely estimate -- or judges, if I had to

22 completely estimate --

23   CHIEF JUDGE SARGUS:  40 to 50 percent.

24   MR. LONDON:  I would think 35 to 45 percent.

25   CHIEF JUDGE SARGUS:  So high cholesterol.  The other big

1    number is, of cases, is --

2          MR. MACE:  Thyroid disease right now.  It's about 35

3    percent based the last time on the fact sheets that we had.

4          CHIEF JUDGE SARGUS:  Refresh my memory, how many, if we

5    stayed with the six, how many are thyroid cases?

6          MR. MACE:  Zero, none.

7          CHIEF JUDGE SARGUS:  All right.

8          MR. MACE:  And that's where -- I am not arguing this now,

9    judge.  I'm just -- and in fairness, I never really have before

10    because my position has been:  Let's fight about things when we

11    need to fight about them.

12          CHIEF JUDGE SARGUS:  Right.

13          MR. MACE:  But I don't want to be precluded, once I have

14    the date in the fall, from coming back to Your Honor and making my

15    best argument that --

16          CHIEF JUDGE SARGUS:  What if we agreed to make seven and

17    eight thyroid cases?

18          MR. LONDON:  Judge, we can consider that.  I don't want

19    to lose sight of the argument that went into -- and I think that's

20    not something we object to certainly right now at all.  But I

21    think it's something that we can discuss with Mr. Mace, a

22    procedure to pick --

23          CHIEF JUDGE SARGUS:  You know, this is not any kind of

24    black letter decision that you're going to get from me.  It's just

25    a matter of trying to be practical and figure out what gives you

1     the best information you need to decide what your positions are

2     going forward.

3          MR. LONDON:  And thyroid cases, without going into it,

4     we're going to be guided greatly, as Mr. Mace has indicated and as

5     we have said, through the process of rulings, through the process

6     of not just the dispositive rulings, the exhibit lists, the

7     deposition designations, the motions *in limine,* so when we get to

8     thyroid cases and high cholesterol cases, if we ever do decide

9     to --

10         CHIEF JUDGE SARGUS:  Well, I mean everybody has sort of

11    agreed at this point that high cholesterol, we're kind of holding

12    off.

13         MR. MACE:  That's right.

14         CHIEF JUDGE SARGUS:  Nobody has any desire to jump into

15    those.  But you're sort of interested in thyroid cases.

16         MR. MACE:  I'm interested in the thyroid cases -- I mean

17    of these six, Mr. Pugh, Terry Pugh, does have high cholesterol as

18    his secondary claim.  So we may get to that one in the group.  But

19    the disease that has a high percentage of the cases that is not

20    represented at all --

21         CHIEF JUDGE SARGUS:  Yes.

22         MR. MACE:  -- is the thyroid.  And --

23         CHIEF JUDGE SARGUS:  This is what I'm thinking of doing.

24    I don't want to go back and undo what I've already done.  And I

25    did make it pretty clear, I think, that this is what we are going

20

1    to go with unless something really dramatic has changed.

2           But you have a right -- you know, I'm assuming that your

3    clients want a universe of cases to look at if they even think

4    about settlement.  So we need some thyroid cases in there.  I

5    guess at this point I'm willing to rule that seven and eight will

6    be thyroid, and we can pick dates for those now, if you like.  My

7    schedule this far out is always good.

8           MR. MACE:  My whole point is, Your Honor, I think the

9    parties are going to be guided greatly over the next six months on

10   Your Honor's rulings -- first, the briefs that are filed, but then

11   Your Honor's rulings and then as we start getting into the first

12   two trials.  And to carve in stone now what we're going to do two

13   years from now in trials makes, to me, very little sense --

14          CHIEF JUDGE SARGUS:  Well, it's just that I know your

15   schedules, yours especially, Mr. Mace.  I'm kidding.  But I'd just

16   like to get these dates locked into everybody's schedule.  I'm not

17   saying that they can't ever be moved.  But you know how trial

18   dates are.  If they're moving around, they never happen.

19          So you can consult, if you would like; but why don't we

20   push some dates around, and maybe by the next meeting we can agree

21   on dates for seven and eight.  If you'd like to debate among

22   yourselves on how to pick those two without me helping, be my

23   guest.  If not, we can do another trial selection where you each

24   select a certain number and strike a certain number of the others.

25          MR. LONDON:  Fair enough.

21

1          MAGISTRATE JUDGE DEAVERS:  Now with trials one and two,

2    the order that we're going, plaintiffs' pick or --

3          MR. BILOTT:  Trial one is a defense pick, the Bartlett

4    case.  Trial two, Wolf, is a plaintiff pick.

5          CHIEF JUDGE SARGUS:  I mean you've all done a lot of

6    these, but my feeling is with different jurors each time, there

7    will be a lot of variation is my guess.

8          And jumping back, you had mentioned a jury questionnaire,

9    which I think could be very helpful.  You know, don't forget, if

10   you look at the jury pool that we would typically get in Columbus

11   -- Again, this is a prediction not a guarantee -- the population

12   center tends to be in central Ohio, which is pretty far from the

13   affected water districts.  But we'll have some in there, I'm sure.

14         And, you know, what I would -- In a high profile case,

15   and I think this is -- if we were trying this case in Marietta,

16   this would be the highest profile.  In Columbus, maybe not so

17   high.  But in a high profile case, we would send these out at

18   least a month ahead of time, get the responses; and then decide if

19   we can, before we ever drag anybody into court, eliminate a

20   certain percentage.  So we have people sort of pre-qualified that

21   would make the *voir dire* in terms of number of people questioned a

22   lot smaller.

23         MR. MACE:  We think that's a good idea, Your Honor, to

24   send it earlier rather than later.

25         CHIEF JUDGE SARGUS:  And if we had the date, of course.

22

1          One other thing that tends to eliminate a lot of people

2     is a simple question about schedule.  So I don't think you could

3     probably pin this down that carefully, but do you have some idea

4     how long the first trial will take?

5          MR. LONDON:  Your Honor, it's really hard to predict

6     right now.  I don't want to -- I would think that the plaintiff's

7     case is probably going to be eight to ten days, give or take a day

8     or so.

9          CHIEF JUDGE SARGUS:  Yes.

10          MR. LONDON:  But I would anticipate the trial would be a

11     month.  I don't want to speak for du Pont, but I think our

12     case-in-chief is eight to ten.

13          CHIEF JUDGE SARGUS:  I mean the reason I asked, within a

14     week, does a month sound about right to you, three to four weeks?

15          MR. MACE:  Yes, Your Honor.

16          CHIEF JUDGE SARGUS:  All right.  So -- Because I will

17     tell you, you probably already know this, that will eliminate

18     probably 60 percent of the people in our jury pool.  There will be

19     people who are barbers, teachers or students.  Rather than bring

20     in hundreds of people, it would be a lot simpler to do that in the

21     questionnaire as well and find out who really can't be here, and

22     then we'll excuse them as well.

23          MR. MACE:  Agreed.

24          CHIEF JUDGE SARGUS:  So a lot of retired people and a lot

25     of federal judges who get paid for jury duty.

23

1    All right.  So, you know, what happened in the Florida

2    case, and I'm not familiar with the earlier cases, but it's sort

3    of a rhythm.  You get to know each other's cases, different jury

4    each time, of course, same issues.  They ended up with sort of a

5    two-week rule.  So each side had so many days.  And I've never

6    done that in a case, and I told the lawyers that let's shoot for

7    that, but something in court happens you can't always expect, and

8    there's a safety valve.  But I would guess the first few trials

9    are going to be the longest.  Then, perhaps, after we get past a

10   few of these, we can get these down to a more predictable number

11   of days?  Do you think that's possible?

12        MR. LONDON:  Absolutely.  I don't know if you can ever

13   predict the exact number of days, but I think there's going to be

14   a lot of efficiencies learned following the first trial, then the

15   second trial.  Just even the rulings --

16        CHIEF JUDGE SARGUS:  Right.

17        MR. LONDON:  -- aren't reargued and documents that are

18   submitted into evidence --

19        CHIEF JUDGE SARGUS:  You're assuming that I am

20   consistent.

21        MR. LONDON:  Yes, I was making that assumption.

22        CHIEF JUDGE SARGUS:  So all right.  I did hear from

23   Mr. Ray.  He's in warmer climates.  That's why he's not here.

24   This room is designed not to allow Internet and Wi-Fi.  So we

25   couldn't get him on the call.  But I know he'll be checking in

24

1    with you as well as to where things are.

2         The last issue is the conference date -- the next

3    conference date.  Before we get to that -- Oh, there's one other

4    matter I wanted to talk to you about, the motion to seal.  I don't

5    like to make a problem where there isn't one, but this always

6    begets some heartburn on my end because the motion -- and I don't

7    know if it's opposed or not, I'm going to guess it's not, but

8    there are news outlets that really get upset about this kind of

9    stuff.

10        MAGISTRATE JUDGE DEAVERS:  I think there are three

11   pending.

12        CHIEF JUDGE SARGUS:  Okay.  You know, as a general

13   matter, the presumption is we don't seal anything.  Obviously,

14   there are exceptions, business secrets being one, personal medical

15   information being another.  But in this case I'm thinking those

16   would be the only two things that would be something that would be

17   presumptively not public.  Anything else come to mind?

18        MR. BILOTT:  Your Honor, I think I can -- Rob Bilott for

19   the plaintiffs.  Sorry.  At least with respect to the one motion I

20   believe that's pending from the plaintiffs --

21        MAGISTRATE JUDGE DEAVERS:  Does that have to do with

22   excerpts from expert depositions, is that right?

23        MR. BILOTT:  Actually, no.  This -- The one that we've

24   got pending has excerpts from actually two fact witnesses.

25        MAGISTRATE JUDGE DEAVERS:  All right.

25

1      MR. BILOTT:  And we have been -- we're working with du

2   Pont to try to confirm that those are not confidential.  There's

3   some lack of clarity about whether those were or were not intended

4   to be confidential.  It's our position that they are not and

5   should not be.  And I think we're -- we've got clarity I think on

6   one of them, and we're waiting for clarification on the other.

7   It's our hope that we can withdraw our motion to seal.

8      MR. MACE:  And with respect to one of ours, it was a

9   couple pages from the two trial plaintiffs' depositions, Bartlett

10  and/or Wolf, that was designated confidential, that we didn't

11  think was confidential.  We sent an e-mail saying, this really

12  isn't confidential.  But Mr. -- I forget which one, somebody told

13  us no, maintain it.  So that's why we did it.

14      MR. LONDON:  That was --

15      CHIEF JUDGE SARGUS:  Well, I just want to add an

16  objective.  There's a fairly, you know, rightfully so, aggressive

17  press in Columbus.  And we haven't gotten press calls -- I don't

18  want to give you the wrong impression -- but there have been rubs

19  before with media outlets about sealing up too much stuff and

20  preventing them from reporting.  So I don't want to walk anybody

21  or the Court into something like that.

22      So if you want to seal things up, too, don't forget we

23  can do partial sealings, not entire motions and depositions.  And,

24  again, there are some things in here.  We don't want to get into

25  anybody's personal medical history and making that public.  But --

1          MR. MACE:  Your Honor, are you suggesting that maybe if

2    we, in our motions, instead of a whole deposition, page 13 to

3    14 --

4          CHIEF JUDGE SARGUS:  Exactly.

5          MR. MACE:  -- of X's deposition.

6          CHIEF JUDGE SARGUS:  Yes.

7          MAGISTRATE JUDGE DEAVERS:  And also the rationale behind,

8    other than the parties' designating it --

9          MR. MACE:  All right.

10          MAGISTRATE JUDGE DEAVERS:  -- as confidential.

11          MR. WOODS:  There were a couple of deposition transcripts

12    that, Rob and I have been talking about this, there are a couple

13    deposition transcripts, and I'm not sure if anybody really knows

14    why the entire transcript was marked as confidential --

15          MAGISTRATE JUDGE DEAVERS:  That's what actually I'm

16    thinking --

17          MR. WOODS:  -- but we're working through that --

18          MR. BILOTT:  That's exactly --

19          MR. WOODS:  -- and we collectively take the Court's --

20          CHIEF JUDGE SARGUS:  Yes, I mean this is the one time --

21          MR. WOODS:  -- direction on this.

22          CHIEF JUDGE SARGUS:  -- where normally an agreement of

23    the parties would be all I would need.  But there are people not

24    at the table who would object to this at some point.  So --

25          MR. WOODS:  Understood.

1     MR. BILOTT:  Understood, Your Honor.  And, again, it's

2     our goal, hopefully, to be able to withdraw our motion.  And I

3     believe that a couple of plaintiffs' excerpts were personal

4     medical information, and it was just a couple of pages that dealt

5     with her medical information that I believe were marked.

6           MAGISTRATE JUDGE DEAVERS:  I think the one that came in

7     yesterday from du Pont, I could tell -- I think it was plaintiff's

8     fact sheet.  I assumed that that had to do with the medical

9     information.

10          MR. MACE:  Right.

11          MAGISTRATE JUDGE DEAVERS:  So why don't you circle back

12    around with us and let us know which are still pending and which

13    need to be ruled on to seal.

14          MR. LONDON:  And the reasoning, Your Honor, I think is,

15    you know --

16          MR. MACE:  Yes.

17          MR. LONDON:  -- a simple sentence of:  We believe this is

18    a medical record.  We're doing this because.

19          MAGISTRATE JUDGE DEAVERS:  Yes.

20          MR. MACE:  And I think the parties have been informally

21    consulting.  I think we should continue that it's, before we go

22    ahead and file, we consult with each other, are you still

23    contending?  Because maybe we'll be willing to just waive it and

24    let it be filed.

25          CHIEF JUDGE SARGUS:  Before we completely leave the jury

1   selection part, did I tell you about the jury selection in my

2   tobacco case?

3         MR. MACE:  No.

4         CHIEF JUDGE SARGUS:  I didn't tell you that?  So, you

5   know, whenever you can count things by computer, my view is we end

6   up counting the wrong things.  So one of the things that every

7   judge in every district court gets numbers on is jury utilization.

8   You may have heard that phrase.

9         MR. LONDON:  What was that?

10        CHIEF JUDGE SARGUS:  Jury utilization.  So if you're the

11  jury commissioner -- The goal is to bring in as few people as

12  necessary to seat a jury, which, obviously, if you think about it

13  from our end, your end and my end, that's the wrong goal.  What

14  you don't want to do is to run out of jurors.  If you have a few

15  extra and you're efficient with your jury selection process, they

16  go home.  Everybody is happy.

17        So the week before I went to Tampa, my office was in

18  touch with the person who does juries in Tampa.  She said, you

19  will need 35 people for a two-week trial involving tobacco use.

20        I had a call back to her saying, that's probably not

21  going to work.

22        And she mentioned the jury utilization number.  She was

23  graded on that, didn't want to bring in too many.  And besides,

24  there was a judge from New York who had just done three trials,

25  and 35 was all he needed, and I should do the same.

1          My first question in *voir dire* always is:  It's going to

2     be a two-week trial, nine to five, five days a week.  Is there

3     anybody here who really has a bad scheduling conflict?  And out of

4     the 35, we probably lost 22, 23.

5          MR. MACE:  Wow.

6          CHIEF JUDGE SARGUS:  So then we had to wait because in

7     Tampa they only start jury trials on Monday.  And we waited for

8     other judges to cast off unused jurors.  We picked a jury at about

9     eight o'clock that night, which was, to me, just completely

10    inefficient.

11         So this is where the story is going.  So I saw the jury

12    commissioner the next day, and she said, well, you know, I told

13    you this judge from New York, 35 was all he needed.  I don't know

14    what's wrong with you.

15         There was a bailiff I had who said to me later, you know

16    what that was all about?  I was the bailiff in those cases, too.

17    And that first question you asked about schedule, the judge from

18    New York never asked that.  So in one trial they were going to

19    swear in the jury, and as the jurors raised -- one of the jury

20    raised his hand and said, I need to ask a question.

21         The judge said, what is it?

22         I'm supposed to have surgery two days from now.

23         The judge said, that's no problem.  We'll take a break in

24    about 20 minutes, and you can call and reschedule it.

25         The trial went on.  So --

30

1          MR. MACE:  It sounds like New York.

2          CHIEF JUDGE SARGUS:  That's just not how we do it in

3    Ohio, I guess.  But anyway.  I won't tell you which judge it was,

4    but you might be able to guess.

5          So, well, do you have a suggestion for the next

6    conference date?

7          MR. MACE:  Yeah, we have conferred, Your Honor, and the

8    parties would suggest the afternoon of March 25, which I think is

9    a Wednesday.

10         CHIEF JUDGE SARGUS:  All right.  And you're planning on

11   doing this in person again?

12         MR. MACE:  Yes, sir, 1:30, if that works for Your Honor.

13         CHIEF JUDGE SARGUS:  That works for me.  For this

14   Wednesday, you said?

15         MR. MACE:  Yes, sir.

16         CHIEF JUDGE SARGUS:  That will work, 1:30.

17         All right.  I think that covers everything, unless you

18   have any other matters you'd like to take up.

19         MR. MACE:  No, sir.

20         CHIEF JUDGE SARGUS:  Then nice to see all of you, and

21   we'll be in touch.

22                              -  -  -

23

24

25

31

1                        C E R T I F I C A T E

2                              -  -  -

3          I, Laura L. Samuels, do hereby certify that the foregoing is

4     a true and correct transcript of the proceedings of the In-Person

5     Status Conference, in the case of:  E. I. du Pont de Nemours and

6     Company C-8 Personal Litigation, case no. 2:13-md-2433, before the

7     Honorable Edmund A. Sargus, Jr., Chief Judge, and the Honorable

8     Elizabeth Preston Deavers, Magistrate Judge, in the United States

9     District Court, Southern District of Ohio, Eastern Division, on the

10    date indicated, reported by me in shorthand and transcribed by me or

11    under my supervision.

12

13

14

15

16                                    /s/ Laura L. Samuels
                                      Laura L. Samuels
17                                    Official Federal Court Reporter

18

19

20

21

22

23

24

25