IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION | CASE NO. 2:13-MD-2433 |
| | JUDGE EDMUND A. SARGUS, JR. |
| **This document relates to:** | MAGISTRATE JUDGE ELIZABETH P. DEAVERS |
| *Bartlett v. E. I. du Pont de Nemours and Company*, No. 2:13-CV-170 | |

**DUPONT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OTHER EVIDENCE REGARDING POST-1997 DUPONT CONDUCT AND KNOWLEDGE**
**(Motion *in Limine* No. 1)**

Pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, Defendant E. I. du Pont de Nemours and Company ("DuPont") respectfully requests that this Court preclude Trial Plaintiff Carla Bartlett from introducing any testimony or other evidence during the compensatory liability and damages phase of the trial regarding DuPont's post-1997 conduct or knowledge.[1] **Because Mrs. Bartlett's kidney cancer was diagnosed and successfully removed in 1997, any DuPont conduct and any knowledge that DuPont obtained with respect to C-8 after 1997 did not and could not have had any effect on whether she got cancer** as a result of exposure to C-8, and is not relevant to Mrs. Bartlett's compensatory damages claims. In addition, any claimed probative value of such testimony or evidence is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

---

[1] As the Court is aware, DuPont has separately moved to bifurcate the Bartlett trial into two phases, separating the issue of liability for and amount of punitive damages (if the Court allows trial on punitive damages at all) from the issue of liability for and amount of compensatory damages. *See* DuPont's Mot. to Bifurcate Punitive Damages [ECF No. 3974] at 9.

- 1 -

## ARGUMENT

Pursuant to Rule 402 of the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Further, pursuant to Rule 403, even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

It is undisputed that Mrs. Bartlett was diagnosed with kidney cancer in June 1997. *See* Dec. 8, 2014 Report of Vitaly Margulis, M.D. ("Margulis Report") [ECF No. 2811, Ex. D] at 5. It is also undisputed that: **her kidney cancer was successfully removed on June 9, 1997; she required no further treatment; and she has had no signs of recurrence in the nearly twenty years since then**. *See id.*; Dec. 8, 2014 Report of Robert R. Bahnson, MD, FACS ("Bahnson Report") [ECF No. 2811, Ex. C] at 2; Tr. of June 18, 2014 Depo. of Carla Bartlett ("Bartlett Depo.") [ECF No. 2809, Ex. C] at 102:22-104:6.; Tr. of Apr. 1, 2015 Depo. of Vitaly Margulis, M.D., F.A.C.S. ("Margulis Depo.") [ECF No. 3066-1] at 64:18-65:2; Tr. of Mar. 16, 2015 Depo. of Robert Bahnson, M.D. ("Bahnson Depo.") [ECF No. 2809-2] at 17:8-18:7.

On this record, the last possible relevant date of DuPont's conduct and DuPont's knowledge for purposes of any compensatory damages award is June 9, 1997. **Any post-1997 conduct or knowledge of DuPont is legally irrelevant** because none of DuPont's conduct <u>after</u> June 1997 nor Mrs. Bartlett's continued consumption of drinking water <u>after</u> 1997 could have caused her 1997 kidney cancer. In short, **it is impossible for events occurring *after* Mrs. Bartlett's alleged injury to be the proximate cause of her injury**. *See* Reply Supporting DuPont's Mot. for Partial Summ. J. on Trial Plaintiff Carla Bartlett's Fraud & Emotional Distress Claims [ECF No. 3559] at 2-4, 13-15. And although Mrs. Bartlett claims that continued ingestion of water containing C-8 puts her at a greater risk of recurrence, this claim is belied by

the testimony of her own treating physician and retained expert, who both admit that her kidney cancer is <u>not</u> likely to recur.² Mrs. Bartlett's expert, Dr. Margulis, for instance, testified that it was "not very likely" that her cancer would recur and that, in his experience, he has <u>never</u> had a kidney cancer patient who was successfully treated and cancer free for 18 years who later had a recurrence. Margulis Depo. at 64:18-65:2. Her treating doctor, Dr. Bahnson, testified that late recurrence of kidney cancer would be "unusual" and that he believed Mrs. Bartlett was cured two years after her successful surgery in June 1997. Bahnson Depo. at 17:8-18:7.

Accordingly, any testimony or evidence about any actions DuPont took or did not take with respect to C-8 and any knowledge DuPont obtained with respect to C-8 *after* June 9, 1997 should be excluded as irrelevant and having no bearing on Mrs. Bartlett's claims. *See* Fed. R. Evid. 402; *Krumpelbeck v. Breg, Inc.*, 759 F. Supp. 2d 958, 969-70 (S.D. Ohio 2010) ("**Significantly, the emails are dated approximately nine months after Plaintiff's surgery, which makes them irrelevant to the issue of what Defendant knew or should have known before Plaintiff's surgery**.") (emphasis added); *Toole v. McClintock*, 999 F.2d 1430, 1434 (11th Cir. 1993) (finding that the lower court erred in admitting a later-published FDA report into evidence and ordered a new trial because "[a]s a simple matter of timeliness, those statements are irrelevant and inadmissible on what [the defendant] knew or should have known about risks before [the dates of plaintiff's medical procedures].").³

---

² Plaintiffs' experts could not have taken a contrary position. The scientific record is devoid of *any* indication that C-8 exposure is associated with increased risk of the *recurrence* of kidney cancer in patients that were previously diagnosed with the disease. Indeed, Plaintiff's experts have not cited a single such study. To the extent that Mrs. Bartlett is claiming that she fears developing kidney cancer in the future as a result of her alleged post-1997 exposure to C-8 in the Tuppers Plains drinking water, those claims are not actionable. Like every other member of the Leach Class, any claims by Mrs. Bartlett that she *fears* that she *may* develop a probable link disease *in the future* were released under the Leach Settlement Agreement.

³ *See also Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 142 (8th Cir. 1990) (minutes of a meeting that occurred months after the accident at issue were inadmissible because

Even if any post-1997 DuPont conduct or DuPont knowledge was not wholly irrelevant here (which it is), any claimed probative value of such evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay and wasting time. Indeed, testimony and evidence regarding DuPont's post-1997 conduct and knowledge should be excluded because it would only serve to extensively prolong the trial (and distract the jury) by requiring the parties to litigate about almost twenty years' worth of collateral matters, including but not limited to ongoing scientific and medical developments that occurred more than a decade after her cancer was discovered and removed. *See, e.g.*, *In re Richardson-Merrell "Bendectin" Prods. Liab. Litig.*, 624 F. Supp. 1212, 1239 (S.D. Ohio 1985) (finding that even if the fact that defendant ceased manufacture of the drug after June 8, 1983 was relevant, the minimal probative value was outweighed by the danger of "undue delay of the trial resulting from litigating this collateral matter"). The presentation of the extensive evidence in this case already promises to be a challenge, and DuPont respectfully submits that this Court should confine that presentation exclusively to matters that are relevant to Mrs. Bartlett's claims and DuPont's defenses to those claims.

## **CONCLUSION**

For all these reasons, and in the interests of justice and a fair trial, DuPont respectfully requests that the Court preclude Mrs. Bartlett from introducing at trial any testimony or other evidence regarding DuPont's post-1997 conduct and knowledge.

---

they were "not probative of [defendant's] knowledge" at the time of the accident at issue; were "too remote in time from the date of the accident;" and had "no tendency to make the existence of any fact that [was] of consequence more or less probable"); *LeBoeuf v. K-Mart Corp.*, 888 F.2d 330, 333 (5th Cir. 1989) (excluding evidence of subsequent condition of floor in defendant's store, noting that it is "what was happening at the given time . . . that counts").

Respectfully submitted:

*s/ Damond R. Mace*
Damond R. Mace (0017102) (Trial Attorney)
Stephen M. Fazio (0076873)
Stephanie E. Niehaus (0075511)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
(216) 479-8500 (Phone)
(216) 479-8780 (Fax)

C. Craig Woods (0010732)
Aaron T. Brogdon (0081858)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-2700 (Phone)
(614) 365-2499 (Fax)

Attorneys for Defendant E. I. du Pont de Nemours and Company

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on this 20th day of July 2015 and accordingly served automatically upon all counsel of record for this matter.

*s/ Damond R. Mace*
Damond R. Mace (0017102)