**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION** | **CASE NO. 2:13-MD-2433** |
| | **JUDGE EDMUND A. SARGUS, JR.** |
| | **Magistrate Judge Elizabeth P. Deavers** |

**This document relates to:  ALL ACTIONS.**

**PLAINTIFFS' THIRD MOTION TO COMPEL**

**I.      INTRODUCTION**

Plaintiffs, through Co-Lead Counsel for the Plaintiffs' Steering Committee ("PSC"), hereby move the Court, pursuant to Civil Rule 37, for an Order compelling Defendant E. I. du Pont de Nemours ("DuPont") to produce financial documents DuPont promised to produce no later than July 1, 2014, pursuant to Discovery Order No. 8 [ECF No. 2556] ("DO8"), and to supplement the financial discovery response it served on May 7, 2014, pursuant Discovery Order No. 4 [ECF No. 247] ("DO4"), which discovery response is no longer accurate.  Because of heightened concerns that the financial condition of DuPont and its related spinoff company – Chemours – may be rapidly deteriorating and changing as final preparations for the first trial in this MDL on September 15, 2015 are underway, Plaintiffs request an expedited briefing and hearing schedule for this Motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     This Court Previously Ordered DuPont to Produce Relevant Financial Information Regarding DuPont's Financial Condition.

On April 4, 2014, this Court Ordered DuPont to produce the following information

regarding the "spinoff" of the Chemours Company from DuPont, scheduled for July 1,

2015:

> [D]ocuments reflecting (1) the timing of the change; (2) which entity will retain the obligations and liabilities under the 2005 Class Action Settlement Agreement in the *Leach* Case; and (3) the financial information for the entity retaining the obligations and liabilities, including documents reflecting the entity's estimated net worth, assets, liabilities, revenue, etc. To the extent some of the information is publically available, such as in a United States Securities and Exchange Commission Form 10-K, DuPont may designate where that information has been published.

(DO4 at 11.)

On May 7, 2014, in response to DO4, DuPont sent a letter to Counsel for the

PSC attaching only two documents, which DuPont's counsel claimed "responds fully to

the information the Court has ordered DuPont to provide to you."  (Aff. of Robert A.

Bilott in Supp. of Third Mot. to Compel ("Bilott Aff.") Ex. A.)  Those two documents were

a copy of a Form 10-K for DuPont, reflecting financial data for the company as of March

31, 2014, and a "Declaration" from an in-house attorney for DuPont, Justin M. Miller

("Miller Dec.").  (*Id.*)  Mr. Miller's Declaration contained (among others) the following

representations:

> 2.     **The** defendant in all of the cases involved in the current PFOA MDL is DuPont, and DuPont has **_no current intention_** to file a motion under Federal Civil Rule of Procedure 25(c) to substitute the party defendant. …It is also **_currently anticipated_** that, as between the parties to the [*Leach*] settlement agreement, DuPont will remain liable for its obligations under the *Leach* Settlement agreement.

2

3.      The details of the potential spinoff of the Performance Chemicals segment of DuPont ***are still being discussed***, and ***no final decisions have been made on the details of the assets and liabilities of the proposed spinoff company*** (referred to as 'Spinco' [Chemours] below).  Those discussions are expected to continue through this year, and currently are not expected to be preliminarily determined until the fourth quarter of 2014.

4.      In terms of the overall timing of the potential spinoff, it is currently anticipated that it would not be finalized until mid-2015. … It is currently anticipated that the initial Form 10 related to Spinco [Chemours] will not be filed [with the SEC] until the fourth quarter of 2014, and will likely be revised several times before the spinoff is finalized.

5.      The obligations of DuPont to the other parties under the *Leach* settlement agreement are ***currently expected to remain obligations of DuPont***, regardless of whether, as between DuPont and Spinco [Chemours], Spinco [Chemours] agrees to indemnify DuPont for any payments that DuPont may be required to make related to the MDL proceedings or under the *Leach* settlement agreement.

6.      Accordingly, it is the consolidated financial position of DuPont, not Spinco [Chemours], that is relevant to the financial condition of the entity that will retain the potential liabilities to the MDL plaintiffs and obligations to the other parties under the settlement agreement in the *Leach* case.  Further, the ***current expectation*** is that essentially all of DuPont's assets and operations, other than those related to its Performance Chemicals segment, will remain behind with DuPont if the spinoff is completed next year.  In short, in terms of the MDL, the potential spinoff is essentially a non-event in terms of any impact upon the plaintiffs in this MDL litigation, or upon DuPont's obligations to the other parties under the *Leach* settlement agreement.

7.      … [B]oth the Performance Chemicals segment and the rest of DuPont ***have substantial assets and revenues, and are financially healthy***. … DuPont had net sales of more than $35 billion ***during 2013***.  In addition, ***as of March 31, 2014***, DuPont had ***current*** assets of more than $20 billion and ***current*** liabilities of approximately $11 billion. … While the details have not been decided, Spinco [Chemours] ***is expected to be*** well-capitalized, and this is a business segment that generated more than $6 billion in revenues ***in 2013***.  It is ***expected*** that DuPont will also remain a

3

well-capitalized, financially healthy company after the potential spinoff of the Performance Chemicals segment.

(Miller Dec. at ¶¶ 2-7 (emphasis added).)

Following service of the Miller Declaration, DuPont's counsel repeatedly assured the PSC that everything in Mr. Miler's Declaration remained correct and accurate. As late as February 5, 2015, DuPont represented to Plaintiffs and this Court that, because the Chemours spinoff was "a transaction that is still not anticipated to occur until July 2015," "everything in Mr. Miller's declaration remains accurate." (DuPont's Mem. in Opp. to Second Mot. to Compel [ECF No. 2042] ("DuPont's Response") at 2, 10, ("*the statements in Mr. Miller's declaration remain accurate and correct*") (emphasis in original).) Consistent with DuPont's formal court filings, DuPont's counsel also assured the PSC and the Court that "nothing had changed" and that DuPont would remain the sole defendant in this MDL:

> [***Plaintiffs] have got nothing to be concerned about***. … We have given them a sworn declaration of the associate general counsel of DuPont who said that the defendant in all cases is DuPont. There is ***no intention*** to file a motion to substitute the party defendant. As between the parties to the [*Leach*] settlement agreement, DuPont will remain liable for its obligations under the *Leach* settlement agreement. … [DuPont] confirmed that every statement made in the Miller declaration is still true. They have no reason to be concerned. … ***The separation agreement is not even finalized yet.*** … ***We'll be happy to given them a copy [when it is finalized]***.

(Plaintiffs' Reply in Supp. of Second Mot. to Compel Ex. A at 21 [ECF No. 2143-1] (emphasis added).) This same assurance – that the spinoff would be a "non-event" for plaintiffs in this MDL and that everything DuPont had previously represented about the spinoff, its impact on the claims of any plaintiff in this MDL, and DuPont's current financial condition would be confirmed in the final Separation Agreement that DuPont

4

would "happily" provide to Plaintiffs as soon as it was finalized – also was repeated in

the last formal Court filing made by DuPont on the matter on February 5, 2015:

> As Plaintiffs' counsel has been informed, the proposed Separation
> Agreement is expected to be finalized and filed with the SEC and
> become publicly available ***in a few weeks***, around late March or
> early April, and ***DuPont will be happy to provide a courtesy
> copy to Plaintiffs at that time***. … Plaintiffs have not established
> any prejudice in being required to wait a few weeks for the
> proposed document to become finally drafted and public.

(DuPont's Response at 14 (emphasis added).)

According to DuPont, the final Separation Agreement to be produced to Plaintiffs

"in a few weeks" would "identify assets to be transferred, liabilities to be assumed and

contracts to be assigned to each of DuPont and [Chemours] … and will describe when

and how these transfers, assumptions, and assignments will occur." (*Id.* at 13-14.)  As

for the continued financial stability of Chemours and DuPont following the spin-off,

DuPont claimed that any suggestion that either company would be undercapitalized or

positioned to be less able to satisfy judgments in this MDL after the spinoff as incorrect

and "border[ing] on irresponsible."  (*Id.* at 15.)

On March 9, 2015, after consideration of DuPont's representations that: 1)

DuPont would remain the sole defendant in this MDL; 2) all of DuPont's prior

representations as to the post-spinoff relationship between Chemours, DuPont, and the

Plaintiffs in this MDL remained accurate and unchanged; 3) DuPont and Chemours

would emerge from the spinoff with no material change in the financial status of the

entity responsible to Plaintiffs in this MDL; and 4) DuPont would be providing a copy of

the final Separation Agreement to Plaintiffs well before the July 1, 2015, spinoff that

would confirm allocation of  liabilities for this MDL post-spinoff, the Court declined to

formally order DuPont to provide any supplemental discovery responses at that time. (*See* DO8 [ECF No. 2556].)

**B. DuPont Has Not Produced Necessary Supplemental Discovery Responses.**

On April 14, 2015, when over a month had passed since entry of DO8 and Plaintiffs had received nothing further from DuPont regarding the final Separation Agreement, the PSC sent an email to DuPont's counsel asking when the materials would be made available. (Bilott Aff. Ex. B.) In response, DuPont's counsel forwarded to the PSC on April 23, 2015, an amendment DuPont had filed with the SEC for its Form 10, dated April 21, 2015. (*Id.* Ex. C.) Although that document included, for the first time, a "form" of the *text* of the Separation Agreement, it was not a copy of the final, signed version, nor were any of the final schedules or exhibits included. (*See id.*) The version posted publicly by DuPont on its website was the same. (*See* http://Investors.dupont.com/Investor-relations/Chemours-Filings/default.aspx (the "Web Postings").)

In addition, despite DuPont's prior representations that this Separation Agreement would make clear how the MDL liabilities here would be handled and that DuPont remained the sole party defendant for any judgment in this MDL, the version of the Separation Agreement DuPont actually provided did not include any language clarifying or confirming such claims. (*See* Bilott Aff. Ex. C; Web Postings.) Thus, assuming further final Separation Agreement documents were to be provided by DuPont prior to the spinoff on July 1, 2015, and that the MDL liabilities might be addressed in the final schedules and attachments, the PSC asked DuPont on April 25, 2015, to confirm in the meantime that the materials provided to date had not changed

12451428.1

any of DuPont's prior representations.  (Bilott Aff. Ex. C.)  In an email dated May 1, 2015, DuPont's counsel stated that "all of the statements made in the May 7, 2014 declaration of Justin Miller remain accurate."  (*Id.*)

On June 5, 2015, the PSC independently discovered by visiting DuPont's website that DuPont had filed another amendment to its Form 10 for Chemours on May 13, 2015. (*Id.*)  Although this new amendment still did not appear to contain a final version of the Separation Agreement with all schedules and exhibits, the PSC, nevertheless, requested on June 5, 2015, that DuPont promptly confirm that nothing in that amended filing had changed any of its prior representations.  (*Id.*)  Only three days later, and before DuPont responded to the June 5, 2015, request, the PSC again independently discovered by visiting DuPont's website that DuPont had filed yet another amendment to its Form 10 for Chemours – this one apparently submitted to the SEC on June 5, 2015. (*Id.*)   This amendment also did not contain any supplements to or finalized portions of the Separation Agreement.  (*See* Web Postings.)  The PSC, therefore, requested that DuPont address this latest amendment in its response, as well.  (Bilott Aff. Ex. C.)  On June 8, 2015, DuPont's counsel responded, once again stating only that "the statements made in the May 7, 2014 declaration of Justin Miller remain accurate." (*Id.*)

DuPont did not produce (or otherwise make available) to the PSC before completion of the spinoff of Chemours on July 1, 2015, the final, complete Separation Agreement (with Schedules and exhibits).  Moreover, immediately after completion of the spinoff was publicly announced, information began appearing in the popular press raising concerns about the continuing accuracy of DuPont's prior representations that

both Chemours and DuPont would emerge from the spinoff as financially stable
companies and that the MDL plaintiffs have "got nothing to be concerned about" as to
DuPont's retention of MDL obligations and liabilities.  (*See id.* Exs. D (July 2 article
noting "red flags about the sustainability of the Chemours Co." following the spinoff), E
(July 2 article noting the value of Chemours shares "have fallen 21 percent", that "they
certainly seem to be loading Chemours with debt," and that such has resulted in "high
financial leverage" of Chemours with "significant near-term litigation risk" relating to this
MDL), F (July 3 article noting that "DuPont Tumbles to 52-weekLow After Chemours
Spinoff"), and G (July 3 article noting plummeting of DuPont stock price following the
Chemours spin-off).)[1]

Thus, immediately after the July 4 Holiday, counsel for the PSC sent an email to
DuPont's counsel noting that, even though the spinoff had been completed on July 1,
2015, DuPont still had not produced the final Separation Agreement documents, as
previously promised, and requesting production of those materials no later than the
close of business on July 9, 2015.  (*Id.* Ex. I.) Counsel for the PSC also requested that
DuPont provide by that same date "a current Declaration from a current DuPont
employee updating all representations made in Mr. Miller's May 7, 2014, Declaration to
reflect events/conditions as of July 2, 2015, and any facts that are no longer
accurate/current as of that date (after the spinoff was complete)."  (*Id.*)  Counsel for the
PSC also requested an opportunity to meet and confer with DuPont prior to July 10,

---

[1] *See also* Bilott Aff. Ex. H (article from July 8, 2015, noting "Chemours Company (CC)
Begins Its Predicted Fall"), Ex. M (article from July 9, 2015, noting Chemours
stockholders "have already lost a third of their value over the past two weeks"), Ex. N
(article from July 12, 2015, noting DuPont's remaining value "is falling dramatically on
negative sentiments on its Chemours spinoff," including Chemours' "legal liabilities and
cash potential.").

2015, if DuPont objected to producing the requested materials by close of business on July 9, 2015. (*Id.*)

In a further effort to make sure that DuPont was not now trying to make any sort of distinction between the "obligations of DuPont to the other parties under the *Leach* settlement agreement," (Miller Dec. at ¶ 5 (emphasis added)), and any legal obligation to actually pay a *Leach* Class Member who obtains a judgment in this MDL, counsel for the PSC also asked DuPont to include in its response express confirmation that "with respect to any judgment that may be entered in favor of a Plaintiff in this MDL, DuPont remains the party liable to any Plaintiff for any such judgment – not Chemours." (Bilott Aff. Ex. I.) Counsel for the PSC also placed a call to DuPont's lead counsel, asking that the call be returned as soon as possible. (*Id.* at ¶ 11) Later on July 7, 2015, an article appeared in the popular press in which a spokesperson for the new Chemours company apparently was asked about liabilities for any "damages awarded to the plaintiffs" in this MDL, and responded that "'DuPont is expected to remain **a** named party' in the lawsuits, while Chemours has agreed to pay DuPont for liabilities from legal proceedings relating to its business lines, including the C-8 lawsuits." (*Id.* Ex. J (emphasis added).)

On July 9, 2015, at 7:35 pm, Counsel for DuPont sent an email forwarding yet another copy of only the text of the Separation Agreement (this time the executed version), ignoring the PSC's request *for the accompanying schedules and attachments* that would actually identify what assets and liabilities were actually being addressed in the text. (*Id.* Ex. K.) Curiously, DuPont had just filed a Form 8K with the SEC on July 8, 2015 (which counsel for the PSC independently discovered only by visiting DuPont's website), which expressly acknowledged that such schedules and exhibits existed and

would be made available to the SEC – a public agency – "upon request." (*Id.* Ex. L.) Yet, the document DuPont provided on July 9, 2015, to counsel for the PSC omitted any such reference and, despite the PSC's express request for those same schedules, DuPont continued to refuse to provide any such documents. (*Compare id.* Ex. K *with id.* Ex. L.)

In response to the PSC's specific request for an updated, current Declaration to reflect post-spinoff financial conditions, DuPont similarly ignored that request, stating only that "the relevant paragraphs of the Miller declaration, including paragraphs 2, 5 and 6 remain accurate." (*Id.*) This time, DuPont omitted any specific reference to paragraph 7 of Mr. Miller's prior Declaration that made representations regarding the "current" financial condition of DuPont. (*See id.*) When counsel for the PSC finally was able to speak with DuPont's counsel on July 12, 2014, DuPont's counsel still did not commit to provide any of the requested information. (*Id.* at ¶13.)

On July 20, 2015, Counsel for the PSC received from DuPont a "Supplemental Declaration of Justin M. Miller," which, this time, conspicuously omits any reference to the prior representations of DuPont as to the financial condition and/or continuing financial health of DuPont and Chemours (as previously set forth in paragraphs 6 and 7 of the original Miller Dec.). (*Id.* Ex. O.) DuPont again did not include any of the repeatedly-requested Separation Agreement schedules or exhibits, or the other information Plaintiffs had requested. (*See id.*)

As required under Case Management Order No. 8 [ECF No. 1297], Plaintiffs attempted to resolve this matter through the Court-appointed Mediator, but with no success. (*Id.* at ¶18.)

10

### III.    ARGUMENT

Over a year ago, this Court ordered DuPont to produce to Plaintiffs certain types of financial information, including information relating to the spinoff of Chemours from DuPont scheduled for July 1, 2015.  (DO4 [ECF No. 247].)  In response, DuPont produced a May 7, 2014, Declaration from one if its in-house counsel making representations about DuPont's financial condition as of March 31, 2014 – a year *before* the spinoff of *billions of dollars* of DuPont's assets to Chemours - along with DuPont's expectations and anticipations *at that time* as to the potential impact of the July 1, 2015 spinoff on plaintiffs in this MDL.  When asked to supplement this discovery at any time prior to the July 1, 2015, spinoff, DuPont repeatedly assured Plaintiffs (and the Court) that everything in the May 7, 2014, Declaration remained accurate, and that Plaintiffs would be given a copy of the final, complete Separation Agreement explaining and confirming the accuracy of that Declaration well before the spinoff was complete on July 1, 2015.  As of today's date, no such supplemental production has occurred.

Even the most cursory review of the statements made in the earlier May 7, 2014, Declaration confirm that supplementation of that Declaration is now required, given that the spinoff has occurred and the financial condition of both Chemours and DuPont is necessarily much different than as represented prior to the spinoff.  More specifically, it is undisputed that the spinoff resulted in the transfer of *billions of dollars* in assets between Chemours and DuPont and has vastly changed the financial condition of both entities.  As such, it cannot be disputed that DuPont's prior representations as to the financial condition of both companies from over a year ago, before that transfer of assets, are now materially inaccurate and incomplete, and must be supplemented, as

12451428.1

Plaintiffs have requested. *See* Fed. R. Civ. P. 26(e); DO8 [ECF No. 2556] at 4 ("Rule 26(e) requires parties to supplement their Rule 26(a) disclosures and written discovery 'in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect,' unless the additional or corrective information has been otherwise known to the other parties." (quoting Fed. R. Civ. P. 26(e)(1)(A).)

The seemingly rapid deterioration of the financial status of both companies, as being reported in the popular press, also compels Plaintiffs to respectfully request an expedited briefing and hearing schedule on this matter. As explained in connection with Plaintiffs' previous two Motions to Compel this financial discovery from DuPont, Plaintiffs want to make sure that the Chemours spinoff is not part of a plan by DuPont to substitute a party defendant, or to significantly alter the financial status of the existing defendant after expert discovery has closed but immediately prior to commencement of the first trial in this MDL on September 15, 2015. (*See, e.g.,* Pls. Second Mot. to Compel [ECF 1903] at 13-15 (also noting Plaintiffs' concerns that DuPont may be trying to use the Chemours spinoff to somehow divest this Court of jurisdiction through shifting the matter into bankruptcy court (and thus forcing plaintiffs to endure *years* of additional delay before any recovery on any judgment); *see also* Reply to Plaintiffs Second Mot. To Compel [ECF No. 2143] at 2, 11 (repeating similar concerns).)

## III.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order compelling DuPont, pursuant to Civil Rule 37, to: 1) produce the complete, final Separation Agreement between DuPont and Chemours, including all schedules,

exhibits, and any other contracts or agreements or other documents incorporated into and/or made a part of that final Separation Agreement; 2) produce an updated version of DuPont's May 7, 2014, Declaration executed by a current, duly-authorized employee/agent of DuPont that reflects the current (post-spinoff) status of all information addressed in that discovery response now that Chemours has become a separate, stand-alone company, including that previously contained in paragraphs 6 and 7 of the original Miller Dec.; and 3) confirm through a current DuPont employee that, with respect to any judgment that may be entered in favor of a plaintiff in this MDL, DuPont remains the party fully liable to the plaintiff for any such judgment, and that no plaintiff in this MDL will have to look to Chemours to satisfy any such judgment.   *See* Fed. R. Civ. P. 37.  Because the Chemours spinoff has occurred, there is no possible prejudice to DuPont from providing any of this information.

Respectfully submitted,

_ s/ Michael A. London_____
Michael London
Douglas & London, PC
59 Maiden Lane, 6th Floor
New York, NY  10038
Telephone: 212-566-7500
Fax: 212-566-7501

Jon C. Conlin
Cory Watson, P.C.
2131 Magnolia Ave., Suite 200
Birmingham, AL  35205
Telephone: 205-328-2200
Fax: 205-324-7896
Email: jconlin@cwcd.com

Robert A. Bilott
Taft Stettinius & Hollister LLP

12451428.1

425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
Telephone:  513-381-2838
Fax:  513-381-0205
Email:  bilott@taftlaw.com


*Plaintiffs' Steering Committee Co-Lead
Counsel*

14

12451428.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 20th day of July, 2015 and was thus served electronically upon all counsel of record.

s/ Michael A. London

15

12451428.1