UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

Civil Action 2:13-md-2433
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

This document relates to: ALL CASES.

## DISPOSITIVE MOTIONS ORDER NO. 5

### Defendant's Motions for Summary Judgment Related to Specific Causation

This matter is before the Court on two motions filed by Defendant E. I. du Pont de Nemours and Company ("DuPont"): DuPont's Motion for Summary Judgment on the Individual Claims of Trial Plaintiff Carla Marie Bartlett Based on Specific Causation (ECF No. 2816), and DuPont's Motion for Summary Judgment on the Individual Claims of Trial Plaintiff John Wolf Based on Specific Causation (ECF No. 2817). Those motions are fully briefed. (ECF Nos. 3196, 3197, 3560, 3561.) For the reasons that follow, the Court **DENIES** DuPont's Motions.

I.

DuPont's current motions are directed at Plaintiff Carla Marie Bartlett and Plaintiff John Wolf, the first two Plaintiffs selected for trial ("Trial Plaintiffs") in this multidistrict litigation ("MDL"). Mrs. Bartlett's case is scheduled for trial on September 14, 2015, and Mr. Wolf is scheduled to take his case to trial on November 30, 2015.

The Trial Plaintiffs both allege that they are members of the class ("*Leach* Class") of individuals who are permitted under a contractual agreement ("*Leach* Settlement Agreement") to

file claims against DuPont based on six human diseases ("Linked Diseases") that they believe were caused by their exposure to ammonium perfluorooctanoate ("C-8" or "PFOA") discharged from DuPont's Washington Works plant. (*Leach* Settlement Agreement ("S.A."); ECF No. 820-8.) If any of the plaintiffs in this MDL can show that they are a member of the *Leach* Class and that they suffer or suffered from a Linked Disease, this Court must apply the applicable Probable Link Finding to them. Application of the Probable Link Finding establishes that it is more likely than not that there is a link between that class member's exposure to C-8 and his or her Linked Disease, and DuPont is prohibited from challenging whether it is probable that exposure to C-8 is capable of causing that Linked Disease. (S.A. at §§ 3.3, 12.2.1, 12.2.2.)

Mrs. Bartlett alleges that she suffered from kidney cancer and Mr. Wolf claims that he suffers from ulcerative colitis. Both of these human diseases are Linked Diseases.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting

Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

DuPont argues that it is entitled to summary judgment on the Trial Plaintiffs' personal injury claims because neither Mrs. Bartlett nor Mr. Wolf can "satisfy [their] burden in this individual, toxic tort lawsuit of proving that [their] claimed exposure to drinking water containing PFOA from DuPont's Washington Works facility *specifically caused*" their Linked Diseases. (DuPont's Mot. Regarding Bartlett at 1; DuPont's Mot. Regarding Wolf at 1.) First, DuPont contends that the Trial Plaintiffs' "causation experts have not offered any reliable or admissible evidence on this essential specific causation issue." *Id.* Second, DuPont maintains that the Trial Plaintiffs "cannot prove as a matter of law that [their Linked Diseases were] more likely than not the result of [their] exposure to PFOA, as opposed to other risk factors and explanations," including the "much more likely probability" that Mrs. Bartlett's kidney cancer resulted from her chronic obesity and Mr. Wolf's "ulcerative colitis was due to spontaneous or idiopathic causes." *Id.* DuPont's arguments are not well taken.

3

DuPont's first argument has been considered and rejected by this Court in its Evidentiary Motions Order No. 1.[1] ("EMO 1".) In EMO 1, the Court concluded that the specific causation opinions of the Trial Plaintiffs' experts constitute reliable and admissible evidence.[2]

As to DuPont's second argument, the Court finds that much of it is based upon DuPont's position set forth in its briefing on its First Motion Regarding Causation (ECF No. 1032), Overview on Causation (ECF No. 2813), Motion for Clarification (ECF No. 2814), and Motion to Exclude Specific Causation Experts (ECF No. 2823). In addition to EMO 1, this Court issued two Dispositive Motions Orders ("DMO"), DMO 1 and DMO 1-A,[3] in which it considered DuPont's position on causation and explained in detail why it is untenable under the *Leach* Settlement Agreement. The Court will not reiterate the content of those decisions here, and instead, incorporates them in their entirety.

The Court will direct its instant inquiry to the new arguments DuPont makes in its specific causation motions. DuPont posits that, even if the Trial Plaintiffs' specific causation experts' opinions are admissible, these experts have failed "to demonstrate that [the Trial Plaintiffs] PFOA exposure was 'more likely than not' the cause of [their Linked Diseases] compared to any other cause. (DuPont's Mot. Regarding Bartlett at 12; DuPont's Mot. Regarding Wolf at 10–11.) DuPont continues:

> As the Sixth Circuit has recognized, "[e]ven if expert opinion or evidence on one side were relevant and admissible, if insufficient to allow a reasonable juror to conclude that the position more likely than not is true, it may be the basis for a directed verdict or a grant of summary judgment. *Conde v. Vesicol*, 24 F.3d 809, 813 (6th Cir. 1994); *see also* Imwinkelried, *The Admissibility and Legal Sufficiency of Testimony About Differential Diagnosis (Etiology): Of Under - and*

---

[1] DuPont did not have the benefit of this Court's decision in EMO 1 because it was issued after DuPont had already filed its motions related to specific causation.

[2] There is one exception regarding a portion of an opinion related to obesity and C-8 acting synergistically that has been excluded. That exclusion, however, has no impact on the Court's current analysis.

[3] DuPont did not have the benefit of DMO 1-A before it filed its motions related to specific causation.

4

> *Over - Estimations*, 56 Baylor L. Rev. 391, 419 (Spring 2004) ("Even after deciding to admit a differential etiology opinion on specific causation, the trial judge should not presume that the opinion is automatically legally sufficient to make out a submissible case on that issue. In a more discerning manner, the judge must scrutinize both the expert's affirmative reasons for selecting a cause and the negative reasons for rejecting alternative causes").

*Id.*

Thus, in DuPont's view, the issue before the Court is whether the evidence submitted by the Trial Plaintiffs is sufficient to allow a reasonable juror to conclude that the Trial Plaintiffs' "PFOA exposure was 'more likely than not' the cause of [their Linked Diseases] compared to any other cause." (DuPont's Mot. Regarding Bartlett at 12.) The Court concludes that the evidence submitted by the Trial Plaintiffs is sufficient to allow a reasonable juror to conclude that C-8 specifically caused their Linked Diseases.

There is no dispute that as part of their cases-in-chief the Trial Plaintiffs must prove that C-8 specifically caused their Linked Diseases. In their attempt to do so, the Trial Plaintiffs here offer several expert witnesses who utilize differential diagnoses methodology to establish specific causation. (Trial Pls.' Expert Reports; ECF No. 3441.) It is well-established in the Sixth Circuit that employing a differential diagnosis is an appropriate means to establish causation. *See Best v. Lowe's*, 563 F.3d 171, 178-80 (6th Cir. 2009) (citing *Hardyman v. Norfolk & Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)). "Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Hardyman*, 243 F.3d at 260.

As this Court concluded in EMO 1, the Trial Plaintiffs' expert witnesses reliably "ruled in" potential causes and risk factors of the Trial Plaintiffs' Linked Diseases, and then systematically "ruled out" potential causes and risk factors in arriving at their medical causation opinions. The expert witnesses' ultimate conclusion is that the Trial Plaintiffs exposure to C-8

5

was a substantial contributing factor to their Linked Diseases. DuPont's specific causation experts reach the opposite conclusion. The issue before the Court reflects a quintessential questions for determination by a jury. That is, the weight to be given evidence and the credibility to be accorded to any particular witness are unquestionably the province of the jury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530–32 (the question of whether the expert witness' "opinion is accurate in light of his use of [certain] data goes to the weight of the evidence, not to its admissibility").

### IV.

Based on the foregoing, the Court concludes that the Trial Plaintiffs have set forth specific facts showing that there is a genuine issue for trial. The Court, therefore, **DENIES** both DuPont's Motion for Summary Judgment on the Individual Claims of Trial Plaintiff Carla Marie Bartlett Based on Specific Causation (ECF No. 2816), and DuPont's Motion for Summary Judgment on the Individual Claims of Trial Plaintiff John Wolf Based on Specific Causation (ECF No. 2817).

**IT IS SO ORDERED.**

\_\_\_7-21-2015_____  _____
**DATE**                                  **EDMUND A. SARGUS, JR.**
                                          **CHIEF UNITED STATES DISTRICT JUDGE**