IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE:  E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION | CASE NO. 2:13-md-2433<br><br>JUDGE EDMUND A. SARGUS, JR.<br><br>MAGISTRATE JUDGE ELIZABETH P. DEAVERS |

This document relates to: <u>ALL ACTIONS</u>.

**DUPONT'S OPPOSITION TO PLAINTIFFS'
THIRD MOTION TO COMPEL**

## INTRODUCTION

There is no factual support for the "parade of horribles" on which the Plaintiffs rely in attempted support of their efforts to obtain additional discovery regarding the spin-off of DuPont's Performance Chemicals business, nor any law obligating DuPont to provide such additional discovery, <u>as this Court already recognized in denying Plaintiffs' Second Motion to Compel</u>.  *See* Discovery Order No. 8 [ECF No. 2556] at 5.  Plaintiffs *already have <u>all</u>* of the information they need to satisfy themselves that DuPont (not Chemours) is the "party defendant for any judgment in this MDL" and that DuPont remains a financially healthy company—which are the claimed concerns that Plaintiffs have cited since the outset for pursuing this line of discovery.  Accordingly, Plaintiffs' Third Motion to Compel [ECF No. 4106] (the "Third Motion") should be denied.

As this Court is aware, and has previously recognized, DuPont fully complied with the initial Discovery Order on this issue, and provided Plaintiffs with the information that this Court

previously held to be within the <u>limited</u> "permissible scope" of discovery, including the timing of the spin-off, which entity would retain the obligations and liabilities under the *Leach* Settlement Agreement, and financial information for the entity retaining the obligations and liabilities (which could be provided through public filings).  *See* Discovery Order No. 8 at 2-4; Discovery Order No. 4 [ECF No. 247] at 11; May 7, 2014 Declaration of Justin M. Miller ("Miller Declaration"), [ECF No. 2042-1].

Further, after the July 1, 2015 effective date of the spin-off, DuPont submitted a supplemental declaration from Justin Miller, Associate General Counsel of DuPont, under penalty of perjury, which <u>r</u>econfirmed that:  (1) **DuPont remains the party obligated to Class Members under the *Leach* Settlement Agreement**; (2) **DuPont remains the named defendant in the cases in this MDL**; (3) DuPont has no current intention of filing a motion to try to substitute the defendant in the cases in this MDL; and (4) **DuPont remains** a publicly traded company **subject to public filings and disclosures, including disclosures with respect to its financial condition**.  *See* July 20, 2015 Supplemental Declaration of Justin M. Miller ("Supplemental Miller Declaration") [ECF No. 4081-6], attached as Ex. A.

Importantly, as this Court has already recognized, **<u>DuPont's</u> obligation <u>to Class Members</u> under the *Leach* Settlement Agreement (which remains unchanged) is distinct from the spin-off company's (n/k/a Chemours) separate agreement to indemnify DuPont**. While Plaintiffs make much ado in their Third Motion about the Separation Agreement and its schedules, that Agreement has **no** impact on DuPont's obligations to the *Leach* Class Members. As the Court previously noted, the Separation Agreement only effects the "allocation of liabilities <u>as between DuPont and Chemours</u>." Discovery Order No. 8 at 5 (emphasis added).  In

short, the spin-off of Chemours was essentially a non-event in terms of any impact to Plaintiffs, and is completely irrelevant to these proceedings.[1]

Without any valid factual or legal basis, Plaintiffs continue to speculate that the spin-off is somehow part of a nefarious plan or scheme by DuPont to shift assets and escape its obligations under the *Leach* Settlement Agreement and as a defendant in these MDL proceedings. To this end, Plaintiffs point to inadmissible, subjective, hearsay statements in articles in the "popular press" regarding the financial status of DuPont and Chemours. *See* Third Mot. at 12. But Plaintiffs' speculative claims of significant financial deterioration are belied by the **publicly-available financial reports issued just last week**, **showing $8.6 billion in net sales in the second quarter of 2015 alone**, as well as evidence from Plaintiffs' own expert economist, who has repeatedly opined that DuPont is financially healthy and growing. Indeed, in the wake of the spin-off, DuPont has celebrated its 213th anniversary, its 444th consecutive shareholder dividend payment, and has a market capitalization of more than $50 billion.

Indeed, Plaintiffs cannot and do not dispute that DuPont is a multi-billion dollar company, and that Plaintiff Bartlett is claiming less than $70,000 in special damages and Plaintiff Wolf is claiming less than $10,000 in special damages. For example, at page 6, footnote 4 of the Plaintiffs' opposition filed yesterday in response to the motion to bifurcate [ECF 4124], they refer to DuPont as a "massive, Fortune 500, multi-national, publicly traded corporation." There is no colorable claim that DuPont will not be able to satisfy its obligations in this MDL, and no factual or legal support for the Plaintiffs' motion.

---

[1] As the court knows, DuPont has moved to preclude Plaintiff Bartlett from presenting any testimony or making any reference at trial to DuPont's spin-off of its Performance Chemicals segment in July 2015, or any indemnification agreement between DuPont and Chemours. *See* DuPont's Mot. *in Limine* to Exclude Any Reference to the "Spin-Off" of Performance Chemicals, or Any Indemnification Agreement Between DuPont and Chemours (Motion *in Limine* No. 11) [ECF No. 4081]. DuPont incorporates that briefing here, in further support, to show that the discovery sought is not relevant, and should not be admissible at trial.

For all of these reasons, as discussed further below, Plaintiffs' Third Motion should be denied.

## RELEVANT BACKGROUND

DuPont will not waste this Court's time with a point-by-point response to the nine page "Factual and Procedural Background" section of Plaintiffs' Third Motion. As with Plaintiff's Second Motion, that section is largely a regurgitation of Plaintiffs' prior motions, to which DuPont already responded and which this Court fully considered in issuing Discovery Order No. 8, which <u>denied</u> Plaintiffs' request for disclosure of any indemnity agreement between Chemours and DuPont and the working draft of the non-public, proposed Separation Agreement. *See* DuPont's Memo. in Opp. to Plaintiffs' Second Mtn. to Compel [ECF No. 2042] at 4-9; Discovery Order No. 8.

While Plaintiffs pretend that this Court only declined to order additional discovery on the conditions that "DuPont and Chemours would emerge from the spinoff with no material change in the financial status of the entity responsible to Plaintiffs in this MDL" and that "DuPont would be providing a copy of the final Separation Agreement to Plaintiffs well before the July 1, 2015 spinoff," *see* Third Mot. at 5, this totally mischaracterizes the Court's actual rulings and the parties' separate discussions on this issue.[2] This Court did <u>not</u> state that DuPont must emerge from the spin-off with "no material change" whatsoever in its financial status. *See generally* Discovery Order No. 8. Nor did this Court order (or DuPont agree) that DuPont would directly send Plaintiffs a copy of the Separation Agreement and all of its schedules at any time, much less

---

[2] DuPont disputes these and the numerous other mischaracterizations in Plaintiffs' Third Motion. For example, among other things, Plaintiffs claim that they were assured "that everything DuPont had previously represented about the spinoff, its impact on the claims of any plaintiff in this MDL, and DuPont's current financial condition would be confirmed in the final Separation Agreement[.]" Third Mot. at 4. No such assurances were ever made about the contents of the final Separation Agreement, and Plaintiffs' statements mischaracterize the past discussions.

4

"well before" the effective date of the spin-off. To the contrary, this Court noted that "Plaintiffs will have <u>access</u> to the finalized Separation Agreement." *Id.* at 5 (emphasis added). This is consistent with this Court's prior discovery rulings, in which it expressly directed that "[t]o the extent some of the information is publicly available, such as in a United States Securities and Exchange Commission Form 10-K, DuPont may designate where that information has been provided." Discovery Order No. 4 at 11.

Indeed, it is undisputed that, following this Court's ruling in Discovery Order No. 8, the Separation Agreement between Chemours and DuPont was made publicly available, and Plaintiffs had access to it: (1) on the SEC website as an exhibit to Chemours' Form 10 amendments; and (2) on DuPont's website. *See* Third Mot. at 6-7. In fact, Plaintiffs' counsel admits that they obtained the Separation Agreement prior to the spin-off by simply visiting DuPont's website. *Id.*

It is also undisputed that, in response to requests from Plaintiffs' counsel, DuPont's counsel has repeatedly assured Plaintiffs in the months leading up to the spin-off that "the statements made in the [prior] May 7, 2014 declaration of Justin Miller remain accurate." *Id.* Then, DuPont provided Plaintiffs with a Supplemental Declaration signed by Mr. Miller under penalty of perjury on July 20, 2015—*after the July 1 effective date for the spin-off*—<u>re</u>confirming that:

> 2. The defendant in all of the cases involved in the current PFOA MDL is DuPont, and DuPont has no current intention to file a motion under Federal Civil Rule of Procedure 25(c) to substitute the party defendant. If any such motion were filed in the future, plaintiffs' counsel would have notice and an opportunity to respond, there would be a hearing, and the Court would make a determination after hearing all parties.
>
> 3. As between the parties to the *Leach* settlement agreement, DuPont remains liable for its obligations. **The obligations of DuPont to the other parties under the *Leach* settlement agreement remain obligations of DuPont, regardless of the agreement by Chemours to**

5

>    **indemnify DuPont** for any payments that DuPont may be required to make related to the MDL proceedings or under the *Leach* settlement agreement.
>
> 4.  DuPont is now, and is expected to remain, a publicly traded company subject to public filings and disclosures, including disclosures with respect to financial condition, as required by the SEC and other applicable laws. DuPont intends to make appropriate filings and disclosures to comply with all such laws.

Supp. Miller Dec. at ¶¶ 2-4 (emphasis added). Further, although Plaintiffs' counsel acknowledges that they already had access to versions of the Separation Agreement online, counsel for DuPont sent them a courtesy copy of the final executed version. *See* Third Mot. at 9.

Plaintiffs' counsel has also incorrectly implied that information on DuPont's current financial condition is not available to them. *Id.* at 4, 10. This is false and misleading. Plaintiffs' own expert forensic economist, Robert W. Johnson, who previously opined in December 2014 that DuPont was financially stable, reconfirmed in a March 2015 addendum that "DuPont is a financially healthy and growing company with $34.7 billion in net sales and $3.6 billion in net income in 2014" and a "net worth of 13.4 billion as of 12/31/2014." Mar. 9, 2015 Addendum to Expert Report of Robert W. Johnson ("Addendum to Johnson Report") [ECF No. 3200, Attachment #2], Financial Condition Report at 1, attached as Ex. B. Moreover, **on July 28, 2015, DuPont publicly reported $8.6 billion in net sales for the second quarter of 2015, including $1.5 billion in net sales for its Performance Chemicals segment (now "Chemours")**. *See* DuPont Form 10-Q; Chemours Form 8-K, Ex. 99.1, *available at* http://www.sec.gov.

In sum, Plaintiffs' continued efforts to obtain additional discovery related to the spin-off, the Separation Agreement, and the financial condition of DuPont and Chemours is an irrelevant side-show, a wasteful distraction from the issues that actually need to be decided in the current

6

cases, and can serve no purpose other than to distract DuPont and this Court from trial preparations. The Third Motion should be denied.[3]

## ARGUMENT

In the scant two-page argument section of their Third Motion, Plaintiffs claim that they need additional discovery because they "want to make sure that the Chemours spinoff is not part of a plan by DuPont to": (1) "substitute a party defendant," or (2) "to significantly alter the financial status of the existing defendant." Third Mot. at 12. However, similar to their prior motions, the Third Motion cites <u>no law</u> (or <u>facts</u>) supporting Plaintiffs' extreme positions, which are belied by the actual record facts.

Plaintiffs once again completely misconstrue DuPont's obligations under Federal Civil Rule 26. Rule 26(e) "does not place a continuing burden" to supplement without limitation. *See* Fed. R. Civ. P. 26(e) advisory committee's note. The obligation to supplement a prior response arises only where "a party learns in some material respect the disclosure or response is incomplete or incorrect." *See Rhein v. Smyth Auto, Inc.*, Case No. 1:10-cv-710, 2012 U.S. Dist. LEXIS 108336, at *8 (S.D. Ohio Aug. 2, 2012) (quoting Fed. R. Civ. P. 26(e)(1)(A)). Where there is no evidence that a party has learned that its prior response was incomplete or incorrect, courts have repeatedly and consistently held that there is nothing to supplement. *See id*. at *8–9; *Graff v. Haverhill N. Coke Co*., Case No. 1:09-cv-670, 2011 U.S. Dist. LEXIS 45788, at *11 (S.D. Ohio Apr. 28, 2011). Moreover, as Plaintiffs' brief recognizes, Rule 26 (e)(1)(A) does <u>not</u> require supplementation where the "additional or corrective information has been otherwise known to the other parties." Third Mot. at 12 (paraphrasing Fed. R. Civ. P. 26(e)(1)(A)).

---

[3] DuPont actively participated in good faith in the mediation process on these issues, but mediation was not successful, and the Third Motion followed.

7

Based on this well-established Rule and case law, this Court <u>denied</u> Plaintiffs' Second Motion to Compel, which was based on substantially similar <u>mis</u>constructions of Rule 26 and the applicable law. *See* Discovery Order No. 8 at 4-5 ("The Court agrees with DuPont. . . . The documents upon which Plaintiffs rely to conclude supplementation is warranted do not require the conclusion that DuPont's earlier disclosures were, in some material respect, 'incomplete or incorrect.'"). For the same reasons now, as explained below, Plaintiffs' Third Motion should be denied.

**I.     DuPont Has Repeatedly Reconfirmed That There Is No Plan To Substitute The Party Defendant.**

As in the past, Plaintiffs' stated concern in seeking additional discovery related to the spin-off is whether the "right defendant" has been named in the lawsuits consolidated in this MDL, and whether there is any plan to "substitute a party defendant." *See, e.g.*, Third Mot. at 12; Trans. of Feb. 28, 2014 Status Conference [ECF No. 217] at 22 (R. Bilott explaining that "We just want to make sure we still have the same defendant here" and that "DuPont will still be the defendant . . .").

It is undisputed that DuPont has recently provided Plaintiffs with a Supplemental Miller Declaration that confirms (once again) that Plaintiffs have the "right defendant" and there is no current plan to substitute the party defendant. *See* Supp. Miller Dec. ¶ 2 ("The defendant in all of the cases involved in the current PFOA MDL is DuPont, and DuPont has no current intention to file a motion under Federal Civil Rule of Procedure 25(c) to substitute the party defendant."). Accordingly, DuPont is under no further duty to supplement its discovery responses, because there is no evidence that its responses, including the supplemental declaration provided just recently, are incomplete or incorrect in any way. Among other things, it remains true that <u>DuPont</u> is the signatory to the *Leach* Settlement Agreement, <u>DuPont</u> is the defendant, and that

8

<u>DuPont</u> remains obligated to Class Members under the Settlement Agreement, regardless of any separate obligation of Chemours to indemnify DuPont.

Plaintiffs' attempt to use the Separation Agreement between Chemours and DuPont to manufacture "evidence" of inaccuracies in Mr. Miller's declarations is unavailing. As this Court has recognized, the Separation Agreement (and its various exhibits and schedules), pertain to the "allocation of liabilities *<u>as between DuPont and Chemours</u>*." It does **not** impact the obligations under the *Leach* Settlement Agreement *<u>as between DuPont and Class Members</u>*. Discovery Order No. 8 at 5 (emphasis added). Indeed, Mr. Miller's Supplemental Declaration—like his prior one—is clear that "**[t]he obligations of DuPont to the other parties under the *Leach* settlement agreement remain obligations of DuPont**, regardless of the agreement by Chemours to indemnify DuPont for any payments that DuPont may be required to make related to the MDL proceedings or under the *Leach* settlement agreement." Supp. Miller Dec. ¶ 3 (emphasis added).

Although Plaintiffs note that the copies of the Separation Agreement that were publicly available before the spin-off and the copy of the final, executed version sent to them by counsel for DuPont did not contain the "accompanying schedules and attachments" identifying the specific "assets and liabilities" to be transferred between DuPont and Chemours, this is of no import because the precise details of the allocation of assets and liabilities <u>*as between DuPont and Chemours*</u> in connection with the spin-off transaction are completely irrelevant to any obligations <u>*as between DuPont and Leach Class Members*</u>. *See* Discovery Order No. 8 at 5.

For all these reasons, it is clear that the statements in Mr. Miller's declarations—that DuPont is the named defendant, that there is no intent to substitute any party for DuPont as the party defendant, and that DuPont is liable for any obligations to *Leach* Class Members under the

9

*Leach* Settlement Agreement—remain accurate and correct.. Therefore, there is nothing to supplement.

## II. DuPont Is A Financially Healthy Company And Has No Plans To "Significantly Alter Its Financial Status" To Avoid Liabilities.

Plaintiffs claim that they are entitled to additional discovery because the "financial condition of DuPont and its related spinoff company—Chemours—may be rapidly deteriorating and changing" and they speculate that they need to confirm that the spin-off is not part of a plan by DuPont to "significantly alter [its] financial status" to avoid any liabilities to Plaintiffs. Third Mot. at 1, 12. These claims are speculative, unpled, unsupported, and inaccurate, and are not relevant to any issue in dispute or any potential liabilities in these MDL proceedings.[4]

Indeed, Plaintiffs' expert economist, Mr. Johnson, reconfirmed in a March 2015 addendum to his expert report that "DuPont is a financially healthy and growing company with $34.7 billion in net sales and $3.6 billion in net income in 2014" and a "net worth of 13.4 billion as of 12/31/2014." Addendum to Johnson Report at 1. Mr. Johnson has not submitted any additional addenda changing his opinion, or contending in any respect that DuPont would have any financial difficulties meeting its obligations to Class Members under the *Leach* Settlement

---

[4] Even if the financial condition of Chemours was relevant to the obligations as between DuPont and *Leach* Class Members (it is not), Plaintiffs' trumped-up allegations of a "rapidly deteriorating" financial status are baseless. As in their Second Motion, Plaintiffs make reference in their Third Motion to hearsay reports from various media sources that Plaintiffs construe as raising "concerns" about the financial condition of DuPont and Chemours. *See* Third Mot. at 7-8. These reports are nothing more than unconfirmed media speculation, are wholly irrelevant and inadmissible hearsay, and should be stricken from the record. Indeed, on July 28, 2015, DuPont reported Performance Chemicals segment net sales in the second quarter of $1.5 billion. *See* Chemours Form 8-K, Ex. 99.1, *available at* http://www.sec.gov. Further, Chemours reported that the corporate restructuring, if anything, will reduce overall costs. *See id.* (quoting Mark Vergnano, president and chief executive officer of Chemours: "We expect that our previously announced restructuring actions taken in the second quarter will reduce costs by $40 million in the second half of 2015 and $80 million annually thereafter. We are also targeting further cost reductions to deliver an additional $120 million in savings. Combined, we expect that these actions will reduce spending levels by approximately $200 million by year-end 2016."). All of this has been publicly-reported.

Agreement.  Nor could he.  Just last week, on July 28, 2015, DuPont reported **$8.6 billion in net sales** for the second quarter of 2015 <u>alone</u>.  *See* DuPont Form 10-Q at p. 3, *available at* http://www.sec.gov.  **In stark contrast, the plaintiffs** for the first and second bellwether trials in this MDL, Carla Bartlett and John Wolf, only **claim economic damages of approximately $65,000 and $10,000**, respectively.  *See* Oct. 12, 2014 Interrogatory Responses of Plaintiff Bartlett (Answer to Interrogatory No. 8), attached as Ex. C; Oct. 14, 2014 Interrogatory Responses of Plaintiff Wolf (Answer to Interrogatory No. 8), attached as Ex. D.  Plaintiffs' "concerns" that DuPont may be unable to fulfill any obligations to them are thus completely unfounded.

Moreover, as this Court has previously recognized, Plaintiffs' attempt to shift the focus to Chemours is a red herring.  As DuPont has repeatedly explained and as this Court has acknowledged, DuPont—not Chemours—is the party defendant that would be required to satisfy any judgment in this MDL.  The financial condition of Chemours is thus of no import to the Plaintiffs.[5]

---

[5] While Plaintiffs suggest that DuPont "may be trying to use the Chemours spinoff to somehow divest this Court of jurisdiction through shifting the matter into bankruptcy court," Third Mot. at 12, this is rank speculation.  Further, even assuming *arguendo* that Chemours went into bankruptcy, it would have little to no impact on this litigation.  Plaintiffs are not direct creditors of Chemours, and this MDL would not be subject to any automatic stay.  *See* 11 U.S.C. § 362; *Campbell v. Countrywide Home Loans, Inc.* 545 F.3d 348, 354-55 (5th Cir. 2008) (stating that, when bankruptcy petition is filed, automatic stay "prevents *creditors* from taking any actions against the debtor or property of the debtor's estate for pre-petition debts") (emphasis added).

Separately, as DuPont has previously explained, to the extent Plaintiffs are seeking to engage in a "fishing expedition" for evidence of a prospective, unpled, and baseless claim for fraudulent transfer (as opposed to conducting permissible discovery regarding their existing claims), this is impermissible.  *See Fulbright & Jaworski, LLP v. Mariner Health Care, Inc*., Civil No. SA-05-CA-1127-FB, 2006 U.S. Dist. LEXIS 86241, at *21 (W.D. Tex. Nov. 2, 2006) ("attempted exploration of whether there is a good faith basis to support a new [fraudulent transfer] claim" is an impermissible "fishing expedition"); *see also Plastipak Packaging, Inc. v. DePasquale*, 363 F. App'x 188, 192 (3d Cir. 2010).

Plaintiffs thus have not demonstrated—and cannot demonstrate—that they have any need for additional discovery regarding the spin-off and the financial condition of DuPont or Chemours.

## CONCLUSION

For all of the foregoing reasons, and in the interests of justice, the Third Motion to Compel should be denied.

Respectfully submitted:

*s/ Damond R. Mace*
Damond R. Mace (0017102) (Trial Attorney)
Stephen M. Fazio (0076873)
Stephanie E. Niehaus (0075511)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
(216) 479-8500 (Phone)
(216) 479-8780 (Fax)

C. Craig Woods (0010732)
Aaron T. Brogdon (0081858)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-2700 (Phone)
(614) 365-2499 (Fax)

Attorneys for Defendant E. I. du Pont de Nemours and Company

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on this 4th day of August 2015 and was thus served automatically upon all counsel of record for this matter.

*s/ Damond R. Mace*
Damond R. Mace (0017102)
