UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

:  Civil Action 2:13-md-2433
:  CHIEF JUDGE EDMUND A. SARGUS, JR.
:  Magistrate Judge Elizabeth Preston Deavers

This document relates to: <u>ALL CASES</u>.

## DISPOSITIVE MOTIONS ORDER NO. 6

### Plaintiffs' Motion for Summary Judgment on the Issue of Duty

This matter is before the Court on Plaintiffs' Third Motion for Partial Summary Judgment (ECF No. 2820), Defendant's Memorandum in Opposition (ECF No. 3202), and Plaintiffs' Reply (ECF No. 3553). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

### I.

Plaintiffs in this this multidistrict litigation ("MDL") allege that they are members of the class of individuals who are permitted under a contractual agreement ("*Leach* Settlement Agreement") to file claims against Defendant E. I. du Pont de Nemours and Company ("DuPont"). Plaintiffs all suffer from one or more of six specific human diseases ("Linked Diseases") that they believe were caused by their exposure to ammonium perfluorooctanoate ("C-8" or "PFOA") discharged from DuPont's Washington Works plant into their drinking water. (*Leach* Settlement Agreement; ECF No. 820-8.) Plaintiffs allege claims for, *inter alia*, personal injury and punitive damages.

Plaintiff Carla Marie Bartlett and Plaintiff John M. Wolf are the first two plaintiffs selected for trial ("Trial Plaintiffs") in this MDL. Mrs. Bartlett alleges that she suffered from kidney cancer and Mr. Wolf claims that he suffers from ulcerative colitis. Both of these human diseases are Linked Diseases. Mrs. Bartlett's case is scheduled for trial on September 14, 2015, and Mr. Wolf is slated to try his case on November 30, 2015.

This Court has issued numerous decisions in this MDL. Some of the Dispositive Motions Orders ("DMOs") and Evidentiary Motions Orders ("EMOs") impact the instant analysis. To begin with, in DMO 3 the Court determined that Mrs. Bartlett's case will be tried under the law of Ohio, and that West Virginia law governs Mr. Wolf's claims. (DMO 3, Choice of Law; ECF No. 3551.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

Plaintiffs move for summary judgment on the issue of duty as it relates to all Plaintiffs in this MDL. DuPont responds that (A) Plaintiffs' Motion is properly directed only to the Trial Plaintiffs; (B) the alleged "undisputed facts" upon which Plaintiffs rely are vigorously disputed, and (C) there are genuine issues of material fact as to whether DuPont owed a duty of care to the Trial Plaintiffs.

**A. Global Summary Judgment**

DuPont is correct that this Court has held that its decisions are "dispositive *only* on the claims" before it and "instructive to claims filed by other plaintiffs." (DMO 4, Additional Claims, at 6; ECF No. 3973.) Currently, the Court is considering the claims that the Trial Plaintiffs will take to trial. Therefore, the Court accepts Plaintiffs' Motion as one directed toward the Trial Plaintiffs' claims.

**B. Plaintiffs' Assessment of the Undisputed Facts**

In Plaintiffs' Motion, they rely on what they refer to as "undisputed facts," which they gather from their "filings supporting their first two Motions for Partial Summary Judgment in this MDL, in filings opposing a discovery motion by DuPont, and in filings opposing two separate Motions for Summary Judgment previously filed by DuPont." (Pls.' Third Mot. for

3

Summ. J. at 1.) Additionally, they rely upon DuPont's Civil Rule 36 admissions, "Civil Rule 30(b)(6) deposition testimony, interrogatory responses, pleadings (*i.e.,* answers), pretrial orders, and motions/related court documents" that Plaintiffs identify in "Attachment 1." *Id.* at 2. Attachment 1 is the same document that Plaintiffs relied upon in their Second Motion for Summary Judgment, in which they asked this Court to accept all of the 429 statements in the Attachment as unrebuttable judicial admissions. (ECF No. 1205-2.) Plaintiffs contend that all of these facts are undisputed because:

> DuPont never disputed any of the facts themselves – only whether those undisputed facts could be used as "judicial admissions" against DuPont in this MDL. Although the Court ruled that such prior statements could not be used as "judicial admissions," the Court noted (and DuPont did not dispute) that those statements could be used as "evidentiary admissions" of such facts in this MDL. Moreover, despite Plaintiffs' submission of all of those facts to the Court as "undisputed" in support of a Summary Judgment Motion, DuPont never came forward with any evidence to show that those facts were actually in dispute. (*See* Plaintiffs' Second MSJ Reply at 10-13 (ECF No. 1521).)

(Pls.' Third Mot. for Summ. J. at 2.) Plaintiffs continue, asserting that although DuPont had "the right to still rebut or challenge" these evidentiary admissions, "DuPont has not done so." (Pls.' Reply at 3.) Thus, Plaintiffs conclude, the 429 statements are admitted before this Court as undisputed facts.

DuPont responds to Plaintiffs' arguments related to the prior briefing filed before this Court, stating:

> [Plaintiffs] argue that somehow certain "facts" are "undisputed" because Plaintiffs asserted them in prior briefing, whether or not the facts were relevant to resolution of the issue then at hand, and DuPont did not directly refute them since they were not material to resolution of the then pending issue. It could not be more clear at this point in the litigation that the parties have fundamental factual disputes on the critical issues, including the timeline of DuPont's knowledge regarding potential human health impacts from [exposure to C-8]. DuPont has highlighted many of these factual disputes in prior briefing, and has directly responded to each and every specific "fact" that was necessary to a determination of the legal issues actually before the Court at that time. To the extent DuPont did not directly refute

4

> Plaintiffs' mischaracterization of some fact, and specifically explain why that characterization was incorrect or taken out of context, it is because that "fact" was extraneous and not material to the resolution of the then pending legal issue, and unnecessary to its resolution as a matter of law.

(DuPont's Mem. in Opp. to Pls.' Third Mot. for Summ. J. at 4.)

As to Plaintiffs' assertions related to the evidentiary admissions, DuPont contends that it did respond to each one of the 429 statements. *Id.* at 6 (citing DuPont's Mem. in Opp. to Pls.' Second Mot. for Summ. J., Ex. B, ECF No. 1408-2.) DuPont posits that the "focus of the motion was on the *evidentiary significance* of the 429 statements, and that was the focus of DuPont's opposition." *Id.* Further, DuPont asserts that even if it had not responded, the statements do not constitute "undisputed facts," relying on DMO 2, wherein the Court originally considered "Attachment 1":

> [A]s can be seen by the case law and the disagreement of the parties in the briefing currently before the Court, even attempting to determine whether [many of] the [429] statements made are those of fact, or statements that deal with opinions and/or legal conclusions requires extensive evaluation of the context in which they were made.

(DMO 2, DuPont's Prior Admissions, at 12; ECF No. 2557.)

DuPont's arguments are well taken. Plaintiffs misunderstand the timing of DuPont's burden. That is, the time for DuPont to challenge each evidentiary admission has not passed. DuPont may rebut or challenge an evidentiary admission when the issue is presented. For example, the Court explained in DMO 2 that "DuPont's responses to interrogatories do not constitute judicial admissions, but may be offered as evidence, the admissibility of which will be determined at trial in accordance with the Federal Rules of Evidence." *Id.* at 7. Plaintiffs, however, have presented to the Court in its current motion all of the answers to interrogatories as undisputed facts. DuPont has responded, as discussed below, to the facts that it believes are relevant to the issue before the Court. DuPont's failure to respond to the other statements

5

encompassed in the 429 set out in Attachment 1 does not bestow upon those statements the force of a Rule 36 admission.

The same is true with regard to the thousands of pages of prior briefing before this Court. DuPont's failure to go line-by-line and dispute every contention with which it took issue does not turn those contentions into unrebutted evidentiary admissions. Plaintiffs' cannot simply catalogue allegations made in prior briefing that may not have been relevant to the determination of the issues at hand and conclude that those facts are undisputed.

**C. Duty**

With regard to the issue of duty, the law in Ohio and West Virginia is nearly identical. To establish a claim for negligence under Ohio and West Virginia law, a plaintiff must allege facts showing: (1) the defendant owed him or her a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Strahin v. Cleavenger*, 216 W. Va. 175, 183 (2004). "The existence of a legal duty is a question for the court, unless alternate inferences are feasible based on the facts." *Grover v. Eli Lilly & Co.*, 63 Ohio St. 3d 756, 762 (1992); *Strahin*, 216 W. Va. at 183. Once a duty of care is established, it is for the fact-finder to determine if the defendant breached its duty. *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989); *Aikens v. Debow*, 208 W.Va. 486, 490 (W. Va. 2000).

In Ohio and West Virginia the existence of a duty derives from the foreseeability of the injury, which usually depends upon the defendant's knowledge. *Menifee*, 15 Ohio St. 3d at 77; *Strahin*, 216 W.Va. at 183; *Sewell v. Gregory*, 179 W. Va. 585, 588 (1988) ("The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised."). In Ohio, the "test for foreseeability is whether a reasonably prudent person

would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee*, 15 Ohio St.3d at 77. West Virginia's test is similar, considering whether "the ordinary person in the defendant's position, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result." *Sewell*, 179 W. Va. at 588.

Plaintiffs contend that it is for this Court to determine whether DuPont owed them a duty of care. As Plaintiffs highlight in their Reply, DuPont does not dispute that there is some legal determination for this Court to make regarding whether it owed any duty of care to the Trial Plaintiffs. DuPont, however, asserts that there is also a second question that cannot be determined by this Court. Specifically, DuPont argues that "when the facts about foreseeability as an element of duty are disputed and reasonable persons may draw different conclusions from them, two questions arise—one of law for the judge and one of fact for the jury." *Strahin*, 216 W. Va. at 185.

DuPont is correct that when the facts about foreseeability as an element of duty are disputed, there is an issue for a court to determine as a matter of law and an issue of fact for a jury to decide. *Id.* As the *Strahin* court explains:

> Essentially, the judge in cases such as the one before us has the responsibility of reviewing the evidence to see if it is sufficient for a jury to make a determination of whether or not it was foreseeable that the acts of the [defendant] could have under the facts of the case, disputed or not, [cause the ordinary person in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result[1] or whether a reasonably prudent person would have anticipated that an

---

[1] This is the relevant test under West Virginia law. *Sewell*, 179 W. Va. at 588. In *Strahin*, the test foreseeability was the one directed toward the duty a landowners or possessor of property owes to any non-trespassing entrant to protect him or her from the criminal conduct of a third party.

7

> injury was likely to result from the performance or nonperformance of an act[2]]. *When the facts are in dispute, the court identifies the existence of the duty conditioned upon the jury's possible evidentiary finding.*

*Id.* at 185 (emphasis added). This "[C]ourt's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Id.* at 185 ("If the court determines that disputed facts related to foreseeability, viewed in the light most favorable to the [non-movant], are sufficient to support foreseeability, resolution of the disputed facts is a jury question."). *See also The Little Hocking Water Ass'n, Inc.* v. *E.I. du Pont de Nemours & Co.,* No. 2:09-cv-01081, slip op. (S.D. Ohio Mar. 10, 2015)[3] (interpreting Ohio law and sending to the jury the issue of foreseeability as an element of duty).

The Trial Plaintiffs maintain that, while in some cases there may be a portion of the duty determination that is appropriate for a jury, the present action is not such a case because there is "no genuine dispute of any material fact preventing resolution of any relevant issue on 'foreseeability.'" (Trial Pls.' Reply at 7.) This Court, however, disagrees.

The facts regarding the foreseeability of harm from DuPont's release of C-8 from its Washington Works plant are in dispute. DuPont's position is that it "never had any knowledge or expectation . . . that there was *any* likelihood of *any* harm to community members at the relatively low PFOA levels found outside the plant." (DuPont's Mem. in Opp. to Pls.' Third Mot. for Summ. J. at 14); (*see also* DuPont's Answer to Bartlett Compl. ¶ 232; ECF No. 35)

---

[2] This is the relevant test under Ohio law. *Menifee*, 15 Ohio St.3d at 77.

[3] This slip opinion can be found at docket number 2820-2.

8

(DuPont avers that it "neither knew, nor should have known, that any of the substances to which [the Trial Plaintiffs were] allegedly exposed were hazardous or constituted a reasonable or foreseeable risk of physical harm by virtue of the prevailing state of the medical, scientific and/or industrial knowledge available to DuPont at all times relevant to the claims or causes of action asserted by [the Trial Plaintiffs]."). DuPont offers evidence and expert testimony to support its position, including scientific studies that were available during the relevant time period, its own scientific studies analyzing the effects of C-8 on the surrounding environment, and records of its monitoring of its workers.

From this same historical record, and the availability of scientific evidence at the relevant time period, the Trial Plaintiffs offer expert testimony and evidence to support their position that DuPont possessed information showing that C-8 was harmful and that it released it into their drinking water anyway. Indeed, this Court has issued decisions regarding the admissibility of the testimony of six of these experts wherein it reviewed the historical record from which much of the evidence comes regarding DuPont's knowledge, and the experts' differing conclusions based on that same evidence. (*See* EMO 2, ECF No. 4129; EMO 3, ECF No. 4178.) A review of these decisions leaves no doubt as to the existence of factual disputes regarding DuPont's knowledge of the possibility of harm from its release of C-8 from its Washington Works plant.

This Court's concludes that these "disputed facts related to foreseeability, viewed in the light most favorable to [DuPont], are sufficient to support [the absence of] foreseeability, [which requires] resolution of the disputed facts" to go to a jury. *Strahin*, 216 W. Va. at 185. Therefore, the Court finds the existence of a duty that is "conditioned upon the jury's possible evidentiary finding." *Id.*

Thus, in Mrs. Bartlett's trial the question for the jury on duty is "[w]hether a reasonably prudent person would have anticipated that an injury was likely to result from" DuPont's release of C-8 from the Washington Works plant. *Menifee*, 15 Ohio St.3d at 77. In Mr. Wolf's trial the question for the jury is whether "the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered [by Mr. Wolf] was likely to result." *Sewell*, 179 W.Va. at 588. If the jury answers these questions in the affirmative, then DuPont owed a duty of care to the Trial Plaintiffs.

### IV.

In accordance with this Opinion and Order, the Court **GRANTS IN PART AND DENIES IN PART** the Trial Plaintiffs' Motion for Summary Judgment on the Issue of Duty. (ECF No. 2820.)

**IT IS SO ORDERED.**

8-19-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**