UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

          Civil Action 2:13-md-2433
          CHIEF JUDGE EDMUND A. SARGUS, JR.
          Magistrate Judge Elizabeth P. Deavers

This document relates to:

*Bartlett v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-0170

## MOTIONS *IN LIMINE* ORDER NO. 2

### Evidence Regarding Obesity as a Causal Factor

This matter is before the Court on Plaintiff Carla Marie Bartlett's Motion *in Limine* No. 6, To Preclude Irrelevant General Causation Evidence (ECF No. 4085), and Defendant's Memorandum in Opposition (ECF No. 4173), as that motion was narrowed at the August 24 and 25, 2015 Motions *in Limine* Hearing. Specifically, the issue that remains for this Court's resolution is whether Defendant E.I. du Pont de Nemours ("DuPont") may present evidence related to obesity as a causal factor for renal cell carcinoma ("kidney cancer"). For the reasons that follow, the Court **DENIES** Plaintiff's Motion in accordance with this Opinion and Order.

I.

The litigation between the parties in this multidistrict litigation ("MDL") began in 2001 in a class action in West Virginia state court captioned *Leach v. E. I. du Pont de Nemours & Co.*, No. 01-C-698 (Wood County W. Va. Cir. Ct.) ("*Leach* Case"). The *Leach* Case ended in

November 2004 when the parties entered into a class-wide settlement ("*Leach* Settlement Agreement"). ("S.A."; ECF No. 820-8.) In the *Leach* Settlement Agreement, the parties fashioned a unique procedure to determine whether the approximately 80,000 members of the class ("*Leach* Class") would be permitted to file actions against DuPont based on any of the human diseases they believed had been caused by their exposure to ammonium perfluorooctanoate ("C-8" or "PFOA") discharged from DuPont's Washington Works plant.

The procedure required DuPont and the plaintiffs to jointly select three completely independent, mutually-agreeable, appropriately credentialed epidemiologists ("Science Panel") to study whether there is a connection between C-8 and human disease among the *Leach* Class. (S.A. at §§ 12.2.1, 12.2.2.) If the Science Panel found that it was "more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members," the Panel issued a Probable Link Finding for that specific disease and DuPont waived its right to challenge whether "it is probable that exposure to C-8 is capable of causing" the Linked Disease, *i.e.*, general causation. (S.A. § 3.3.) The Science Panel engaged in its work for seven years and in 2011 and 2012 it issued Probable Link Findings for six human diseases ("Linked Diseases"). The members of the *Leach* Class whose claims are based on one or more of the Linked Diseases began to file cases in West Virginia and Ohio. Of the over 80,000 members of the *Leach* Class, approximately 3,500 filed cases in accordance with the *Leach* Settlement Agreement. Those actions are centralized in this MDL.

Mrs. Bartlett suffered from kidney cancer, a Linked Disease, that she believes was caused by her exposure to C-8. Her case is the first to go to trial.

## II.

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.,* 2 F.Supp.2d 1385, 1388 (D. Kan.1998); *accord Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975).

To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.,* 326 F.Supp.2d at 846; *Koch,* 2 F.Supp.2d at 1388; *cf. Luce,* 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.,* 326 F. Supp.2d at 846.

## III.

Mrs. Bartlett requests that the Court prohibit DuPont from presenting any evidence that obesity is a causal factor for kidney cancer. Mrs. Bartlett contended at oral argument that the

3

testimony of Samuel M. Cohen, M.D., Ph.D. is the only support for the contention that obesity is a causal factor and that this evidence was excluded by this Court in Evidentiary Motions Order No. 1 ("EMO 1"). (ECF No. 4079.) Mrs. Bartlett asserted that the testimony of Douglas L. Weed, M.D., M.P.H., Ph.D. goes only to obesity as a risk factor and not a causal factor in kidney cancer.

DuPont responded at oral argument that the entire testimony of Dr. Cohen was not excluded and that some of his testimony that remains relates to obesity as a cause of kidney cancer. This Court agrees to the extent expressed *infra*.

In EMO 1, the Court explained that "DuPont's framing of its experts' inquiry as one into what the Science Panel did and did not find (*i.e.*, "the Science Panel *did not find* that all *Leach* Class members had an equal, materially increased risk of developing a Probable Link Disease") is prohibited by the *Leach* Settlement Agreement." (EMO 1 at 8.) The Court explained:

> The *Leach* Settlement Agreement unambiguously dictates the effect of the [Probable Link] Findings: If the Science Panel found that it was "more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members," the Panel issued a Probable Link Finding for that specific disease and DuPont waived its right to challenge whether "it is probable that exposure to C-8 is capable of causing" the Linked Disease, *i.e.*, general causation.
>
> . . . .
>
> Again, as the Court explained in DMO 1 and DMO 1-A, the plaintiffs are not required to prove that their dose of and/or exposure to C-8 is *capable* of causing their Linked Diseases. If the plaintiffs prove that they are a member of the *Leach* Class and that they have or had a Linked Disease, the Probable Link Finding applies to them. Application of the Probable Link Finding establishes that it is more likely than not that there is a link between that class member's exposure to C-8 and his or her Linked Disease, and DuPont is prohibited from challenging whether it is probable that exposure to C-8 is capable of causing that Linked Disease.

4

*Id.* at 9–10. Thus, the Court excluded Dr. Cohens testimony related to his opinion that there is no data sufficient to show that C-8 is capable of causing Mrs. Bartlett's kidney cancer. *Id.* at 11 (citing Cohen Report at 22.)

The Court also excluded the portions of Dr. Cohen's opinions that failed to "rule in" C-8 as a possible cause of Mrs. Bartlett's kidney cancer, stating:

> [T]hat the Probable Link Findings are valid and reliable evidence admissible to establish that it is more likely than not that there is a link between the Trial Plaintiffs' exposure to and/or dose of C-8 and their Linked Diseases. Therefore, DuPont has contractually agreed that its experts must rule in C-8 as a possible cause of Mrs. Bartlett's kidney disease . . . . Accordingly, the portions of Dr. Hanauer's and Dr. Cohen's opinions that fail to rule in C-8 as a possible cause of the Trial Plaintiffs' Linked Diseases are unreliable and excluded under *Daubert* and the Federal Rules of Evidence.

(EMO 1 at 17.)[1] Consequently, the Court did not exclude all of the testimony of Dr. Cohen, but rather, only that testimony related to or that resulted from his failure to rule in C-8 as a possible cause of Mrs. Bartlett's kidney cancer.

As to obesity as a *cause* of kidney cancer, Dr. Cohen's testified:

Q: So is it generally accepted in the medical and scientific community that obesity causes renal cell carcinoma as opposed to statistical association?

A: Yes.

Q: It is?

A: Yes.

(Cohen Dep. 31.)

Accordingly, there is evidence in the record that obesity is a cause of kidney cancer and DuPont is not prohibited from offering that evidence.

---

[1] DuPont should be prepared to discuss at the Final Pretrial Conference scheduled for September 9, 2015, the issue of how it plans to address Dr. Cohen's testimony related to his ultimate opinion that Mrs. Bartlett's kidney cancer was caused by her obesity.

5

IV.

Based on the foregoing, the Court **DENIES** the narrowed Motion *in Limine* No. 6 in accordance with this Opinion and Order. (ECF No. 4085.) As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

8-31-2015
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**