UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

                            Civil Action 2:13-md-2433
                            CHIEF JUDGE EDMUND A. SARGUS, JR.
                            Magistrate Judge Elizabeth P. Deavers

This document relates to:

*Bartlett v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-0170

## MOTION *IN LIMINE* ORDER NO. 4

### Evidence Regarding the Weinberg Group

This matter is before the Court on Defendant's Motion *in Limine* No. 7, To Exclude Any References to the Weinberg Group, as Well as its Work Involving Ephedra, Fen-Phen, Tobacco, or Agent Orange (ECF No. 4078), and Plaintiff's Memorandum in Opposition (ECF No. 4172). The parties offered additional evidence and argument on that Motion at the August 24 and 25, 2015 Motions *in Limine* Hearing. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion in accordance with this Opinion and Order.

**I.**

The litigation between the parties in this multidistrict litigation ("MDL") began in 2001 in a class action in West Virginia state court captioned *Leach v. E. I. du Pont de Nemours & Co.*, No. 01-C-698 (Wood County W. Va. Cir. Ct.) ("*Leach* Case"). The *Leach* Case was concluded in 2005 when the parties finalized a class-wide settlement. (*Leach* Settlement Agreement; ECF No. 820-8.) Aside from the *Leach* Case, related prior litigation occurred through federal court

proceedings in West Virginia, New Jersey, and Ohio, referred to respectively as the "*Rhodes,*" "*Rowe/Scott,*" and "*Little Hocking*" actions. The discovery produced in those cases has been available for use in this MDL, with supplementation occurring as necessary and as described in the Federal Rules of Civil Procedure. (Pretrial Order No. 8 at 1–2; ECF No. 50.)

The plaintiffs in this MDL all bring, *inter alia*, personal injury claims against Defendant E.I. du Pont de Nemours ("DuPont") for injuries they believe were caused by their exposure to ammonium perfluorooctanoate ("C-8" or "PFOA") discharged from DuPont's Washington Works plant. Plaintiff Carla Marie Bartlett suffered from kidney cancer that she believes was caused by her ingestion of C-8 in her drinking water.

DuPont's position is that it "never had any knowledge or expectation . . . that there was *any* likelihood of *any* harm to community members at the relatively low PFOA levels found outside the plant." (DuPont's Mem. in Opp. to Pls.' Third Mot. for Summ. J. at 14); (*see also* DuPont's Answer to Bartlett Compl. ¶ 232; ECF No. 35). DuPont maintains that the evidence shows that it "exhibited a proactive concern for safety in its use of PFOA at its Washington Works plant, consistently going beyond the regulatory requirements and the typical conduct of most chemical companies." (Def.'s Mot. for Summ. J. on Punitive Damages at 1–2; ECF No. 2825),

## II.

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion *in limine* is to allow a court to rule on issues

pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.,* 2 F. Supp.2d 1385, 1388 (D.Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975).

To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.,* 326 F.Supp.2d at 846; *Koch,* 2 F.Supp.2d at 1388; *cf. Luce,* 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.,* 326 F. Supp.2d at 846.

### III.

Ms. Bartlett seeks to introduce evidence of DuPont's relationship with the Weinberg Group and its alleged involvement in handling issues related to C-8. Ms. Bartlett offers a proposal that the Weinberg Group sent to DuPont, which included the following:

> The primary focus of this endeavor is to strive to create the climate and conditions that will obviate, or at the very least, minimize ongoing litigation and contemplated regulation relating to PFOA. This would facilitate the publication of papers and articles dispelling the alleged nexus between PFOA and teratogenicity as well as other claimed harm. We would also lay the foundation for creating *Daubert* precedent to discourage additional lawsuits. . . . This battle must be won in the minds of the regulators, judges, potential jurors, and the plaintiff's bar. . . . Manufacturers must be the aggressors.

3

(Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J. on Punitive Damages at 4–5) (citing Ex. H; ECF No. 3194-9). The proposal also included a plan to "construct[] a study to establish . . . that PFOA is safe," "illustrate how epidemiological association has little or nothing to do with individual causation" and "shape the *Daubert* standards in ways most beneficial" to DuPont. *Id.* Ms. Bartlett also seeks to introduce evidence of work that the Weinberg Group did for other companies where it allegedly employed these same tactics.

DuPont asks Court to exclude from trial references to "third-party consulting firm the Weinberg Group, as well as its various consulting engagements on matters unrelated to Ms. Bartlett's case," because the evidence is "baseless, irrelevant and unfairly prejudicial." (DuPont's Mot. at 1.) DuPont maintains that Ms. Bartlett attempts to "launch[] a character attack on the Weinberg Group and parading before the jury extensive evidence of the Weinberg Group's alleged prior bad acts on behalf of other clients, in hopes of stirring an emotional reaction from the jurors, and that DuPont will be deemed guilty by association in the minds of the jurors." *Id.*

The parties' arguments may be appropriately divided into two categories: (A) Evidence Related to DuPont's Purported Relationship with the Weinberg Group, and (B) the Weinberg Group's Work with Companies Unrelated to DuPont.

## A. Evidence Related to DuPont's Purported Relationship with the Weinberg Group

DuPont contends that "the record evidence is undisputed that DuPont *rejected* the proposal in the 2003 Weinberg Letter that is at the center of Plaintiff's strategy." (DuPont's Mot. at 2.) Moreover, DuPont continues, even if it "had adopted the proposal in the 2003 Weinberg Letter, any such after-the-fact public relations strategy would have no relevance to

Mrs. Bartlett's claims in this personal injury action, as any public relations efforts in 2003 cannot be causally tied to her 1997 kidney cancer." *Id.*

    Plaintiff responds:

> Contrary to DuPont's representations, DuPont *did* employ The Weinberg Group ("Weinberg") on the C-8 crisis. Weinberg offered its services to DuPont and in turn was hired to work for DuPont, including surveying the C-8 scientific landscape, vetting potential experts supportive of DuPont's theories, and developing strategies for attacking and discrediting the science and experts that DuPont found contrary to its positions on C-8.

> Thus, Weinberg's relationship with DuPont, and its involvement in the handling of DuPont's C-8 debacle, as well as its reputation, history, and qualifications is all relevant, highly probative and thus, admissible under Fed. R. Evid. 401 and 402.

(Pl.'s Mem. in Opp. at 1–2.)

    The Court addresses (1) Ms. Bartlett's contention that DuPont employed The Weinberg Group, and (2) her claim that this relationship makes relevant and admissible evidence related to the Weinberg Group's reputation, history, and qualifications.

### 1. The Employment of the Weinberg Group

    Ms. Bartlett is correct that the evidence is disputed as to whether DuPont accepted the Weinberg Group's proposal. While DuPont offers testimony that the Weinberg Group's proposal was rejected, Ms. Bartlett offers the following evidence disputing that testimony.

    First, in *Rhodes* DuPont filed a motion *in limine* in which it stated:

> DuPont and or law firms retained by DuPont, communicated with . . . . The Weinberg Group for Scientific Consultancy, to develop an over-all PFOA strategy regarding communications with the public and government . . . .

(Pls.' Second Motion for Partial Summ. J., Ex. O; ECF No. 1205-18.).

    Additionally, Ms. Bartlett submits billing statements from the Weinberg Group to DuPont or from a law firm allegedly hired by DuPont to handle the billing between the Weinberg Group and DuPont showing fifteen monthly billing statements totaling tens of thousands of

dollars.  Next, Ms. Bartlet offers email correspondence between a DuPont employee and Myron

S. Weinberg, the Vice President of the Weinberg Group that states, *inter alia*:

> Early on during the development of the C8/fluorocarbon chemicals controversy, a team of experienced individuals from THE WEINBERG GROUP INC. met with a group of people at Dupont Fluorocarbon to discuss how we saw the issues evolving and what plans could be made to deal with the issues which were or would be raised.  THE WEINBERG GROUUP which offers services in evidence-based advocacy was given some discrete assignments in developing strategies for helping Dupont in its advocacy of the value and safety of fluorocarbons as part of dealing with this issue.  We believed then and we know now that we can provide much more assistance than was asked of us.

(Pl.'s Mem. in Opp., Ex. E; ECF No. 4172-6.)

Finally, Ms. Bartlett also provides advertisement from Ted Dunkelberger, one of the

"first four employees of a pioneering scientific consulting firm, the Weinberg Group."  (Pls.'

Mem. in Opp. to Def.'s Mot. for Summ. J. on Inapplicable Claims; ECF No. 2291-22 at 3.)  Mr.

Dunkleberger indicates that he has worked on the PFOA issues.

If DuPont did in fact work with the Weinberg Group, evidence of their relationship is

relevant.  This evidence is not offered to, as DuPont suggests, "causally tie[]" DuPont's actions

to Ms. Bartlett's 1997 kidney cancer.  Instead, the evidence is relevant to show that DuPont did

not exhibit a proactive concern for safety in its use of PFOA at its Washington Works plant, and

that it did have knowledge and/or an expectation that there was a likelihood of harm to the

community from its release of C-8 into the drinking water.

"When the relevance of evidence depends on whether a fact exists, proof must be

introduced sufficient to support a finding that the fact does exist.  The court may admit the

proposed evidence on the condition that the proof be introduced later."  Fed. R. Evid. 104(b).

"In determining whether the [proponent] has introduced sufficient evidence to meet Rule 104(b),

the trial court neither weighs credibility nor makes a finding that the [proponent] has proved the

6

conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S.

681, 690 (1988). "The court simply examines all the evidence in the case and decides whether

the jury could reasonably find the conditional fact—here, [that DuPont worked with the

Weinberg Group]—by a preponderance of the evidence." *Id.* (citation omitted). In this regard,

the United States Supreme Court explains:

> We emphasize that in assessing the sufficiency of the evidence under Rule 104(b),
> the trial court must consider all evidence presented to the jury. "[I]ndividual
> pieces of evidence, insufficient in themselves to prove a point, may in cumulation
> prove it. The sum of an evidentiary presentation may well be greater than its
> constituent parts." *Bourjaily v. United States,* 483 U.S. 171, 179–180 (1987).

*Id.* at 690–91 (parallel citations omitted).

The Court has examined all of the evidence in the record before it and determines that

there is sufficient evidence to support a finding by the jury that DuPont worked with the

Weinberg Group on the C-8 issues. Additionally, the Court finds that the evidence's probative

value is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

Thus, the Court will permit Ms. Bartlett to offer evidence of the relationship between DuPont

and the Weinberg Group. If the jury finds by a preponderance of the evidence that DuPont

worked with the Weinberg Group on the C-8 issues, it will be instructed to consider the

evidence. If, however, the jury does not find such a relationship between DuPont and the

Weinberg Group, the jury will be instructed to disregard the evidence.

### 2. The Weinberg Group's History, Qualifications, and Reputation

Ms. Bartlett asserts that the Weinberg Group's reputation, history, and qualifications are

relevant and probative. The Court addresses *infra* the issue of the Weinberg Group's history of

working for other companies and/or its qualifications based on its work with other companies.

As to the Weinberg Group's reputation, Federal Rule of Evidence 608 provides that "[a]

witness's credibility may be attacked or supported by testimony about the witness's reputation

for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Fed. R. Evid. 608(a). Thus, the Court finds that there is, at best, a very narrow avenue on which Ms. Bartlett may attack the Weinberg Group's reputation if a representative of the Weinberg Group actually testifies. However, Rule 608 prohibits reputation evidence based upon specific instances of conduct. Fed. R. Evid. 608(b).

## B. The Weinberg Group's Work with Companies Unrelated to DuPont

Ms. Bartlett seeks to introduce evidence of the Weinberg Group's work with companies other than DuPont under Federal Rules of Evidence 404(b) and 406. DuPont argues that there is no evidence that "the Weinberg Group ever did any work for DuPont that was in any way similar (much less substantially similar) to the campaigns or initiatives Plaintiff claims that Weinberg Group carried out for other clients with respect to Agent Orange, tobacco, or various pharmaceutical drugs[,]" and the only purpose of this proposed evidence is "to insinuate that the Weinberg Group must have engaged in the same conduct for DuPont that it allegedly did for other clients." *Id.* at 6.

### 1. Rules 404(b) and 403 of the Federal Rules of Evidence

Ms. Bartlett contends that the Weinberg Group's prior conduct is admissible under Rule 404(b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Pl.'s Mem. in Opp. at 8.) She contends that the tactics offered to DuPont by the Weinberg Group "are the exact same tactics that have been employed for years by Weinberg, and by extension, those who have retained it to defend their products, and thus, evidence of these methods is admissible under Rule 404(b)." *Id.* at 9.

8

However, the Court finds that it need not engage in a determination under Rule 404. Even if the offered evidence is admissible under 404(b), "the evidence is subject [also] to general strictures limiting admissibility such as Rules 402 and 403." *Huddleston*, 485 U.S. at 688. Under that Rule 403, the Court finds that the evidence's minimal probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Further, this evidence has the real potential to spiral into unnecessary mini trials on the work that the Weinberg Group did, or did not do, for other companies. *See id.* (exclusion permitted for waste of time).

### 2. Rule 406 of the Federal Rules of Evidence

Ms. Bartlett contends that "the evidence DuPont seeks to exclude is, in fact, admissible habit evidence under Evidence Rule 406." (Pl.'s Mem. in Opp. at 9); Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."). Specifically, she argues that the relationship between DuPont and the Weinberg Group includes "the basis for [DuPont's] strategies to develop 'premium experts,' determine 'the best themes' for defense verdicts, 'reshape the debate' by promoting benefits of C-8, discredit contrary opinions and perspectives, and aggressively campaign to protect its C-8-related products." (Pl.'s Mem. in Opp. at 9.) She asserts that "Rule [406] permits evidence of the usual and fixed course of dealings between two parties" such as the conduct exhibited between DuPont and the Weinberg Group. *Id.* (citing *Mattner v. Tom A. Jennaro & Assocs.,* Nos. 89-2366, 89-2368, 1991 U.S. App. LEXIS 19852 (6th Cir. August 20, 1991)).

In *Mattner*, the case relied upon by Ms. Bartlett, the Sixth Circuit in explained that the "routine 'practice' must be any specific conduct or event that is so automatic, so repetitive, that it

might approach evidence of habit; it must be done unwittingly." 1991 U.S. App. LEXIS 19852, at *4. The conduct Ms. Bartlett attempts to attribute to "habit" is nothing the parties are alleged to have done unwittingly. Indeed, it is conduct that is alleged to have been carefully planned and controlled – not evidence of habit.

IV.

For the reasons set forth above, the Court, in accordance with this Opinion and Order, **GRANTS IN PART AND DENIES IN PART** Defendant's Motion *in Limine* No. 7, To Exclude any References to the Weinberg Group, as Well as its Work Involving Ephedra, Fen-Phen, Tobacco, or Agent Orange. (ECF No. 4078.) As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

9 - 4 - 2015
_____                    _____
**DATE**                                **EDMUND A. SARGUS, JR.**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**