UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

Civil Action 2:13-md-2433
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

This document relates to:

*Bartlett v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-0170

## MOTIONS *IN LIMINE* ORDER NO. 6

### Calculation of Punitive Damages

This matter is before the Court on Defendant's Motion *in Limine* No. 26, Regarding Calculation of Punitive Damages (ECF No. 4208) and Plaintiff's Memorandum in Opposition (ECF No. 4214). For the reasons that follow, the Court **DENIES** DuPont's Motion *in Limine* in accordance with this Opinion and Order.

### I.

Plaintiff Carla Marie Bartlett's case filed against E.I. du Pont de Nemours and Company ("DuPont") went to trial on September 14, 2015. There is a potential that the trial will go to a second phase to determine Mrs. Bartlett's claim that she is entitled to punitive damages. DuPont has directed Motion *in Limine* No. 26 to that phase of the trial.

### II.

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*. The United States Supreme Court

has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997)).

DuPont moves under Rules 401, 402, and 403 of the Federal Rules of Evidence. Under Rule 402 of the Federal Rules of Evidence, "irrelevant evidence is not admissible." Fed. R. Evid. 402. To be relevant, evidence must make a fact of consequence in determining the action more or less probable. Fed. R. Evid. 401. Further, under Rule 403, even relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III.

Pursuant to discussions at the Motions *in Limine* hearing on August 24, 2015, DuPont has filed its current Motion requesting preclusion of Mrs. Bartlett, her counsel, and/or her witnesses "from making references or comments or introducing any evidence during the second phase of trial (if there is one) regarding: (A) any financial metrics other than DuPont's current net worth; (B) the financial resources of The Chemours Company ("Chemours"); and (C) conduct that is unrelated to the conduct that allegedly harmed Mrs. Bartlett." (DuPont's Mot. at 1.)

#### A.  Financial Metrics

DuPont contends that its "current net worth at the time of trial is the appropriate measure of [its] financial condition for a jury to consider in determining the amount of punitive damages."

(DuPont's Mot. at 2.)  DuPont maintains that "[o]ther figures aside from net worth are irrelevant and lacking in probative value, and would also confuse, mislead, or inflame the passions of the jury, resulting in unfair prejudice against DuPont."  *Id.* at 4.  DuPont specifically asks that Mrs. Bartlett be prohibited from relying on the opinions related to its financial condition offered by Robert W. Johnson, Mrs. Bartlett economics expert.  *Id.* (citing to Johnson Report; ECF No. 2811, Ex. E; Addendum to Johnson Report; ECF No. 3200-2).

This Court has previously addressed this issue on two occasions.  First, in Discovery Order No. 4, the Court found that the type of evidence that may be relevant to a defendant's financial condition for the purposes of punitive damages include "financial reports, information relating to net worth, tax returns, balance sheets, and revenue or earnings projections."  (Disc. Order No. 4 at 10; ECF No. 247) (citing *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409–10 (N.D. Ohio 2011)).  The Northern District of Ohio's decision in *In re Heparin* is instructive. In that decision, the court rejected the defendant's argument that no information beyond its net worth was necessary to ascertain its financial condition for punitive damages purposes.  The court found that he "financial condition and affairs beyond net worth are relevant to punitive damages," and ordered the defendant to produce "state and federal income tax returns . . . , balance sheets, income statements, and all attached schedules" as well as "revenue or earnings projections/results" for "the most recent two year period."  *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. at 409.

The Court again addressed this issue in Evidentiary Motions Order No. 3 ("EMO 3"). (ECF No. 4178.)  In that decision, the Court considered DuPont's *Daubert*[1] challenge to Mr. Johnson.  (Johnson Report, ECF No. 2811-5; Johnson Dep. Tr., ECF No. 2809-6.)  In determining DuPont's financial condition, Mr. Johnson examined DuPont's net sales, sales per

---

[1] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

day, net income, net worth, cash on hand, cash flows, stock market value, stock repurchases, dividends paid, capital expenditures, research and development expenditures, annual audit and accounting fees and executive compensation from 2009 to 2014. In denying DuPont's Motion, this Court agreed that Mr. Johnson's opinions could be "helpful to the jury" during any punitive damages phase in this case, as Mr. Johnson could help interpret and explain these various different financial documents and metrics. (EMO 3 at 14–15.)

The Court, however, limits the evidence to the last two years as did the *In re Heparin* court. Additionally, the Court agrees with DuPont that "executive compensation is not relevant to show [d]efendants' ability to pay a punitive damages award." *Avondale Mills, Inc. v. Norfolk S. Corp.*, 2008 U.S. Dist. LEXIS 111212, at *5 (D.S.C. Jan. 16, 2008). That evidence is therefore excluded.

## B. Chemours

DuPont asks for exclusion of any information regarding the financial resources of Chemours. "Plaintiff does not object to that portion of DuPont's Motion pertaining to Chemours but only to the extent that DuPont does not intend to refer to any evidence relating to Chemours for any aspect of this case, including any issue related to punitive damages." (Pl.'s Mem. in Opp. at 1.) At the Final Pretrial Conference, DuPont indicated that it had no intention of referring to any evidence related to Chemours. Hence, this portion of DuPont's Motion has been rendered moot.

## C. Alleged Harm to Non Parties

Last, DuPont argues that "only conduct that harmed Mrs. Bartlett should be considered in calculating punitive damages." (DuPont's Mot. at 5.) DuPont asserts:

> For purposes of calculating punitive damages, the U.S. Supreme Court has repeatedly held that the due process clause requires that "[a] defendant should be

4

punished for the conduct that harmed the plaintiff," and that a jury may not "punish a defendant directly on account of harms it is alleged to have visited on nonparties." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 349, 353 (2007) ("to punish the defendant for harming persons who are not before the court (*e.g.*, victims whom the parties do not represent)" would "amount to a taking of 'property' from the defendant without due process"). In *State Farm,* the Court stated:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised [for compensatory damages], may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis.

538 U.S. at 422-23. . . .

(DuPont's Mot. at 5–6) (emphasis removed). Thus, DuPont concludes that "Mrs. Bartlett should not be permitted to introduce evidence concerning other claims or alleged conduct involving DuPont that is unrelated to her claimed injury," including any evidence related to DuPont's conduct that harmed others or that occurred after 1997, the year of her cancer operation.

Mrs. Bartlett does not dispute that DuPont should be punished only for the conduct that harmed her. First, she contends that she does not "intend to introduce punitive damages evidence to punish DuPont directly for harms to nonparties" but, instead, "intend[s] to introduce evidence of actual harm to nonparties for purposes of reprehensibility which is clearly allowed under Supreme Court precedent." (Pl.'s Mem. in Opp. at 7.) Second, Mrs. Bartlett asserts that this Court has already addressed, on several occasions, the evidence of DuPont's post-1997 conduct and the scope and purpose of this evidence. Mrs. Bartlett's arguments are well taken.

## 1. Actual Harm to Nonparties

The Supreme Court has made clear that evidence of actual harm to nonparties may be relevant under a reprehensibility analysis. *See Phillip Morris*, 549 U.S. at 355 ("Evidence of

actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk to the general public, and was particularly reprehensible"). The Court in *State Farm* explained that the reprehensibility of a defendant's conduct can be determined by considering whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419 (citations omitted). The Sixth Circuit has further opined that the degree of reprehensibility is "the most important indicum of the reasonableness of a punitive damages award." *Clark v. Chrysler Corp.*, 436 F.3d 594, 600 (6th Cir. 2006) (quoting *State Farm*); *see also Blust v. Lamar Adver. of Mobile, Inc.*, 183 Ohio App. 3d 478, 485 (Ohio Ct. App. 2009) (instructing jury that punitive damages award should relate to the reprehensibility of the defendant's conduct).

Additionally, as Mrs. Bartlett correctly asserts, "the fact that DuPont's Washington Work's plant is located in West Virginia and much of DuPont's punitive conduct occurred in West Virginia, does not prohibit introduction of this evidence, because *State Farm* allows the consideration of out-of-state conduct in assessing the reprehensibility of a defendant's conduct in a punitive damages analysis, as long as there is 'a nexus to the specific harm suffered by the plaintiff.'" (Pl.'s Mem. in Opp. at 8) (citing State Farm, 538 U.S. at 422). DuPont's conduct in West Virginia clearly has a nexus, or connection, with the harm suffered by Mrs. Bartlett.

Thus, the Court concludes that evidence of actual harm to nonparties is relevant to the reprehensibility analysis in which the jury must engage to determine the punitive damages issue. The Court further finds that the probative value of this evidence is not substantially outweighed

6

by the dangers of unfair prejudice, misleading the jury, confusing the issues, undue delay, and wasting time.   The Court is cognizant of the fact that while evidence of harm to nonparties is admissible on the issue of reprehensibility, the same evidence may not be used to punish for injuries to nonparties.  The Supreme Court has made clear:

> In our view, the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.,* injury that it inflicts upon those who are, essentially, strangers to the litigation.

*Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).

### 2.  Post-1997 Conduct

DuPont's position in this litigation is that, "rather than any malice or disregard for safety, the evidence instead shows that DuPont exhibited a *proactive concern* for safety in its use of PFOA at its Washington Works plant, consistently going beyond the regulatory requirements and the typical conduct of most chemical companies."  (DuPont's Mot. for Summ. J. on Punitive Damages at 1–2; ECF No. 2825.)   Mrs. Bartlett was diagnosed with kidney cancer in 1997 and underwent surgery to remove a portion of her kidney that same year.  DuPont contends that because of this fact, none of its conduct after 1997 is relevant to any issue before this Court. This Court disagrees with this assessment and has so indicated in numerous opinions.

The Court has explained that DuPont's post-1997 actions are relevant not to causally tie its actions to Mrs. Bartlett's 1997 kidney cancer, but to show that DuPont did not exhibit a proactive concern for safety in its use of C-8 at its Washington Works plant, and that it did have knowledge and/or an expectation that there was a likelihood of harm to the community from its release of C-8 into the drinking water.  (Dispositive Motions Order ("DMO") No. 7; ECF No. 4185) (denying DuPont's Motion for Summary Judgment on Bartlett's Punitive Damages Claim); (DMO 9; ECF No. 4211) (granting in part and denying in part DuPont's Motion for

Partial Summary Judgment on Bartlett's Fraud and Emotional Distress Claims); (DMO 11; ECF No. 4235) (denying DuPont's Rule 50 Motion on Bartlett's Punitive Damages Claim); (Motions *in Limine* Order ("MIL") No. 3; ECF No. 4207) (granting in part and denying in part DuPont's MIL 15, To Exclude Any Statement or Suggestion that Cattle Disease or Cattle Deaths Have Been or Are Caused By C-8); (MIL 4; ECF No. 4212) (granting in part and denying in part DuPont's MIL 7, To Exclude Any References to the Weinberg Group, as Well as its Work Involving Ephedra, Fen-Phen, Tobacco, or Agent Orange).

For these same reasons, and the additional reason that the jury will be tasked with determining the reprehensibility of DuPont's conduct, the evidence of DuPont's post-1997 conduct is relevant. Further, the probative value of this evidence is not substantially outweighed by the dangers of unfair prejudice, misleading the jury, confusing the issues, undue delay, and wasting time.

## IV.

For the reasons that follow, the Court **DENIES** DuPont's Motion *in Limine* No. 26, Regarding Calculation of Punitive Damages. (ECF No. 4208.)

**IT IS SO ORDERED.**

10-5-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

8