UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

        Civil Action 2:13-md-2433
        CHIEF JUDGE EDMUND A. SARGUS, JR.
        Magistrate Judge Elizabeth Preston Deavers

This document relates to:

*David Freeman v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-1103

## DISPOSITIVE MOTIONS ORDER NO. 14

### Defendant's Motions on Mr. Freeman's Fraud and Emotional Distress Claims

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff David Freeman's Claim for Concealment, Misrepresentation, and Fraud (ECF No. 4317), Defendant's Motion for Summary Judgment on Plaintiff David Freeman's Emotional Distress Claims (ECF No. 4318), Plaintiff' Memorandum in Opposition to Defendant's Motions for Summary Judgment on his Fraud and Emotional Distress Claims (ECF No. 4335), and Defendant's Reply in Support of its Motions for Summary Judgment on Plaintiff's Fraud and Emotional Distress Claims (ECF No. 4345). For the reasons that follow, the Court **DENIES AS MOOT** Defendant's Motion for Summary Judgment on Plaintiff's Fraud Claims and **DENIES AS MOOT IN PART, DENIES IN PART, AND GRANTS IN PART** Defendant's Motion for Summary Judgment on Plaintiff's Emotional Distress Claims.

I.

The litigation between the parties in this multidistrict litigation ("MDL") began in 2001 in a class action in West Virginia state court captioned *Leach v. E. I. du Pont de Nemours & Co.*, No. 01-C-698 (Wood County W. Va. Cir. Ct.) ("*Leach* Case"). The *Leach* Case ended in 2005 when the parties finalized a class-wide settlement ("*Leach* Settlement Agreement"). ("S.A.", ECF No. 820-8.) In the *Leach* Settlement Agreement, the parties fashioned a unique procedure to determine whether the approximately 80,000 members of the class ("*Leach* Class") would be permitted to file actions against Defendant E. I. du Pont de Nemours ("DuPont") based on any of the human diseases they believed had been caused by the contamination of their drinking water with ammonium perfluorooctanoate ("C-8") that was discharged from DuPont's Washington Works plant.

In the *Leach* Settlement Agreement, the *Leach* Class agreed to forgo bringing individual personal injury and wrongful death suits against DuPont in exchange for DuPont's concession of general causation if a special epidemiological study conducted by a panel of word-class epidemiologists ("Science Panel") proved that it is more likely than not that there is a link between exposure to C-8 and the class member's disease. In 2012, after a seven-year, thirty million dollar epidemiological study was concluded, there were Probable Link Findings issued for six human diseases ("Linked Diseases"), *i.e.*, the Science Panel determined that "it is more likely than not that there is a link between exposure to C-8 and [one of the six Linked Diseases] among Class Members." (S.A. § 1.49.) The over 3,500 plaintiffs in this MDL allege that they suffer from or administrate the estate of an individual who died from one of the six Linked Diseases. (*See* Dispositive Motions Order No. 12 ("DMO 12") at 1–8, ECF No. 4306) (providing a background of the Science Panel Study).

2

*Leach* Class member David Freeman suffered from testicular cancer, a Linked Disease, that he believes was specifically caused by his exposure to the C-8 that was in his drinking water. Mr. Freeman is one of the five bellwether cases chosen by the parties and approved by the Court. Among others, Mr. Freeman has filed claims for fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress ("NIED"). DuPont's two motions for summary judgment currently before the Court are directed at these claims.

In Mr. Freeman's Memorandum in Opposition to DuPont's Motions for Summary Judgment on his Fraud and Emotional Distress Claims, he informs the Court that he is not pursuing two of these claims, stating:

> In light of Dispositive Motions Order No. 9 [ECF 4211] ("DMO 9") wherein this Court addressed Trial Plaintiff Carla Bartlett's[1] claims for fraud and intentional infliction of emotional distress, as modified and explained in Dispositive Motions Order No. 9-A [ECF No, 4234] ("DMO 9-A"), Mr. Freeman has withdrawn, and is not pursuing, his individual claims for fraud or for intentional infliction of emotional distress, thereby rendering moot DuPont's Fraud Motion, in its entirety, and the portions of DuPont's E[motional] D[istress] Motion addressing Mr. Freemans intentional infliction of emotional distress claims.

(Pl.'s Mem. in Opp. at 1.) Consequently, the only issue before the Court is whether DuPont is entitled to summary judgment on Mr. Freeman's NIED claim.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] Mrs. Bartlett's case was the first bellwether trial held in this MDL.

(1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

In Dispositive Motions Order No. 3 ("DMO 3"), the Court determined that Mr. Freeman's case will be tried under Ohio law. (DMO 3, Choice of Law, ECF No. 3551.) Ohio law permits recovery for emotional distress that manifests itself as cancerphobia. "Cancerphobia is a claimed present injury consisting of mental anxiety and distress over contracting cancer in the future, as opposed to risk of cancer, which is a potential physical predisposition of developing cancer in the future." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1012 (6th Cir. Ohio 1993) (quoting *Lavelle v. Owens–Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 14 (1987)).

4

"Increased fear of cancer, to be compensable, means that [a] . . . plaintiff is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress." *Lavelle*, 30 Ohio Misc. 2d at 15. "Reasonable in this context is not equivalent to probability or certainty, but is for a fact-finder to determine." *Id.*

Mr. Freeman has set forth a claim for NIED based on his allegations of cancerphobia. DuPont argues that it is entitled to summary judgment on Mr. Freeman's NIED claim for two reasons: (A) Ohio law does not recognize an independent NIED claim in these circumstances, and (B) if Ohio law does recognize such a claim, Mr. Freeman has failed to raise any genuine issue of material fact related to it.

**A.     Independent Claim**

DuPont contends that "Ohio law does not recognize an independent cause of action for NIED where, as here, Mr. Freeman alleges that his emotional distress results from a claimed negligently-inflicted physical injury." (DuPont's Mot. for Summ. J. on Freeman's Emotional Distress Claims at 3.) DuPont states:

> The Ohio Supreme Court held in *Loudin v. Radiology & Imaging Servs.*, [128 Ohio St.3d 555,] 948 N.E.2d 944, Syllabus Point 2 (Ohio 2011) that "emotional distress stemming directly from a physical injury is **_not a basis for an independent cause of action_** for the negligent infliction of emotional distress." Accordingly, the Supreme Court affirmed the lower court's holding that "a negligence claim involving a physical injury invokes the traditional rules of recovery, which consider emotional distress as part of damages." *See id.* at 949.

*Id.* at 3 (emphasis by DuPont). DuPont continues, asserting that "[b]ecause it is undisputed that Mr. Freeman's alleged 'mental anguish,' if any, derives from his experience with testicular cancer, the only potential recovery for that emotional distress under Ohio law is as a component of general damages for his traditional negligence claim." *Id.* at 5.

In opposition, Mr. Freeman contends that *Loudin* does not prohibit a separate cause of action for NIED where a plaintiff's emotional distress results from a claimed negligently-inflicted physical injury, but instead merely recognizes that in *Loudin*, no separate cause of action for NIED was pled. Mr. Freeman bases his assessment on the fact that the trial court and the appellate court in *Loudin* accepted the defendant's invitation to take the plaintiff's cancerphobia allegations as if they constituted a separate NIED claim even though the plaintiff did not specifically state that she was pursuing a separate claim for NIED. *Loudin*, 128 Ohio St.3d at 557 (alleging in the amended complaint that she suffered from "emotional distress from the fear of an increased chance of recurrence of cancer"). The trial court, *inter alia*, granted the defendant's motion for summary judgment on the purported NIED claim, the appellate court reversed that decision, and the Ohio Supreme Court affirmed the appellate court. Mr. Freeman concludes that because the Ohio Supreme Court affirmed the appellate court, it implicitly found that *if* the plaintiff (or any future plaintiff) specified that his cancerphobia was the basis of an independent NIED claim, that claim could stand even though the emotional distress stemmed from an injury for which the plaintiff also sought recovery in negligence. This Court, however, disagrees.

In *Loudin*, the Ohio Supreme Court affirmed the appellate court's reversal of the trial court's grant of summary judgment on the plaintiff's medical negligence claim, stating:

> Viewing the evidence presented to the trial court in a light most favorable to Loudin, we hold that genuine issues of material fact exist as to whether the appellants' delayed diagnosis deviated from the required standard of care, proximately causing physical and emotional injuries. Therefore, we affirm the judgment of the court of appeals and remand the matter to the trial court for further proceedings.

*Loudin*, 128 Ohio St. 3d at 562. However, the Ohio high court did not affirm the appellate court's analysis of an NIED claim, but rather found that the court's consideration of such a claim was "unnecessary." In this regard the *Loudin* court explained:

> We hold that the inclusion of damages for emotional distress in a complaint alleging negligence does not automatically transform the claim into one alleging the negligent infliction of emotional distress, nor does it automatically create a cause of action separate and distinct from the negligence claim.
>
> We conclude that Loudin included a claim for damages for emotional distress within the context of her medical-negligence claim and that she did not plead a separate cause of action for the negligent infliction of emotional distress. Thus, there was no negligent-infliction-of-emotional-distress claim for either the trial court or the appellate court to accept or reject, and their discussions of such a claim were unnecessary.

*Id.*

The *Loudin* court did not, as Mr. Freeman suggests, conclude that the plaintiff failed to plead an NIED claim simply because she did not utilize the proper title in her amended complaint. The court held that the plaintiff did not plead – in form or in substance – an independent NIED claim that is "separate and distinct from the negligence claim." *See id.* (she "did not plead a separate cause of action for the negligent infliction of emotional distress. . . . nor [did her allegations] create a cause of action separate and distinct from the negligence claim"). Thus, viewing *Loudin* in its totality, it is clear that the court held that the appellate court's examination of an NIED claim was "unnecessary" because when a plaintiff's "emotional distress stem[s] directly from a physical injury" it "is not a basis for an independent cause of action for the negligent infliction of emotional distress." *Id.* at syllabus ¶¶ 1, 2.

*Loudin* confirms that Ohio courts differentiate between alleged cancerphobia when there is a contemporaneous physical injury that is the basis of a negligence claim, and alleged

7

cancerphobia when there is no such physical injury. Specifically, a plaintiff may obtain recovery for cancerphobia when she suffered no contemporaneous physical injury for which she seeks recovery in negligence if she proves that (1) the defendant was negligent; (2) the plaintiff suffered serious emotional distress; (3) the serious emotional distress was the proximate result of the negligence the defendant; and (4) the serious emotional distress was reasonably foreseeable by the defendant at the time of the alleged negligence. 1 CV Ohio Jury Instructions § 429.07. In this instance, the plaintiff's cancerphobia may be compensated through a separate NIED claim.

A plaintiff may also obtain recovery for cancerphobia when the emotional distress stems directly from a negligently-inflicted physical injury for which she seeks recovery in negligence if she can show that she "is aware that [s]he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself as emotional distress." *Lavelle*, 30 Ohio Misc. 2d at syllabus ¶ 2. In this circumstance, the plaintiff's cancerphobia may be compensated as an element of her damages, making a separate claim for NIED "unnecessary." *Loudin*, 128 Ohio St. 3d at syllabus ¶¶ 1, 2, 562. This latter situation reflects the one presented in the case *sub judice*.

Therefore, if Mr. Freeman proves that DuPont is negligent, he may not only recover damages, which may include emotional distress and pain and suffering that resulted from the diagnosis of cancer and the operation removing his cancerous testicle, but he may also recover damages for his mental anxiety and distress over contracting cancer in the future. To recover for the alleged cancerphobia, Mr. Freeman must show that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself as emotional distress.

The Court notes that its conclusion is not identical to its decisions denying DuPont's summary judgment motion on Mrs. Bartlett's claim for NIED and a portion of its decision on

8

DuPont's Post Trial Motion. In that case, DuPont did not raise its current argument that Ohio law does not recognize an independent cause of action for NIED when the emotional distress stemmed directly from a physical injury. Instead, DuPont's briefing on this issue in the Bartlett case was directed at whether Mrs. Bartlett's NIED cause of action required her to show distress that was severe and debilitating, and whether the evidence Mrs. Bartlett presented was sufficient to show that she was aware of an increased statistical likelihood of developing cancer from which sprang a reasonable apprehension manifesting itself as emotional distress. (DuPont's Mot. for Summ. J. on Bartlett's Emotional Distress Claims, ECF Nos. 2815, 3559; DuPont's Post Trial Motion in Bartlett, ECF Nos. 151, 159.)

In its prior decisions on NIED, the Court (and the parties) relied upon the Ohio case *Lavelle*, *supra*, which held that Ohio permits damages for cancerphobia. The *Lavelle* court recognized that "Ohio courts have not specifically addressed the issue" of whether damages for an increased fear of cancer are recoverable. *Lavelle*, 30 Ohio Misc. 2d at 14. The court noted that "the general policy of [Ohio] has been to permit recovery for reasonable apprehension of a potential harm flowing from a present injury. . . . as a normal element of damages available in a personal injury action . . . ." *Id.* at 15 (citations and quotation marks omitted). *Lavelle* explained that, although the general policy has been to permit recovery, "[t]he traditional rule has been that recovery may be had for emotional injuries when there is a contemporaneous physical impact, albeit slight." *Id.* at 15. The Court went on to explain that:

> Modern tort law now recognizes a separate cause of action for serious emotional distress without a contemporaneous physical injury." (citing *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131; *Paugh v. Hanks* (1983), 6 Ohio St.3d 72). Examples of serious emotional distress are traumatically induced neurosis, psychosis, chronic depression and phobia. *Paugh v. Hanks, supra,* at 78. Cancerphobia falls within this definition.

9

*Id.* (parallel citations omitted). In considering the scope of evidence that would be permitted in the negligence action before it, the *Lavelle* court held that "the plaintiff will be permitted to introduce evidence regarding his increased fear of cancer . . . under any of the theories discussed herein, whether it be serious emotional distress or consequential anxiety and distress." *Id.*

In ruling on DuPont's Post Trial Motion in the Bartlett case, the Court explained that "Ohio courts have distinguished between [NIED] claims in which there is a physical impact or injury and those in which there is none." (DMO 12 at 112.) The Ohio Supreme Court first recognized "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury" in *Schultz v. Barberton Glass Company*, 4 Ohio St. 3d 131, sllyabus (1983). The court later set the standard for recovery of NIED unaccompanied by physical injury, as "severe and debilitating." *Paugh*, 6 Ohio St. 3d at syllabus ¶¶ 3, 3(a). A few years later, the Ohio Supreme Court held that if a plaintiff suffers contemporaneous physical injury, she does not need to prove that her resulting psychological injuries are severe and debilitating. *Binns v. Fredendall*, 32 Ohio St. 3d 244 (1987). This Court concluded, with regard to Mrs. Bartlett, that she was not required to prove that her emotional distress that manifested itself as cancerphobia was severe and debilitating because her cancer was a contemporaneous physical injury. The Court reached that conclusion by relying on *Binns*:

> The *Binns* court explained that the "plaintiff's physical injuries take her outside the class of *Schultz* and *Paugh* plaintiffs who suffer purely emotional or psychiatric injury." *Id.* at 246. "As such, the emotional or psychiatric injuries which have arisen as a proximate result of the defendant's tortious act are compensable under the traditional rule for recovery." *Id.* ("Accordingly, when the trial court erroneously recited language from *Paugh* requiring that emotional distress be both severe and debilitating to be compensable, it committed reversible error.").

10

(DMO 12 at 113 – 14.) *See also Loudin*, 128 Ohio St.3d at 564 ("Because this case involves emotional distress stemming from a physical injury, *Binns* controls.") (O'Donnell, J., concurring).

Thus, the Court determined that Mrs. Bartlett's physical injuries took her "outside the class of *Schultz* and *Paugh* plaintiffs who suffer purely emotional or psychiatric injury." (DMO 12 at 117) (quoting *Binns*, 32 Ohio St. 3d at 246). The Court did not address (nor did the parties ask it to address) the implication of this conclusion with regard to a stand-alone NIED claim. Therefore, Mrs. Bartlett was required to establish all of the elements of an NIED claim to recover for her cancerphobia.

In the present action, to recover for his alleged cancerphobia, Mr. Freeman must show only that he was aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress. *See Cantrell v. GAF Corp.*, 999 F.2d 1007 (6th Cir. 1993) (finding that damages for cancerphobia were available as a portion of damages in a negligence action where the plaintiffs suffered a contemporaneous physical injury, if the plaintiffs could show that they were aware that they in fact possessed an increased statistical likelihood of developing cancer, and that from this knowledge sprang a reasonable apprehension which manifested itself as mental distress). Similar to the Bartlett jury instructions, the determination of cancerphobia damages, and the amount if any, will be determined separately since they are a separate alleged injury for which damages are available.

**B.    Evidence to Support Cancerphobia**

DuPont argues that it is entitled to summary judgment on Mr. Freeman's NIED claim because he failed to allege emotional distress sufficient to support an independent NIED claim

11

(*i.e.*, severe and debilitating emotional distress), and because his cancerphobia is unreasonable. Because the Court concluded *supra* that Mr. Freeman's cancerphobia allegations do not support an independent NIED claim, it is unnecessary to address whether he alleged emotional distress sufficient to support an independent NIED claim. However, because Mr. Freeman may recover for his alleged cancerphobia as a separate portion of damages of his negligence claim, DuPont's second argument is relevant to the evidence Mr. Freeman offers to support damages for his claimed mental anxiety and distress over contracting cancer in the future.

As to that issue, DuPont contends that Mr. Freeman's claimed emotional distress from his alleged fear of developing future cancers or having a recurrence of cancer is unreasonable because his cancerous testicle was successfully removed, he has been cancer-free for sixteen years, and his medical expert witness indicates that his current chance of future cancer is very low. Mr. Freeman responds, *inter alia*, that his fear is not unreasonable based on the fact that he was aware that he was at an increased risk of getting cancer after the cancer was diagnosed and operationally removed. Unlike the general population, he was required to have x-ray and blood work performed on a monthly basis the first year after his cancer surgery and a full CAT scan of his abdomen, chest, and pelvic region performed every three months. The CAT scan monitoring process continued for ten years. Mr. Freeman testified that suffered throughout this time from fear and anxiety that his cancer would return. (Freeman Dep. at 227–253, EC No. 4312-4.) Mr. Freeman testified on deposition that he was fearful that he would suffer a recurrence of testicular cancer or other cancer because he had testicular cancer, and also because he is at an increased risk for developing other cancers from of the CAT scan monitoring protocol. *See id.*

At this juncture, the Court is prohibited from weighing the evidence or making credibility

12

determinations and must only determine whether Mr. Freeman has raised any genuine issue for trial. *See Anderson*, 477 U.S. at 255. The Court concludes that Mr. Freeman has presented evidence from which a reasonable jury could find that he was "aware that he, in fact, possesses an increased statistical likelihood of developing cancer, and, from this knowledge, spr[ang] a reasonable apprehension which manifest[ed] itself as emotional distress." *Lavelle*, 30 Ohio Misc. 2d at syllabus ¶ 2. Mr. Freeman knew that he had a higher risk of recurrence of cancer because of his testicular cancer; he was required for at least ten years to have testing to be sure his cancer did not recur or he did not develop a new type of cancer; and, the additional testing predisposed him to cancer as well. Based on this knowledge, a jury could determine that Mr. Freeman's fear was not unreasonable. "Reasonable in this context is not equivalent to probability or certainty, but is for a fact-finder to determine." *Id*. Consequently, DuPont is not entitled to summary judgment on Mr. Freeman's request for damages for his mental anxiety and distress over contracting cancer in the future.

### IV.

In accordance with this Opinion and Order, the Court **DENIES AS MOOT** Defendant's Motion for Summary Judgment on Trial Plaintiff David Freeman's Claim for Concealment, Misrepresentation, and Fraud (ECF No. 4317), **DENIES AS MOOT** the portion of Defendant's Motion for Summary Judgment on David Freemen's Emotional Distress Claims directed to the intentional infliction of emotional distress claim and **GRANTS IN PART AND DENIES IN PART** the portion of the Motion related to the NIED claim (ECF No. 4318). Specifically, Mr. Freeman's allegations related to his fear and anxiety over contracting cancer in the future do not state an independent claim for NIED, but instead constitute a separate injury that may be compensated as a portion of damages in his negligence claim. In that regard, Mr. Freeman has

raised genuine issues of material fact as to whether he suffers from cancerphobia, and if he does so suffer whether he is entitled to compensation for that emotional distress.

**IT IS SO ORDERED.**

4-15-2016
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE