**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION | CASE NO. 2:13-MD-2433<br><br>JUDGE EDMUND A. SARGUS, JR.<br><br>MAGISTRATE JUDGE ELIZABETH P. DEAVERS |

This document relates to:   *David Freeman v. E. I. du Pont de Nemours and Company,*
                            Case No. 2:13-cv-1103.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DUPONT'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE IRRELEVANT OPINIONS OF DAVID L. MACINTOSH**

## I.   INTRODUCTION

Defendant E. I. du Pont de Nemours and Company's ("DuPont's") Motion *in Limine* No. 6 [ECF No. 4446] (the "Motion") seeks to exclude the allegedly irrelevant opinions of Plaintiff's expert David L. MacIntosh, ScD. In support of its Motion, DuPont asserts that, because it will not contest Mr. Freeman's *Leach* class membership status, the totality of Dr. MacIntosh's proposed trial testimony is entirely irrelevant and a waste of the jury's time. DuPont is wrong.

In addition to his opinion that Mr. Freeman is a *Leach* class member, Dr. MacIntosh also proffers a multitude of additional opinions, which are relevant to at least the following disputed issues: (1) specific causation; (2) DuPont's course of conduct with respect to C-8 contamination and thus its potential liability; and (3) the background facts related to Dr. MacIntosh's exposure analysis, including but not limited to the fate and transport of C-8 into Mr. Freeman's drinking water. Because Dr. MacIntosh's opinions are relevant to at least the aforementioned topics, in addition to the issue of *Leach* class membership, his proposed testimony will assist the jury in

determining facts at issue, even if Plaintiff were to agree to stipulate to *Leach* class membership, which he has not yet done.[1]

As such, DuPont's Motion seeks to exclude evidence that is plainly relevant, is in no way unfairly prejudicial, confusing to the jury, misleading to the jury, a cause of undue delay, a waste of time, and/or a needless presentation of evidence. Therefore, DuPont's Motion should be denied.

## II.     LEGAL ARGUMENT

### A.     DuPont Seeks to Exclude Evidence That is Relevant and Admissible.

DuPont's Motion rests on the inaccurate underlying assumption that Dr. MacIntosh's proffered testimony is relevant only to the single of issue of Mr. Freeman's *Leach* class membership status. DuPont argues that, in light of its proffered stipulation regarding that issue, that the totality of Dr. MacIntosh's proposed testimony is thereby rendered moot. This argument fails, however, because it inappropriately conflates Dr. MacIntosh's class membership opinion with the totality of his proposed trial testimony, which as noted above, is relevant for many reasons beyond Mr. Freeman's *Leach* class membership status.

More specifically, as noted above, Dr. MacIntosh's testimony is also relevant to the specific causation analysis insofar as the jury will be required to weigh the competing opinions of the parties' experts as to the specific cause of Mr. Freeman's testicular cancer, DuPont's course of conduct with respect to C-8 contamination and thus its potential liability, and additionally, provides context for these issues, including but not limited to the background facts related to the

---

[1] To the extent that DuPont's Motion is aimed solely at excluding Dr. MacIntosh's opinion that Mr. Freeman is, as a matter of law, a *Leach* class member, Plaintiff would agree to stipulate to this sole fact, provided the jury would be given a proper and agreed upon instruction concerning his *Leach* class membership status. However, this proposed stipulation has no bearing on any of the other proposed testimony that Dr. MacIntosh intends to give at trial, which as noted above, is relevant to the jury's determination of specific causation, DuPont's course of conduct with respect to C-8 contamination and thus its potential liability, and as background facts concerning the fate and transport of C-8, which resulted in the contamination of Mr. Freeman's drinking water.

2

transport and fate of C-8 into the Little Hocking Water Association ("LHWA") public drinking water supply.[2]

First, with respect to specific causation, DuPont contests specific causation in Mr. Freeman's case, and is proffering duplicative expert opinions from Drs. Schoenberg and Luongo that Mr. Freeman's testicular cancer is "idiopathic." Plaintiff is thus entitled, and actually required as part of his *prima facie* case, to refute DuPont's experts' specific-causation opinions with its own expert's opinion that C-8 was the specific cause of Mr. Freeman's testicular cancer.

In order for Plaintiff's case-specific causation expert, Dr. Robert R. Bahnson, to do this appropriately, he must rely on Dr. MacIntosh's exposure analysis for Mr. Freeman, including but not limited to, Dr. MacIntosh's opinion that Mr. Freeman had multiple years of C-8 exposure at levels well-above the requisite concentration of .05 ppb required for *Leach* class membership.[3] In short, Dr. MacIntosh's exposure analysis is an integral part of Dr. Bahnson's case-specific causation opinion, which can only be properly elicited from Dr. Bahnson, if Dr. MacIntosh is first permitted to provide the underlying exposure opinions. In other words, if Dr. Bahnson cannot weigh the level and duration of C-8 exposure experienced by Mr. Freeman in comparison to other potential explanations for Mr. Freeman's testicular cancer, he cannot properly rule out other explanations for Mr. Freeman's testicular cancer, including but not limited to an idiopathic explanation. In this way, Dr. MacIntosh's exposure analysis is extremely relevant to the contested issue of specific causation, in addition to the issue of *Leach* class membership.

---

[2] As noted below, Mr. Freeman claims exposure to C-8-contaminated drinking water from the LHWA public drinking water supply from 1993-2005.

[3] In Attachment 4 to Dr. MacIntosh's expert report, Dr. MacIntosh outlines the years (1993-2005) that Mr. Freeman was exposed to C-8-contaminated drinking water from LHWA, and identifies the annual average C-8 concentrations in parts per billion for each year Mr. Freeman was exposed, all of which are well above the requisite .05 ppb level. (*See* Expert Report of David L. MacIntosh, ScD, CIH ("MacIntosh Report") [ECF No. 4329-2] at Attachment 4.)

Dr. MacIntosh's proposed testimony is also related to DuPont's course of conduct with respect to C-8 contamination, and thus its potential liability. In his expert report, Dr. MacIntosh explains not only that Mr. Freeman is a *Leach* class member but that, in his expert opinion, Mr. Freeman consumed multiple times the minimum durational requirement necessary to be a *Leach* class member, which requires only one year of exposure to C-8-contaminated drinking water with a concentration of .05 ppb. (*See id.*; *see also* Feb. 28, 2005, Final Order Approving the *Leach* Class Settlement [ECF No. 820-9] at 10-11.) In fact, Dr. MacIntosh opines that Mr. Freeman had at least seven years of exposure to C-8-contaminated drinking water prior to his testicular cancer diagnosis. (*See* MacIntosh Report at Attachment 4.)

Similarly, Dr. MacIntosh's expert report further provides that "[i]nformation from the Panel indicates that PFOA concentrations in LHWA water attributable to the Washington Works plant ranged from 3.75-5.06 ppb on an annual basis from 1994-2000." (*See id.* at 7.) This C-8 drinking water concentration range for the years 1994-2000, which represents one year after Mr. Freeman started drinking C-8-contaminated drinking water through the year of his testicular cancer diagnosis, is between over 70 times and over 100 times the concentration level required for *Leach* class membership. As such, in addition to finding that Mr. Freeman's C-8 exposure far exceeds the durational requirement necessary for *Leach* class membership, Dr. MacIntosh's exposure analysis likewise quantifies the extent of Mr. Freeman's exposure well above what is required for *Leach* class membership. As such, implicit in Dr. MacIntosh's exposure analysis is circumstantial evidence of the degree and/or extent of C-8 contamination of the LHWA public drinking supply by DuPont as a result of emissions from DuPont's Washington Works plant. In this way, Dr. MacIntosh's proposed testimony is relevant to DuPont's course of conduct with respect to C-8 contamination and thus its potential liability for same.

4

Similarly, at his deposition, Dr. MacIntosh testified that, beyond estimating the yearly average C-8 concentrations in the LHWA drinking water, he also considered both C-8 air measurements and air modeling, as well as Mr. Freeman's serum C-8 level, all of which he considered as part of his exposure analysis for Mr. Freeman. (*See* Depo. Tr. of David L. MacIntosh, ScD, CIH ("MacIntosh Dep.") [ECF No. 4398-2] at 41:6-22.) As such, in addition to Dr. MacIntosh's proposed testimony related to the degree of drinking water contamination by DuPont, DuPont's C-8 air emissions from the Washington Works plant, as well as Mr. Freeman's C-8 serum levels, are likewise circumstantial evidence of the extent and/or degree of severity of DuPont's course of conduct with respect to C-8 contamination.[4] In short, the degree and/or extent of C-8 contamination attributable to DuPont's Washington Works plant goes directly to DuPont's course of conduct with respect to C-8 contamination. As such, even assuming *arguendo* that Plaintiff would agree to stipulate to class membership, Dr. MacIntosh's opinions concerning the extent and/or degree of C-8 contamination, including but not limited to by air and/or water, would still be relevant to DuPont's course of conduct with respect to C-8 contamination and thus its potential liability.[5]

Dr. MacIntosh provides the requisite and relevant context and/or background for his exposure analysis, namely, the fate and transport of C-8 into the LHWA drinking water supply. In his deposition, on this point, Dr. MacIntosh testified as follows:

---

[4] In its Motion, DuPont argues that Dr. MacIntosh's opinions regarding air emissions of C-8 are wholly irrelevant to Mr. Freeman's case, because Mr. Freeman is not claiming that he was injured as a result of exposure to C-8 in the air. (Motion at 3 n.1.) Dr. MacIntosh specifically opines as to Mr. Freeman's specific C-8 air exposure and his inhalation of the same. (*See* MacIntosh Report at 7.)  As such, the C-8 air emissions, and Mr. Freeman's inhalation of that C-8, are directly relevant to DuPont's course of conduct with respect to C-8 contamination, given that this pathway of emissions directly impacted Mr. Freeman. In addition, Dr. MacIntosh specifically testified that it was, in part, as a result of air emissions that Mr. Freeman's drinking water was contaminated with C-8, which is the specific C-8 exposure source that Mr. Freeman claims he was injured from. (*See* MacIntosh Dep. at 44:5-13.) As such, any argument that Dr. MacIntosh's opinions concerning C-8 air emissions are somehow irrelevant is wrong.

[5] As noted above, any agreement to stipulate to *Leach* class membership would be contingent upon a well-crafted and agreed upon jury instruction identifying Mr. Freeman as a *Leach* class member as a matter of law.

> Q. And what's your understanding as to how it was that PFOA made it from the Washington Works facility to the little -- the water supply in Little Hocking?
>
> A. My understanding is that the atmospheric deposition as a result of PFOA stack discharges from the facility is a important contributor. However, wastewater discharges containing PO -- PFOA may also have contributed to the PFOA at the Little Hocking Water Association's well field.
>
> Q. So, aside from -- so we've got atmospheric deposition, so things are coming out of the stacks and then landing on the well field, and then you're saying wastewater discharges as well?
>
> A. Yeah, that's directly from the GIST reports, the GIST report.[6] (*See* MacIntosh Dep. at 44:5-20.)

The deposition testimony cited above makes clear that Dr. MacIntosh's proposed trial testimony also includes the factual background for his exposure analysis. More specifically, his opinions include how the C-8 got from DuPont's Washington Works plant into Mr. Freeman's drinking water. As such, his opinions and proposed trial testimony, in addition to being relevant to class membership, specific causation, and DuPont's conduct, are equally relevant as factual background for his exposure analysis.

DuPont cites five cases in support of the proposition that, where a party stipulates to a specific fact, any proffered evidence pertaining to that fact is thereby rendered irrelevant. Each of these cases is easily distinguishable on its face. *Campbell v. Triad Fin. Corp.*, 2008 U.S. Dist. LEXIS 123194, at *9 (N.D. Ohio Jan. 3, 2008), is clearly inapposite for several reasons. First, the excluded evidence in *Campbell* was not deemed irrelevant because of any stipulation between the parties, rather, the court found the evidence to be irrelevant, and thus was

---

[6] As the Court may recall, in *Bartlett v. E. I. du Pont de Nemours & Co.*, Case No. 13-cv-170, Dr. MacIntosh illustrated the fate and transport of C-8 to the jury through the use of an animation that identified the ways in which C-8 got into the Tuppers' Plains' drinking water supply, which was the public water utility from which Mrs. Bartlett received her drinking water. Dr. MacIntosh will utilize a similar animation identifying the C-8 pathways related to the contamination of the LHWA drinking water supply, including but not limited to air emissions and direct discharges into the Ohio River.

6

inadmissible for that reason. Second, in that case, the court noted that, even assuming *arguendo* that the evidence in question was relevant, in light of the parties' stipulation relating to the evidence, the presentation of additional evidence on the issue would have been duplicative, and thus inadmissible for that reason as well.

Here, there is no finding by this Court that Dr. MacIntosh's opinions are irrelevant, nor has there been any stipulation between the parties regarding the evidence that he intends to proffer at trial. As such, *Campbell* is inapplicable and, as discussed above, Dr. MacIntosh's opinions are relevant to a multitude of contested issues.

Similarly, in *Faulman v. Sec. Mut. Fin. Life Ins. Co.*, 353 Fed. Appx. 699 (3d Cir. 2009), the court excluded the evidence at issue, because the defendant stipulated to the precise facts that plaintiff was trying to prove with the evidence. Here, DuPont has not stipulated to the precise facts that Plaintiff intends to prove through Dr. MacIntosh's testimony. Again, even assuming Plaintiff would be willing to stipulate to class membership, DuPont has not stipulated to specific causation, liability for its C-8 contamination, and/or the transport and fate of C-8 with respect to the LHWA drinking supply, all of which, as set forth above, are subjects for which Dr. MacIntosh's opinions are relevant, and are opinions that Plaintiff intends to elicit at trial. As such DuPont's reliance on *Fauman* is equally misplaced.

In addition to *Campbell* and *Fauman*, DuPont also cites *Morris v. Washington Metropolitan Area Transit Authority*, 702 F.2d 1037 (D.C. Cir. 1982), *Halsley v. State Farm Mut. Auto. Ins. Co.*, 11-cv-1092, 2013 U.S. Dist. LEXIS 101664, at *1-2 (M.D. Al. 2013), and *Pulvermacher v. United States*, 96-civ-9448, 1998 U.S. Dist. LEXIS 6743, at *3-4 (S.D.N.Y 1998) in support of its position that where a party stipulates to a fact, any proffered evidence

pertaining to that fact, is thereby rendered irrelevant. Each of these cases is similarly inapplicable.

Unlike the facts presented here, in *Morris, Halsley*, and *Pulvermacher*, the excluded testimony had no relevance to plaintiff's claims beyond the facts that the parties had previously stipulated to. Here, as outlined above, Dr. MacIntosh's proposed testimony is relevant to a number of issues beyond class membership, which is the sole fact DuPont is offering to stipulate to. Because his testimony is relevant to contested facts, none of the cases cited by DuPont are relevant to the facts presented here.

For the reasons set forth above, Dr. MacIntosh's proposed testimony is relevant and thus DuPont's Motion should be denied.

      **B.**      **The Evidence At Issue Is Not In Admissible Under Rule 403.**

DuPont further argues that "Dr. MacIntosh should not be allowed to inundate the jury with information to 'prove' a fact that the parties do not dispute." (Mot. at 3.) DuPont goes on to state that Dr. MacIntosh's opinions are inadmissible under Fed. R. Evid. 403, because the opinions are confusing, misleading and unnecessarily prolong the trial. (*Id*.) DuPont is wrong on all points.

As discussed above, all but one of Dr. MacIntosh's proposed opinions, namely *Leach* class membership, remains in dispute. Because most of Dr. MacIntosh's opinions remain in dispute, it cannot be said that the testimony he would provide would relate to uncontested facts, and therefore, would be confusing, misleading, and/or a waste of time for the jury to hear. As such, his opinions are admissible.

To the extent that DuPont agrees to stipulate to specific causation, its own liability with respect to C-8 contamination, and the fate and transport of C-8 into the LHWA public drinking water supply, then Plaintiff is willing to entertain such a stipulation, but unless and until that is

8

the stipulation being proposed, then it cannot be said that Dr. MacIntosh is proffering testimony that is undisputed. Finally, Plaintiff does not agree to any attempt by DuPont to unilaterally stipulate that the totality of Dr. MacIntosh's proposed testimony is irrelevant simply because DuPont will not contest *Leach* class membership.

In light of the foregoing, Dr. MacIntosh's testimony is not misleading to the jury, nor does his testimony unnecessarily prolong the trial. In fact, it is DuPont that is being misleading and disingenuous by arguing that the totality of Dr. MacIntosh's testimony is irrelevant simply because it will stipulate to class membership. DuPont is well aware that Dr. MacIntosh provides opinions above and beyond class membership.

Because Dr. MacIntosh's proposed testimony is both relevant and will assist the trier fact in determining the many issues in dispute, which are outlined above, DuPont's Motion should be denied in its entirety.

### III. CONCLUSION

For the reasons set forth above, DuPont's Motion *in Limine* No. 6, to exclude the allegedly irrelevant opinions of Dr. David MacIntosh should be denied in its entirety. The evidence at issue is relevant and DuPont has not carried its burden to demonstrate that such evidence would be unfairly prejudicial, confusing to the jury, misleading to the jury, a cause of undue delay, a waste of time, and/or a needless presentation of evidence.

Respectfully submitted,

*/s/ Michael A. London*
Michael A. London
Douglas & London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: 212-566-7500

>Fax: 212-566-7501
>Email: mlondon@douglasandlondon.com
>
>Robert A. Bilott
>Taft Stettinius & Hollister LLP
>425 Walnut Street, Suite 1800
>Cincinnati, Ohio 45202-3957
>Telephone: 513-381-2838
>Fax: 513-381-0205
>Email: Bilott@taftlaw.com
>
>Jon C. Conlin
>Cory Watson, P.C.
>2131 Magnolia Ave., Suite 200
>Birmingham, AL  35205
>Telephone: 205-328-2200
>Fax: 205-324-7896
>Email: jconlin@corywatson.com
>
>*Plaintiffs' Steering Committee Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 25th day of April, 2016, and was thus served electronically upon all counsel of record.

>*/s/ Michael A. London*