IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION | CASE NO. 2:13-MD-2433<br><br>JUDGE EDMUND A. SARGUS, JR.<br><br>MAGISTRATE JUDGE ELIZABETH P. DEAVERS |
| **This document relates to:** | |
| *Vigneron v. E. I. du Pont de Nemours and Company*, Case No. 2:13-cv-136 | |

**MOTION *IN LIMINE* TO PRECLUDE BOLSTERING
OF THE SCIENCE PANEL'S 2012 FINDINGS
(Motion *in Limine* No. 2)**

Pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, Defendant E. I. du Pont de Nemours and Company ("DuPont") respectfully requests that this Court preclude Trial Plaintiff Kenneth Vigneron, his counsel, and his witnesses from improperly bolstering the Science Panel's 2012 findings at trial. This request specifically includes, but is not limited to, Plaintiff's class membership expert, Dr. David L. MacIntosh, and his specific causation expert, Dr. Robert R. Bahnson. Based on their opinions given to date in Plaintiff's case, and their testimony in the prior trials, DuPont expects that Dr. MacIntosh and Dr. Bahnson will attempt to improperly bolster the Science Panel's findings in several ways. Neither they, nor any other witnesses or Plaintiff's counsel, should be permitted to do so at trial.

Dr. MacIntosh's report makes clear this his role is once again to opine that Plaintiff is a *Leach* class member. *See* Aug. 8, 2016 Report of David L. MacIntosh, ScD, CIH [ECF No. 4640, Ex. A] ("MacIntosh Report") at 2. Because Plaintiff's class membership is undisputed, Dr. MacIntosh's opinions are wholly irrelevant to any triable issues in this case, and should be

excluded entirely.[1]  However, if he is permitted to testify over DuPont's objections, DuPont expects that Dr. MacIntosh will again be asked to bolster the Science Panel's findings by, among other things, providing an opinion on the alleged "potency" of C8, even though he has not disclosed any such opinions in his report and he has no expertise to offer the opinion.  Any such testimony would improperly bolster and misrepresent the true nature of the Science Panel's findings, and Dr. MacIntosh should be precluded from offering it at trial.

DuPont also expects that Dr. Bahnson will attempt to offer opinions about the magnitude of Plaintiff's exposure to C8 and the quality of the Science Panel's work.  When asked about the basis of his causation opinion at deposition, Dr. Bahnson claimed that Plaintiff had a "huge" exposure to C8 and the Science Panel's work was "substantial and well-conducted."  This is directly contrary to the Court's prior rulings.[2]  *See, e.g.*, Sept. 22, 2015 Trial Tr. [*Bartlett* ECF No. 128-1] at 113:11-19 (Court:  "Let's go with – he's going to rely on the Science Panel . . . My concern – I don't want anybody commenting on the Science Panel.  I mean, it's a given.  It's not good.  It's not bad.  It's a given, period.").  Dr. Bahnson also should not be able to engage in bolstering by stating or suggesting the C8 is "generally accepted" in the medical community as a cause of testicular cancer.  *See* Evidentiary Motions Order No. 4 [ECF No. 4518] at 27 (finding that the Parties would be bound by stipulation that Dr. Bahnson would not testify that C-8 is "generally accepted" in the medical community as a cause of testicular cancer).  *But see* June 7,

---

[1] DuPont incorporates by reference its *Motion in Limine* to Exclude Irrelevant Opinions of Dr. David MacIntosh (Motion *in Limine* No. 6) [ECF No. 4446], which was filed in advance of the *Freeman* trial, and preserves all of its arguments and objections to the admissibility and relevance of Dr. MacIntosh's testimony as set forth in that motion and as otherwise explained on the record in these cases. *See* Ex. A.

[2] Because these opinions are the basis for Dr. Bahnson's specific causation conclusions in this case, he should be completely excluded from offering any specific causation opinions at trial, as explained in DuPont's Motion to Exclude [ECF No. 4657] and Reply [ECF No. 4700], which are incorporated in relevant part here.

2016 Trial Tr. [*Freeman* ECF No. 112] at 133:18–22 (Dr. Bahnson characterizing a list of alleged risk factors for testicular cancer, including C8, as "generally accepted").[3]

## RELEVANT BACKGROUND

**I.  Dr. MacIntosh**

According to his expert report, Dr. MacIntosh's assignment in this case was to analyze the narrow issue of whether Plaintiff meets the criteria necessary to be a member of the *Leach* class. *See* MacIntosh Report at 2 (summarizing his opinions as: (1) "Mr. Vigneron is a 'Class Member' under the Leach Class settlement; and (2) "Based on his [C8] exposure history . . . Mr. Vigneron first met the criteria for Class Member status no later than April 1982.").

Dr. MacIntosh's report in this case ***does not*** disclose any opinions regarding the "potency" of C8, nor is he qualified to give any such opinion. Although this was also true in the past trial cases,[4] plaintiffs' counsel attempted to elicit testimony from Dr. MacIntosh's during direct examination regarding the "potency" of C8. During the *Bartlett* trial, the Court sustained DuPont's objections to this questioning. *See* Sept. 21, 2015 Trial Tr. [*Bartlett* ECF No. 127] at 53:2-54:6. This Court noted both that Dr. MacIntosh was not the right expert to be offering such opinions,[5] and that the testimony sought by counsel was an improper attempt to bolster the

---

[3] In support of this motion, DuPont incorporates by reference its *Motion in Limine* to Preclude any Statement, Opinion, or Argument that "Bolsters" the Science Panel's Work [ECF No. 4442], which was filed in advance of the *Freeman* trial. *See* Ex. B.

[4] *See Bartlett* MacIntosh Report [ECF No. 3441, Ex. K] at 2; *Freeman* MacIntosh Report [ECF No. 4311, Ex. C] at 2.

[5] In order for an exposure scientist to be qualified to offer an expert opinion as to the potency of a chemical, the exposure scientist must also have training and experience in the fields of toxicology, epidemiology, or medicine. Federal Judicial Center, Reference Manual on Scientific Evidence (the "Reference Manual on Scientific Evidence") at 505-8 (3d ed. 2011). As the Reference Manual on Scientific Evidence states:

> To the extent exposure assessments deal with the amounts and behaviors of chemicals in the body, *individuals can qualify as experts if they can offer* academic credential or substantial experience in toxicology and in the measurement of chemicals in the blood or in biological tissues. Certainly, toxicology, epidemiology, or medical credentials are

- 3 -

Science Panel's findings:

> Q [by Mr. Douglas]: Now in this case it is an uncontested fact that C8 when consumed in drinking water which contains at least .05 parts per billion for it to be capable of causing kidney cancer. Assuming that fact, assuming that's true, what does that tell you, doctor? You have worked with many substances in your career. What does that tell you about the potency of C8?[6]
>
> MR. FAZIO: Objection.
>
> THE COURT [at side-bar]: [W]e're not going to have an attack taking place on the [Science Panel's] findings. That's if you're bolstering it, it's going to open up an attack is my concern . . . Well, this part is undisputed. This is the standard. So when you're asking him to describe the standard any further than it is, then that's wading into a problem . . . [t]his is just not the expert to do it.

Sept. 21, 2015 Trial Tr. [*Bartlett* ECF No. 127] at 53:2-54:6.

During the *Freeman* trial, however, Dr. MacIntosh was permitted to testify about the potency of C8, over DuPont's same objection:

> MR. DOUGLAS: [How] would you characterize the potency of this .05 parts per billion for a year capable of causing cancer?
>
> [DR. MACINTOSH]: Based on that value, *it's one of the most potent chemicals that I've worked with*.

June 16, 2016 Trial Tr. [*Freeman* ECF No. 119] at 49:7-11 (emphasis added); *see also id.* at 47:12-48:25 (objection and sidebar). As a result, and contrary to the Court's prior explicit

---

needed if experts are to offer testimony on the health consequences associated with particular exposures.

*Id.* at 508 (emphasis added). Because Dr. MacIntosh does not have these qualifications, the Court should exclude him from offering any opinion on the "potency" of C-8. *See Wellman v. Norfolk & Western Ry.*, 98 F. Supp. 2d 919, 924 (Sargus, J.) (S.D. Ohio 2000) ("The United States Supreme Court and other Circuit Courts of Appeal have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise")

[6] As set forth in its contemporaneously-filed Motion *in Limine* to Exclude References to the Science Panel and Its Findings, there is a critical difference between DuPont's agreement not to contest general causation for plaintiffs who meet the *Leach* class criteria, and counsel's misrepresentation here and throughout the trials that it is "uncontested" that C8 is in fact capable of causing disease at exposure levels of 0.05 ppb for a period of one year. DuPont incorporates that motion in relevant part, and preserves all of its objections and positions regarding plaintiffs' misuse and misrepresentation of the Science Panel findings.

- 4 -

rulings, Dr. MacIntosh was permitted to and did go beyond his expertise to offer an undisclosed opinion on potency, and bolstered the Science Panel's findings.

## II.     Dr. Bahnson

According to his expert report, Dr. Bahnson was asked to analyze whether "exposure to C8 was a substantial contributing factor to [Plaintiff's] development of testicular cancer." *See* Aug. 8, 2016 Report of Robert R. Bahnson, M.D., F.A.C.S. [ECF No. 4640] ("Bahnson Report") at 3.  While Dr. Bahnson's expert report ***does not*** address his methodology for ruling out the likelihood that something unknown caused Plaintiff's testicular cancer, his conclusion that C8 was a substantial contributing factor in Plaintiff's testicular cancer is based on Dr. MacIntosh's conclusion that Plaintiff is a *Leach* Class Member, and the Science Panel's Probable Link finding.  *See* Bahnson Report at 3.

At his deposition, Dr. Bahnson claimed that he was able to "rule out" unknown causation because of Mr. Vigneron's "huge exposure to C8" and because of the Science Panel's "substantial and well-conducted epidemiologic study" demonstrating that "certain serum levels are associated with and are causative" for testicular cancer.  Dr. Bahnson made clear during his deposition that he intends to offer this testimony at Plaintiff's trial.  Tr. of Aug. 26, 2016 Depo. of Robert R. Bahnson, M.D. [ECF No. 4641, Ex. E] ("Bahnson Depo.") at 172:5-7 ("And we know that he had a huge exposure to C8 because of the serum levels that were reported to him when he was tested.  *So that's what I'm going to tell the jury . . . .*") (emphasis added).

This was not the first instance in this MDL where, despite explicit prior rulings of the Court,[7] Dr. Bahnson has testified regarding his perceived significance of a plaintiff's alleged actual "dose."  For example, in *Freeman*, Plaintiff's counsel questioned Dr. Bahnson about a

---

[7] *See generally* DMO-1 and DMO 1-A.

chart that purported to reflect Mr. Freeman's actual exposures based on estimates prepared by Dr. MacIntosh. *See* June 7, 2016 Trial Tr. [*Freeman* ECF No. 112] at 124:20-130:2; *see also id.* at 129:6-8 (counsel arguing that the numbers on the chart were "sometimes 75 times higher than .05, and as much as 100 times in the year 2000 more than .05, and for not just one year but for seven years."). In response to this questioning, Dr. Bahnson agreed that he had "consider[ed] all of that C8 exposure and consumption of water containing that amount of C8 in Mr. Freeman's water when [he] formulated" his specific causation opinion. *Id.* at 129:10-12, 129:13; *see also*, *e.g.,* June 7, 2016 Trial Tr. [*Freeman* ECF No. 112] at 205:7-9 ("My opinion is that the continued exposure at those high levels in the drinking water had an effect that was cumulative . . . ."); *id.* at 155:16-21 (agreeing with counsel that "all this C8 exposure was [not] just a big, old coincidence and this was a spontaneous cancer that occurred just on its own").

## LAW AND ARGUMENT

### I. Plaintiff's Counsel and Experts Should Not Be Permitted to Bolster the Science Panel's Work and Findings.

There is little question that Drs. MacIntosh and Bahnson intend to impermissibly bolster the Science Panel's work and findings at trial, following the lead of Plaintiff's counsel on direct. To the extent they are permitted to testify at all, both experts should be strictly precluded from engaging in such impermissible bolstering, including by offering the opinions identified above.

#### A. Dr. MacIntosh's "Potency" Opinion is Improper.

This Court previously held that plaintiffs are not permitted to use the Class Membership exposure threshold to bolster the Science Panel's findings. *See*, *e.g.*, Sept. 21, 2015 Trial Tr. [*Bartlett* ECF No. 127] at 53:2-54:6; Tr. of May 6, 2016 MIL Hearing [ECF No. 4527] 52:1-5 ("So now we're going to get to the Science Panel, and just as a general—I think you've agreed here—that there could be no attack on the Panel's findings, and there could be no bolstering of

the Panel's findings. Are we clear on that?").

In *Freeman*, however, Dr. MacIntosh's opinion that C8 was "one of the most potent chemicals that I've worked with" improperly bolstered the Science Panel's findings because the jury was misled to believe that the .05 ppb Class Membership exposure threshold set by the *Leach* agreement was a dose at which extremely toxic effects were likely to occur. June 16, 2016 Trial Tr. [*Freeman* ECF No. 119] at 49:10-11. While Mr. Freeman's counsel claimed this opinion was necessary to provide the jury with context about the relative size of a part-per-billion, in reality it was nothing more than an impermissible sleight of hand designed to improperly bolster and mischaracterize the Science Panel's findings. Because this Court has already held that bolstering of the Science Panel's findings is improper in this MDL, Dr. MacIntosh should be precluded from offering any opinion as to "potency" in *Vigneron*.

B. **Dr. Bahnson's Opinions Regarding the Alleged Magnitude of Plaintiff's Exposure to C8 and the Quality of the Science Panel's Work are Improper.**

In DMO 1 and DMO 1-A, this Court held that a plaintiff could satisfy the specific causation element of "dose" by establishing *Leach* Class Membership and that nuances of the Science Panel's findings, including what exposure quartile each plaintiff fell into, was not an admissible evidentiary issue.[8] Thus, this Court held that testimony by Dr. Bahnson about the Science Panel's work and findings was admissible only for the limited purpose of establishing what materials he relied on to form his opinions. Sept. 22, 2015 Trial Tr. [*Bartlett* ECF No. 128-1] at 113:11-12 (Court: "Let's go with – he's going to rely on the Science Panel . . . .").

Here, Dr. Bahnson's testimony at deposition that Plaintiff had a "huge" exposure to C8,

---

[8] DuPont continues to preserve and does not waive all of its additional arguments and positions regarding the meaning and application of the Specific Causation provisions of the *Leach* Agreement in these cases. *See, e.g.*, ECF Nos. 1031, 1407, 2813, 2816, 2817, 2823, 3203, 3562, and 3563, which DuPont incorporates by reference here.

which he claims placed Plaintiff in the highest exposure quartile in the Science Panel's analysis is not only inaccurate, but it is precisely the type of evidence that the Court found to be inadmissible in DMO 1 and DMO 1-A. Dr. Bahnson should not be permitted to mischaracterize and bolster the Science Panel's work at trial through any such inaccurate suggestion, particularly when DuPont is prohibited from cross-examining him on the issue. Further, Dr. Bahnson's testimony at his deposition in Plaintiff's case that the Science Panel's work was "substantial" and "well-conducted," and his prior testimony that C8 is a generally-accepted cause of testicular cancer, is the exact type of bolstering that this Court has repeatedly found impermissible. *See, e.g.*, Sept. 22, 2015 Trial Tr. [*Bartlett* ECF No.128-1] at 113:15-19, 115:18-21 (the Court repeating that it did not "want anybody commenting on the Science Panel [because] it's a given. It's not good. It's not bad. It's a given, period.").

## II. Opinions Regarding Plaintiff's Alleged "Dose" and the Quality of the Science Panel's Work are Misleading and Unfairly Prejudicial.

Federal Rule of Evidence 403 permits a court to exclude evidence when its "probative value is substantially outweighed by a danger of . . . unfair prejudice" and it is . . . "misleading [to] the jury." Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's notes to 1972 amendment. As one court in the Southern District of Ohio has held, "[i]f the battle is emotional alone, between [an injured plaintiff] and big business, there can be but one winner. Emotional battles, however, should not be staged in the federal courtroom. We deal in liability imposed not by emotion but by law." *In re Richardson-Merrell "Bendectin" Prods. Liab. Litig.*, 624 F. Supp 1212, 1224 (S.D. Ohio 1985).

Before the *Freeman* trial, this Court held a party may be permitted despite a stipulation to tell his story to the jury through witness testimony, but further emphasized that Federal Rule of

Evidence 403 limits how far that story can go.  Tr. of May 6, 2016 MIL Hearing [*Freeman* ECF 4527] at 36:1-8 ("That's what *Old Chief* talks about. . . .  But what it does also say is that we get into the issues of wasted time, cumulative evidence.").  This Court's ruling thus acknowledged that plaintiffs do not have an unfettered ability to introduce *any* evidence that a plaintiff may believe adds "color" to his story, particularly on issues that are not triable either because of the parties' agreement or because of this Court's rulings.

In this case, Plaintiff's only purpose in soliciting an opinion from Dr. MacIntosh on the issue of potency of C8 is to mislead the jury into believing that C8 is extremely toxic at the *Leach* class membership exposure level of 0.05 ppb (a level that is below the safe level determined in 2016 by the United States EPA).  Any such testimony is factually inaccurate.  Such misleading evidence has no probative value, and merely serves to unfairly stoke the emotions of the jury.  Federal Rule of Evidence 403 bars this type of irrelevant, inaccurate, and unfairly prejudicial testimony.

Further, Dr. Bahnson's opinions regarding the alleged magnitude of Plaintiff's exposure to C8 and the quality of the Science Panel's work is irrelevant to this litigation under DMO 1 and DMO 1-A.  Because the only effect of this testimony also would be to mislead the jury and unfairly prejudice DuPont, the opinions should be excluded under Federal Rule of Evidence 403.

### III.   The Testimony of Drs. MacIntosh and Bahnson Opens the Door.

If the Court does not exclude the testimony and comments referenced above, and permits Drs. MacIntosh and Bahnson to bolster the Science Panel's work, DuPont should be permitted to rebut this misleading and false testimony through evidence of the Science Panel's actual work and findings.  *See, e.g.*, Sept. 21, 2015 Trial Tr. [*Bartlett* ECF No. 127] at 53:11-14 ("[W]e're not going to have an attack taking place on the findings. That's if you're bolstering it, it's going to open up an attack is my concern."); *cf.* Evidentiary Motions Order No.1-A [ECF No. 4226]

("EMO 1-A") at 9 ("Mrs. Bartlett is cautioned not to cross Dr. Cohen in a way that would revive his challenges to the Science Panel Findings."); *United States v. Segines*, 17 F.3d 347, 856 (6th Cir. 1994) ("When one party has 'opened the door' on an issue, by eliciting prejudicial or inadmissible testimony, an opponent, in the court's discretion [may] introduce evidence on the same issue to rebut any false impression that may have resulted from the earlier admission.").

Thus, if Dr. MacIntosh is permitted to offer opinions regarding the alleged potency of C8, DuPont should be allowed to introduce evidence that properly characterizes the 0.05 ppb Class Membership exposure threshold, and the lack of any findings that exposure to C8 at 0.05 ppb for a year causes cancer or other disease. If DuPont is restricted from doing so, the jury will be left with a misleading and false impression of the 0.05 ppb threshold. Similarly, if Dr. Bahnson is permitted to offer his opinions about the magnitude of Plaintiff's exposure to C8 and the quality of the Science Panel's work, DuPont should be allowed to introduce evidence that properly characterizes the Science Panel's work and findings. If it is restricted from doing so, the jury will be fundamentally misled concerning the true work of the Science Panel. Fundamental fairness requires that, if Drs. MacIntosh and Bahnson are permitted to so testify, DuPont should be permitted to introduce evidence regarding the Science Panel's actual work and analysis so that the jury is not misled, and DuPont is not unfairly prejudiced.

## CONCLUSION

For all of these reasons, and in the interests of justice, this Court should preclude Dr. MacIntosh from offering any opinion on the alleged potency of C8 and it should preclude Dr. Bahnson from offering any opinion on the alleged magnitude of Plaintiff's C8 exposure and/or the alleged quality of the Science Panel's work. If the Court does permit these experts to offer such testimony, DuPont should be permitted to rebut this improper bolstering of the Science Panel's work by introducing evidence of the Science Panel's actual work and analysis.

Respectfully submitted:

*s/ Damond R. Mace*
Damond R. Mace (0017102) (Trial Attorney)
Stephen M. Fazio (0076873)
Stephanie E. Niehaus (0075511)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
(216) 479-8500 (Phone)
(216) 479-8780 (Fax)

C. Craig Woods (0010732)
Aaron T. Brogdon (0081858)
John R. Gall (0011813)
Aneca E. Lasley (0072366)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-2700 (Phone)
(614) 365-2499 (Fax)

D. Patrick Long (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2000 McKinney Ave, Suite 1700
Dallas, TX 75201
(214) 758-1500 (Phone)
(214) 758-1550 (Fax)

Attorneys for Defendant E. I. du Pont de Nemours and Company

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on this 10th day of October 2016 and accordingly served automatically upon all counsel of record for this matter.

*s/ Damond R. Mace*
Damond R. Mace (0017102)