UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E.I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION

                                                    Case No. 2:13-md-2433
                                                    JUDGE EDMUND A. SARGUS, JR.
                                                    Magistrate Judge Elizabeth P. Deavers

This document relates to:

*Larry Ogle Moody v. E. I. du Pont de Nemours and Company*, Case No. 2:15-cv-803

### DISPOSITIVE MOTIONS ORDER NO. 27

### Defendant's Motion for Summary Judgment Related to Cancerphobia Damages and Fear of Developing Other Probable Link Diseases

This matter is before the Court on on Defendant's Motion for Summary Judgment on the Cancerphobia Portion of Negligence Damages and on Fear of Developing Other Probable Link Diseases (ECF No. 4788), Plaintiff's Memorandum in Opposition to Defendant's Motion (ECF No. 4816), and Defendant's Reply in Support of its Motion (ECF No. 4842). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

I.

Plaintiff Larry Ogle Moody's trial is scheduled to begin January 17, 2017, and is the second non-bellwether trial of the over 3500 cases filed against Defendant E. I. du Pont de Nemours and Company's ("DuPont") that make up this multidistrict litigation ("MDL"). The Judicial Panel on Multidistrict Litigation describes the cases in its Transfer Order as follows:

> All the actions are personal injury or wrongful death actions arising out of plaintiffs' alleged ingestion of drinking water contaminated with a chemical, C-8

> (also known as perfluorooctoanoic acid (PFOA) or ammonium perfluorooctanoate (APFO)), discharged from DuPont's Washington Works Plant near Parkersburg, West Virginia. All of the plaintiffs in this litigation allege that they suffer or suffered from one or more of six diseases identified as potentially linked to C-8 exposure by a study conducted as part of a 2005 settlement between DuPont and a class of approximately 80,000 persons residing in six water districts allegedly contaminated by C-8 from the Washington Works Plant. *See Leach v. E. I. Du Pont de Nemours & Co.*, No. 01-C-608 (W. Va. Cir. Ct. [(Wood County Aug. 31, 2001)]).

(Transfer Order at 1, ECF No. 1.) DuPont utilized C-8 as a manufacturing aid in the production of Teflon$^{TM}$.

The trials in this MDL began with two bellwether cases that commenced on September 2015 and May 2016, respectively. The first was chosen by DuPont; a kidney cancer case brought by Carla Marie Bartlett (Case No. 2:13-cv-170). The plaintiffs chose the second case, which was filed by David Freeman, who suffered from testicular cancer (Case No. 2:13-1103). Both of the bellwether cases resulted in verdicts in favor of the plaintiffs. On November 14, 2016, the first non-bellwether case was tried. That case was brought by Kenneth Vigneron, Sr. (Case No. 2:13-cv-136), and also resulted in a plaintiff's verdict.

This Court has addressed all of DuPont's arguments regarding cancerphobia damages and fear of developing other probable link diseases in Dispositive Motions Order No. ("DMO") 20, which was a decision directed at DuPont's motion filed in Mr. Vigneron's case. (ECF No. 4809.) In DMO 20, the Court reviewed all of its prior decisions on this issue and granted DuPont's motion with regard to its request to exclude alleged mental anxiety damages related to fear of developing undiagnosed Probable Link diseases, and denied the remainder of the motion. In the parties' current briefing, the Court finds no reason to depart from its prior rulings with regard to Mr. Moody's fear of developing undiagnosed Probable Link Diseases, and therefore, **GRANTS** DuPont's Motion as it relates to that issue.

The Court below addresses Mr. Moody's remaining allegations related to the fear of developing another cancer as the result of his testicular cancer and/or his fear of developing cancer and/or peripheral neuropathy as the result of his chemotherapy and radiographic imaging regimen.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence

3

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

As explained in detail in DMO 20, Mr. Moody is required to show that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress." *Lavelle v. Owens–Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 11, 15 (1987)). This means that Mr. Moody must show that he was *aware* that he in fact possesses an increased statistical likelihood of developing cancer. Mr. Moody presented sufficient evidence for a jury to conclude that he met his burden.

Mr. Moody testified at his deposition that, as a result of his exposure to C-8 and his cancer diagnosis, he is aware that there is a likelihood that the cancer will return and because of this likelihood, he is in constant fear. For example:

> Q. . . . you maintained that you live – I'm quoting – in constant fear of another cancer relapse. Do you have any recollection of answering –
>
> A. Yes, ma'am. You know, cancer is cancer and, you know, just on an average, if you've ever had cancer, then the risk is a lot higher that you'll wind up with it again before you die.

(June 28, 2016, Pl.'s Dep. Tr., at 153–54, ECF No. 4772-1.)

> Q. Other than this fear that you mention in your Answers to Interrogatories of a possible relapse of the cancer, is there any other fear that you suffer from since your surgery or since your diagnosis?
>
> A. The other one I do, the Platinal, the type of chemo that I took, they know a lot about it, but they don't know everything, you know, as far as any long-term effects. I guess we'll wait and see. They didn't really have any specific answers for me. I mean, I thank God for it because it did what it was supposed to do and I'm alive to say that, you know, but -- so I fear that. . . .

4

*Id.* at 161–62.

> Q. Do you feel that your quality of life has changed since your diagnosis of testicular cancer?
>
> A. Yes, ma'am.
>
> Q. Tell me how.
>
> A. Well, for one, you live with the fear of any kind of cancer coming back on you.
> . . .

*Id.* at 168.

Regarding an increased risk, Mr. Moody's expert, Robert R. Bahnson, M.D., F.A.C.S., stated in his expert report that Mr. Moody is at an increased statistical likelihood of developing cancer. After a physical examination of Mr. Moody and a thorough review of Mr. Moody's medical records and the relevant medical literature, Dr. Bahnson concluded:

> As a result of his testicular cancer, Mr. Moody is at an increased risk for the development of testicular cancer in his remaining testicle, other cancers, and additionally, he will continue to need physical examinations, imaging studies and laboratory tests through his life to ensure that his cancer remains in remission.
>
> As a result of his exposure to C8, there is a further increased statistical likelihood of recurrence of his testicular cancer in his remaining left testicle . . . .
>
> I find to a reasonable degree of medical certainty that Larry Moody's exposure to C8 in his drinking water was a substantial contributing factor in bringing about the development of his testicular cancer. Further, his cancer in the right testis now puts him at increased risk for developing cancer in the left testis. His treatment with multi-agent chemotherapy places him at an increased risk of a second malignancy and peripheral neuropathy. Additionally, because Mr. Moody underwent frequent repeated CT scanning as part of his 3 years of radiological observation, his risk for developing other cancers has also increased.

(Bahnson Expert Rep. at 4–5, 12, ECF No. 4774-1.)

Dr. Bahnson also testified at his deposition that Mr. Moody has an increased statistical likelihood of developing cancer, stating that "[m]en who have testicular cancer who get

5

chemotherapy are at an increased risk of a second malignancy, which is why I tell them that they should be followed annually for the rest of their lives." (Oct. 10, 2016, Bahnson Dep. Tr., at 80, ECF No. 4772-4.) He further averred:

> Q. Anything other than leukemia that you're concerned about with someone who has undergone the treatment that Mr.Moody has undergone?
>
> A. Yeah. One of the biggest risk factors for testicular cancer is having had a testicular cancer, and so I would urge him to have somebody examine -- some qualified person examine his testicle every year. He certainly is at risk for a testis cancer in the opposite testicle, and his exposure to PFOA also places him at increased risk for testicular cancer.
>
> Q. And that might appear at any time the rest of his life?
>
> A. Yes.

*Id.* at 83.

Additionally, Mr. Moody has presented sufficient evidence for a jury to conclude that he has developed a reasonable apprehension manifesting in mental distress as a result of his awareness of his increased risk of cancer recurrence. For example, Mr. Moody testified that he suffered emotional distress from the mental anguish caused by his cancer, and that he is constant fear of his cancer returning. (June 28, 2016, Pl.'s Dep. Tr., at 182, 153–54, ECF No. 4772-1.) And, Dr. Bahnson confirms the reasonableness of Mr. Moody's apprehension of cancer risk from a scientific standpoint with his opinion that Mr. Moody's has an increased statistical likelihood of developing testicular cancer again, as well as other cancers, for the remainder of his life as a result of his prior cancer diagnosis and due to his extensive C-8 exposure. (Bahnson Rep. at 4–5, ECF No. 4774-1.)

The Court finds that the foregoing evidence constitutes specific facts showing that there is a genuine issue for trial with regard to whether Mr. Moody has shown that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this

6

knowledge springs a reasonable apprehension which manifests itself in mental distress. Consequently, the Court **DENIES** DuPont's Motion as it relates to this issue.

## IV.

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment on the Cancerphobia Portion of Damages and Fear of Developing Other Probable Link Diseases. (ECF No. 4788.) Specifically, DuPont's motion is **GRANTED** with regard to its request to exclude alleged mental anxiety damages related to fear of developing undiagnosed Probable Link diseases, and the motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

1-10-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**