UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

        Civil Action 2:13-md-2433
        CHIEF JUDGE EDMUND A. SARGUS, JR.
        Magistrate Judge Elizabeth P. Deavers

This document relates to: ALL POST-SETTLEMENT CASES

## DISPOSITIVE MOTIONS ORDER NO. 30

### Inapplicability of the Ohio Tort Reform Act to Post-Settlement Cases

This matter is before the Court on *Plaintiffs' Motion for Clarification Regarding the Inapplicability of the Ohio Tort Reform Act to Plaintiffs' Claims* (ECF No. 5204), *Defendants' Memorandum in Opposition* (ECF No. 5210), and *Plaintiffs' Reply Brief* (ECF No. 5218). In accordance with this Opinion and Order, the Court **GRANTS IN PART** Plaintiffs' Motion.

I.

On April 9, 2013, the Judicial Panel on Multidistrict Litigation ("JPML") centralized before this Court the cases that make up this multidistrict litigation ("MDL"), all of which are a subset of cases that originated in *Leach v. E. I. Du Pont de Nemours & Co.*, No. 01-C-608 (W. Va. Cir. Ct. Wood County Aug. 31, 2001) ("*Leach* Case"). The *Leach* Case was brought by a group of approximately 80,000 individuals ("*Leach* Class") who alleged a variety of claims related to DuPont's contamination of their drinking water with the chemical C-8, which is a synthetic perfluorinated carboxylic acid and fluorosurfactant also known as perfluorooctanoic

acid or ammonium perfluorooctanoate. For decades DuPont discharged C-8 into the water surrounding its Washington Works Plant near Parkersburg, West Virginia.

The *Leach* Class consisted of those individuals who for at least one year prior to December 4, 2004, had "consumed drinking water containing .05 ppb or greater of C-8 attributable to releases from Washington Works." (Class Notice at 1–2; ECF No. 820-11; Settlement Agreement § 2.1.1, ECF No. 820-8.) The *Leach* Case settled with the parties executing a contractual agreement, the *Leach* Settlement Agreement, wherein the parties fashioned a procedure to determine whether the *Leach* Class would be permitted to file actions against DuPont based on any of the human diseases they believed had been caused by their exposure to C-8 discharged from DuPont's Washington Works plant. The procedure established a Science Panel to study human disease among the *Leach* Class.

In 2012, the Science Panel delivered Probable Link Findings for six human diseases ("Linked Diseases"), which means that for that *Leach* Class member it is more likely than not that there is a link between his or her exposure to C-8 (*i.e.*, drinking water containing at least .05 ppb of C-8 for at least one year prior to December 4, 2004) and his or her Linked Disease. The Science Panel delivered No Probable Link Findings for the remaining 40-plus diseases the *Leach* Class believed were caused by their ingestion of the C-8 discharged by DuPont. The members of the *Leach* Class who received a No Probable Link Finding were prohibited from filing a personal injury action against DuPont as a result of the *Leach* Settlement Agreement, regardless of whether any other study or expert disagreed with the Science Panel.

Out of the 80,000-member *Leach* Class, only 3,542 individuals alleged that they suffered from a Linked Disease. In the *Leach* Settlement Agreement, DuPont contractually agreed as to any Linked Disease it would not contest whether C-8 is *capable of causing* the disease in that

2

particular class member (general causation). DuPont retained the right to contest whether C-8 *actually caused* the Linked Disease in that particular class member (specific causation).

For the next three years, the Court managed this MDL including trying to verdict three cases. On February 14, 2017, in the middle of the fourth month-long trial, the parties informed the Court that they had reached in principle a global settlement of the remaining 3,500-plus cases ("Pre-Settlement Cases"). Since the global settlement, nearly 50 additional cases have been filed by members of the *Leach* Class who all have alleged either kidney or testicular cancer, two Linked Diseases. ("Post-Settlement Cases").

Once the Post-Settlement Cases began to be filed, DuPont moved the JPML "to vacate [its] orders that conditionally transferred" these actions "for inclusion in MDL No. 2433." (First Post-Settlement Cases Transfer Order, ECF No. 5130.) The JPML denied DuPont's request and indicated that these Post-Settlement Cases would be centralized in MDL No. 2433 that is pending before this Court. The Post-Settlement Cases were then centralized in this MDL by way of conditional transfer orders from the JPML or via direct filing and this Court's Local Rules on related cases pursuant to Pretrial Order No. 1. (ECF Nos. 2, 5130, 5199, 5203.)

The parties now direct their motions to the Post-Settlement Cases, which are all a part of this MDL. The first Post-Settlement Case selected for trial is a DuPont choice, *Angela and Teddy Swartz v. E. I. du Pont de Nemours and Company, et al.*, Case No. 2:18-cv-00136, which will be tried on October 21, 2019. (Case Management Order No. 26, Swartz Pretrial and Trial Schedule, ECF No. 5185.) In that case, DuPont has filed a *Motion to Apply the Ohio Tort Reform Act, or in the Alternative, for Certification to the Ohio Supreme Court.* (*Swartz* Docket, ECF No. 24.) The Court will issue a separate decision on that motion. However, the Court will consider both parties' briefings filed on that motion and those filed in *Plaintiffs Motion for*

*Clarification Regarding the Inapplicability of the Ohio Tort Reform Act to Plaintiffs' Claims* because both are directed at the same issue.

## II.

Under the Ohio Tort Reform Act of 2004, effective April 7, 2005, the Ohio Revised Code was amended to, *inter alia*, cap the amount of noneconomic damages recoverable in tort actions and to cap the amount of punitive damages. Ohio Rev. Code §§ 2315.1–21. Plaintiffs move this Court to clarify that it will apply its previous decisions regarding the Ohio Tort Reform Act, an issue that this Court has considered several times during the pendency of this MDL, and that DuPont appealed to the United States Court of Appeals for the Sixth Circuit.[1] (*See* Dispositive Motions Order Nos. ("DMO") 10, Order on Application of Ohio Tort Reform Act, ECF No. 4215; DMO 12, Order on Defendant's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial and Remittitur, ECF No. 4306; DMO 18, Order on DuPont's Motion for an Order to Apply Ohio Tort Reform Act, ECF No. 4597; DMO 23, Order on DuPont's Motion for an Order to Apply Ohio Tort Reform Act, ECF No. 4931; DMO 29, Order on DuPont's Motion for an Order to Apply Ohio Tort Reform Act, ECF No. 5007.)

In *Plaintiffs Motion for Clarification Regarding the Inapplicability of the Ohio Tort Reform Act to Plaintiffs' Claims,* Plaintiffs ask this Court to rule consistently with the prior decisions. The Court indeed intends to stay consistent with its prior decisions, and therefore **GRANTS** Plaintiffs' request.

In addition to the parties' arguments the Court addressed in the prior decisions, the parties highlight other issues such as, for example, the impact of the *Leach* Settlement

---

[1] The parties entered into global settlement negotiations and DuPont withdrew the appeal that had been pending for over one year before the Sixth Circuit issued its decision.

4

Agreement on whether the Ohio Tort Reform Act may be applied to any Post-Settlement Case. However, a decision indicating anything other than the Court intends to stay consistent with its prior decisions on this issue is premature since the issues may never need to be addressed. That is, if a jury finds in favor of Defendants, or a jury finds in favor of a plaintiff but awards damages under the amount of the Tort Reform cap, this issue will be rendered moot. Thus, the Court declines at this time to opine on any additional clarifications.

### III.

For the reasons set forth above, and in accordance with this Opinion and Order, the Court **GRANTS IN PART** *Plaintiffs' Motion for Clarification Regarding the Inapplicability of the Ohio Tort Reform Act to Plaintiffs' Claims*. (ECF No. 5204.)

**IT IS SO ORDERED.**

6-17-2019
**DATE**

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE