UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE NEMOURS
AND COMPANY C-8 PERSONAL
INJURY LITIGATION

Case No. 2:13-md-2433
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth A. Preston Deavers

**This document relates to:**
*Joseph and Donna Hall v. E. I. du Pont de Nemours and Co.*, Case No. 2:23-cv-869
*Ian and Heather Lynn v. E. I. du Pont de Nemours and Co.*, Case No. 1:22-cv-751

## DISPOSITIVE MOTIONS ORDER

**Plaintiffs' Motion for Partial Summary Judgment under Rule 56 or for Determination of Issues under Rule 16(c) (Case No. 2:13-md-2433, ECF No. 5487)**

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment under Rule 56 or Determination of Issues under Rule 16(c). (Case No. 2:13-md-2433, Mot., ECF No. 5487.)[1] Defendant E.I. Du Pont de Nemours and Company ("DuPont") opposes (Resp., ECF No. 5491) and Plaintiffs filed a reply (Reply, ECF No. 5493). For the reasons stated on the record at the hearing on Plaintiffs' Motion and below, the Motion is **DENIED**.

I.  **BACKGROUND**

A dispute related to the latency issue arose during the deposition of Plaintiffs' specific causation expert, Dr. Kamal Pohar. At that deposition, Plaintiffs' counsel instructed Dr. Pohar "not to answer" certain question related to latency. (*See* ECF Nos. 5470, 5472, 5491.) The parties made the Court aware of the dispute during the March 11, 2024 status conference, and the Court

---

[1] Although Plaintiffs' Motion was filed on the main MDL docket, this Order applies only in the *Hall* and *Lynn* cases. The Court made the scope of its ruling on the latency issue clear during a status conference. (PTO 70, ECF No. 5490.) Because the briefing on Plaintiffs' Motion has been filed on the main MDL docket, all citations are to that docket unless otherwise noted.

ordered the parties to file five-page briefs on the pending objections. (PTO No. 67, ECF No. 5466; ECF Nos. 5470, 5472.) After reviewing those briefs, the Court observed at the April 23, 2024 status conference that latency was a central issue in the parties' dispute, and the parties agreed. (PTO No. 69, ECF No. 5477.) The Court made clear that it did not want to decide this central issue in the context of deposition objections. (*Id.*) As a result, the Court ordered the parties to meet and confer as to a proposal for efficiently and effectively putting the issue of latency in front of the Court. (*Id.*)

The parties offered a stipulated order on latency briefing, proposing each side be permitted to file "a brief addressing latency," 15 pages in length. (ECF No. 5485.) Response briefs were limited to five pages and no replies were permitted. (*Id.*) This Court entered that stipulated order. (*Id.*)

When the opening briefs were filed on May 13, 2024, Plaintiffs filed a "Motion for Partial Summary Judgment under Rule 56 or for Determination of Issues under Rule 16(c)," rather than a brief. (Mot.) At the May 24, 2024 status conference, DuPont explained that when the parties had met and conferred, they discussed briefs, not a partial summary judgment motion. (PTO No. 70, ECF No. 5490.) To remedy the situation, the Court allowed DuPont to oppose the partial summary judgment motion, gave it an extra week to do so, and no page limit. (*Id.*) Plaintiffs could reply in support of their Motion. (*Id.*)

This matter became ripe on June 18, 2024 (*see* Reply), and this Court held a hearing on the Motion on July 9, 2024 (ECF No. 5495). Plaintiffs ask the Court to issue an Order granting partial summary judgment under Federal Rule of Civil Procedure 56 or under Federal Rule of Civil Procedure 16(c) "clarifying the status of such latency matters." (Mot. PageID 133084–85.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### B. Rule 16(c)

Federal Rule of Civil Procedure 16(c)(2)(D) provides that "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: . . . avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702."

### III. ANALYSIS

***The Parties' Positions on the Latency Issue.*** Plaintiffs argue that latency is an issue of general causation. They contend that the "issue of general causation related to C-8 and the Science Panel's probable link diseases is settled" and that DuPont is strategically using latency in "an assault" on this Court's previous rulings. (Mot. PageID 133086.) Plaintiffs assert that DuPont is "trying to peel back and subvert the Science Panel's Probable Link conclusion regarding General Causation" by "question[ing] Plaintiffs' specific causation medical experts as to the science behind C-8 exposure and any perceived latency before an individual Probable Link cancer was diagnosed" or "having its own experts use the same latency argument as a basis to contest C-8 Specific Causation." (*Id.* PageID 133088.)

Plaintiffs challenge DuPont's questioning of Plaintiffs' experts about C-8 half life, how long before C-8 would be at background level in each Plaintiff, and what the C-8 level would have been at various times. (*Id.* PageID 133088–89.) They acknowledge there might be a situation where DuPont's line of questioning is relevant for trial, but Plaintiffs assert that DuPont cannot ask about latency to exclude C-8 as a causative agent for a class member if he or she meets the *Leach* class member requirement. (*Id.* PageID 133089.) That attacks general causation, say Plaintiffs. (*Id.*) Plaintiffs also argue DuPont's latency arguments seek to insert evidence that is irrelevant and inadmissible at trial and should be barred under Federal Rules of Evidence 401, 402, and 403. (*Id.* PageID 133094.)

In its opening brief, DuPont asks the Court to reopen the deposition of Plaintiffs' expert Dr. Pohar and issue an opinion that "cancer latency periods and half-life, is a specific causation issue that can be explored." (DuPont Br., ECF No. 5488, PageID 133157.) DuPont argues that the importance of temporality is not new to this MDL, and that the Court has ruled that temporality is a matter of specific causation within the purview of expert testimony. (*Id.*, citing

4

EMO 28, ECF No. 5294.) That is:

> Temporality and therefore cancer latency are key factors to consider in a differential diagnosis, which is a commonly accepted process of determining specific causation. . . . The chronological relationship between exposure and the manifestation of a disease is a vital—and unavoidable—piece of information in conducting this analysis. Plaintiffs' specific causation expert must explain his methodology in forming his opinion, and his opinions (or lack thereof) regarding latency play a key role in determining the admissibility of his testimony.

(*Id.,* PageID 133145.)

DuPont highlights that Mr. Hall and Mr. Lynn are the first trial plaintiffs to receive their initial testicular cancer diagnoses over fifteen years after their respective C-8 exposures. (*Id.*) DuPont refers to Plaintiffs' focus on the Science Panel's report as a "red herring"; it is not arguing "whether after a certain lag time if C-8 can *generally* cause cancer," but DuPont is examining whether C-8 is the *most likely* cause of Plaintiffs' cancers. (*Id.* PageID 133153.) It asserts temporality is important to determining whether C-8 was the most likely cause of Mr. Hall's and Mr. Lynn's cancers that didn't form until at least 2021–22, when their C-8 exposure ended in 2005. (*Id.* Paged 133154.) It also argues that failure to properly consider latency can, and in many cases, should, render a specific causation expert's opinion unreliable and inadmissible. (*Id.* PageID 133151–52.)

DuPont's opposition brief to the Motion largely repeats the arguments in its opening brief. (Resp., ECF No. 5491.) In footnote 2 DuPont states:

> Whether C-8 actually caused Plaintiffs' cancer (specific causation) is a different issue than whether a class member's exposure to C-8 in their drinking water was capable of causing their cancer (general causation). Defendant acknowledges that in this MDL, it may not contest this latter point. But Defendant is entitled to offer evidence regarding temporality, including latency, that this Court, the Federal Judicial Center, courts around the country, and other authorities around the country have consistently and repeatedly stated are issues of specific causation.

(*Id.* PageID 133200 n.2.) DuPont counters Plaintiffs' Rule 403 arguments, asserting the "opportunity for an opposing party to discover whether a proffered witness has failed to apply a

5

reliable methodology is not and cannot be unfairly prejudicial; indeed, it is required by Fed. R. Evid. 702." (*Id*. PageID 133216.) DuPont argues that any prejudice would be outweighed by the probative value of the cross-examination. (*Id*.)

On Reply, Plaintiffs accuse DuPont of "contractual revisionism," arguing that DuPont is trying to "insert latency as an additional *Leach* qualifying term to limit the Science Panel Findings." (Reply, ECF No. 5493, PageID 133246.) Plaintiffs argue that DuPont cannot challenge specific causation by using latency to exclude C-8 as a specific cause of their cancer because of the *Leach* Class Action Settlement Agreement ("Settlement Agreement"). (*Id*. PageID 133248; *see* S.A., ECF No. 2813-1.)

At the hearing, Plaintiffs' counsel reiterated its above arguments. While counsel seemed to concede that temporality was important and that Plaintiffs must "prove up" gestation, they objected to DuPont's probe into blood serum levels, drop in those levels, and reduction of risk of C8 causing Plaintiffs' cancer. DuPont countered that it acknowledges and will not contest general causation, that is, whether a class member's exposure to C-8 in their drinking water could have caused their cancer. But it is entitled, DuPont urged, to offer evidence about temporality—including latency—as to whether C-8 caused Plaintiffs' cancer (specific causation). (ECF No. 5495.)

***Relevant Terminology.*** Prior to elaborating on the Court's ruling from the bench during the latency hearing, some important terms: under the Settlement Agreement, "General Causation" means "that it is probable that exposure to C-8 is capable of causing a particular Human Disease." (S.A. § 1.25.) "Specific Causation" means "that it is probable that exposure to C-8 caused a particular Human Disease in a specific individual." (*Id*. § 1.60.) And "Probable Link" means "that based upon the weight of the available scientific evidence, it is more likely

6

than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members." (*Id.* § 1.49.)

DuPont agreed in the Settlement Agreement that "[u]pon delivery of any Probable Link Finding," in a personal injury or wrongful death action by a *Leach* class member, it would "not contest the issue of General Causation between C-8 and any Human Disease(s) as to which a Probable Link Finding has been delivered, but reserve[d] the right to contest Specific Causation and damages as to any individual Class Member or plaintiff and to assert any other defense not barred by" the Settlement Agreement. (*Id.* § 3.3.)

Cancer latency means "the time that passes between exposure to a known or possible carcinogen and the manifestation of the cancer, [and] is an aspect of temporality." (DuPont Br. PageID 133144, citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 178 (6th Cir. 2009)); *see* Specific causation—Latency Periods, 3 Mod. Sci. Evidence § 28:31 (2023–2024 Edition) ("The latency period for a disease caused by an environmental chemical is usually defined as the period from the initiation of exposure to the diagnosis of disease."); National Institutes of Health, National Cancer Institute, Dictionary of Cancer Terms, *Latency Period*, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/latency-period (last visited July 15, 2024) (defining a latency period as "[t]he time that passes between being exposed to something that can cause disease (such as radiation or a virus) and having symptoms").

**The Court's Ruling.** With that background, as the Court explained on the record during the hearing, as long as DuPont does not use evidence of latency to undercut general causation, and instead, uses it to attack specific causation, that latency evidence may be admissible.

The Sixth Circuit has recognized differential diagnosis as an "appropriate method for making a determination of causation for an individual instance of disease." *Pluck v. BP Oil*

7

*Pipeline Co.*, 640 F.3d 671, 678 (6th Cir. 2011) (citing *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)); *see also Best*, 563 F.3d at 178 (stating that a causation opinion based on a reliable differential diagnosis may satisfy the requirements of Rule 702). Differential diagnosis is "a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Hardyman,* 243 F.3d at 260 (internal quotation marks omitted); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 931 (6th Cir. 2022), *cert. denied sub nom. E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16, 217 L. Ed. 2d 229 (2023) ("*Abbott*") (differential diagnosis method requires the physician to "consider[ ] all relevant potential causes of the symptoms and then eliminate[ ] alternative causes based on a physical examination, clinical tests, and a thorough case study"); (*see also* EMO 28, PageID 128758 (same).)

So differential diagnosis is used to assess specific causation. Temporality is part of a differential diagnosis. *See Best*, 563 F.3d at 178. As this Court stated in *Swartz, et al. v. E. I. du Pont de Nemours and Co.*, Case No. 2:18-cv-00136*,* "experts may offer compelling arguments as to temporality, genetics, or other factors . . . to demonstrate another specific cause of the cancer." (EMO 28, ECF No. 5294, PageID 128758 (cleaned up)). Latency (an aspect of temporality) is also a relevant piece of information when conducting a differential diagnosis. (*See* Resp. PageID 133200.)

As DuPont represents, an expert opining on specific causation who is conducting a differential diagnosis must explain his or her methodology, and that explanation may include his

or her opinion on latency in the context of a specific plaintiff's cancer case.[2] (*See id.*) While DuPont may offer evidence about latency in the context of differential diagnosis to determine specific causation, it may not use that same latency evidence to argue that it is improbable that the exposure to C-8 is capable of causing testicular cancer (because that would be a breach the Settlement Agreement). The Court recognizes this can be a difficult balance to strike. For example, an expert cannot delve into the Science Panel's epidemiological study to try to undermine it (*see* EMO 28, PageID 128755) or opine that the Probable Link Finding does not apply to a plaintiff who is a *Leach* class member (*id.*).

The Sixth Circuit explained this Court's approach in *Abbott* as to dose-response relationship, and the Court will take a similar approach in *Hall* and *Lynn* as to latency:

> DuPont's argument that the district court prohibited "*all*" expert testimony and evidence on the dose-response relationship is incorrect. The court allowed opinions on dose-response data when that evidence was consistent with the *Leach* Agreement and the rules of evidence. The court's limitations on expert testimony targeted testimony that would have suggested Travis Abbott's exposure was too low to cause his cancer, evidence that violated the *Leach* Agreement. When such issues were not present, the district court allowed DuPont to reference Abbott's C-8 dose during the trial.

*Abbott*, 54 F.4th at 931. Of course, evidence can be admissible for one purpose and not another. Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a

---

[2] As the Sixth Circuit explained in *Abbott*, it would not be an error, however, for an expert to rule in C-8 as a potential causal factor because he or she relied on the Science Panel's determination that C-8 exposure was a probable cause for a class member's linked disease. 54 F.4th at 931–32. That is what Dr. Pohar did in *Abbott*, and the Sixth Circuit rejected DuPont's argument that this Court should have excluded the Abbott Plaintiffs' specific causation expert because his testimony did not consider the Science Panel's dose finding or Travis Abbott's specific dose when using the differential diagnosis methodology. *Id.* The Court of Appeals explained that both parties were bound under the plain terms of the Settlement Agreement to that Science Panel determination. *Id.* That is a different scenario than the one the Court contemplates here—that an expert *may* consider latency information in connection with its differential diagnosis analogy to determine specific causation.

purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

Mr. Hall and Mr. Lynn are the first trial plaintiffs to receive their initial testicular cancer diagnoses over 15 years after their exposure to C-8 ended in 2005, and so the facts of their cases are distinct from previous bellwether plaintiffs in this MDL. Consider an extreme hypothetical: a plaintiff before age 18 drank water contaminated with C-8 attributable to release from DuPont's Washington Works plant for at least one year (so, a *Leach* class member) and developed testicular cancer at age 70. Plaintiffs seem to take the position that even then, DuPont would be barred from delving into issues about that plaintiff's cancer latency because that explanation would attack general causation. The Court declines to take such an expansive view of the Settlement Agreement and the Science Panel's Probable Link Evaluation of Cancer report. (*See* S.A.; ECF No. 5470-2.) As long as DuPont or an expert rules in C-8 as a potential casual factor—in accordance with the Science Panel's determination that C-8 exposure was a probable cause for a class member's linked disease (here, testicular cancer)—it, he, or she can offer evidence and opinions on temporality and latency to demonstrate an alternative specific cause of that class member's cancer.

## IV. CONCLUSION

For the reasons stated above and on the record at the hearing, Plaintiffs' Motion for Partial Summary Judgment under Rule 56 or Determination of Issues Rule16(c) (ECF No. 5487) is **DENIED**.

If it so chooses, DuPont may reopen discovery until **July 31, 2024** for the limited purpose of deposing Dr. Pohar *only* as to issues of latency and temporality consistent with this Dispositive Motions Order. The parties may not, however, file additional motions or papers

10

related to Dr. Pohar.

The Clerk is directed to file this Dispositive Motions Order on the main MDL docket, Case No. 2:13-md-2433, the *Hall* docket, Case No. 2:23-cv-869, and the *Lynn* docket, Case No. 1:22-cv-751. While this Order is being filed on the main MDL docket because Plaintiffs' Motion was filed on that docket, the Court's ruling only applies in the *Hall* and *Lynn* cases.

**IT IS SO ORDERED.**

**7/18/2024**                                          **s/Edmund A. Sargus, Jr.**
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**