**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION | Case No. 2:13-md-2433<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Elizabeth P. Deavers |

This document relates to: **ALL ACTIONS**

**ORDER SUGGESTING DISSOLUTION OF MULTIDISTRICT LITIGATION PROCEEDING TO JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

Plaintiffs' Co-Lead Counsel move the Court to terminate the *In re: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation*, MDL No. 2433 ("C-8 MDL") and to vacate the duties and responsibilities assigned to Plaintiffs' Leadership Counsel. (ECF No. 5504.) Plaintiffs' Co-Lead Counsel represent that Defendant E. I. du Pont de Nemours and Company ("DuPont") consents to and does not oppose the Motion. (*Id.*)  The Court **GRANTS** the Motion (ECF No. 5504) and **SUGGESTS DISSOLUTION** of the C-8 MDL to the Judicial Panel for Multidistrict Litigation ("JPML").

**BACKGROUND**

"Throughout the last decade or so, this multidistrict litigation has generated more than ten thousand record entries, two appeals, and five month-long jury trials." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 935–36 (6th Cir. 2022) (Batchelder, J., concurring in part and dissenting in part) (also noting that "[t]he district court has done a commendable job").  This Court has issued over 30 case management order, 70 pretrial orders, 100 discovery orders, 40 dispositive motions orders, and 50 evidentiary (*Daubert*) motion orders,

and ruled on more than 150 motions *in limine*. The Court summarizes the history of this C-8 MDL including the *Leach* settlement agreement, the establishment of the MDL, cases tried, and global case settlements, and appeals, and provides its reasoning for recommending dissolution.

I.      **The *Leach* Settlement Agreement**

The C-8 MDL individual plaintiffs allege that they are members of a class certified in West Virginia state court in 2002. *Leach v. E.I. Du Pont de Nemours & Co.*, No. 01-C-608, 2002 WL 1270121, at *1 (W. Va. Cir. Ct. Apr. 10, 2002). The *Leach* class consists of approximately 80,000 residents of Ohio and West Virginia who drank water contaminated by the chemical C-8 released from DuPont's Washington Works facility near Parkersburg, West Virginia.[1] In 2005, the *Leach* class and Defendant DuPont reached the *Leach* Settlement Agreement. (Leach Settlement Agreement, ECF No. 820-8.)

Pursuant to the *Leach* Settlement Agreement, the parties fashioned a unique procedure to determine whether those 80,000 individual class members would be permitted to file action against DuPont based on any of the human diseases they believe had resulted from exposure to C-8. The procedure required DuPont and plaintiffs to jointly select three completely independent, mutually-agreeable, appropriately credentialed epidemiologists ("Science Panel") to study human disease among the residents exposed to C-8 by the discharges from DuPont's Washington Works plant. (Leach Settlement Agreement §§ 12.2.1, 12.2.2.) After seven years, the Science Panel delivered found a Probable Link between C-8 and six human diseases, including kidney cancer and testicular cancer. Under the *Leach* Settlement Agreement, DuPont agreed not to contest general causation

---

[1] A more comprehensive account of the history surrounding DuPont's discharges of C-8 is available in *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 916–21 (6th Cir. 2022), *cert. denied sub nom. E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16, 216 L. Ed. 2d 229 (2023).

in individual personal injury actions brought by *Leach* class members who suffered from a linked disease. After the Science Panel released its findings, *Leach* class members brought individual suits in federal court.

## II. The MDL Proceedings

DuPont moved the JPML for pretrial consolidation of the *Leach* class individual actions pursuant to 28 U.S.C. § 1407. (JPML Transfer Order, ECF No. 1.) On DuPont's motion, the JPML centralized the litigation before this Court nearly twelve years ago, on April 4, 2013. (*Id*.)

The parties reached global settlements in 2017, 2021, and 2024. The first settlement resolved over 3,500 cases. The second resolved approximately 100 cases. The last, reached the Friday before the first week of the third round of trials, resolved 73 cases. After the latest settlement, there are no pending unresolved cases.

While the path ultimately led to settlement, the Court presided over five lengthy trials and was prepared to provide every party with their right to a jury trial. (*See, e.g.*, CMO 20, ECF No. 4624, PageID 100953–54.) The Court first selected six cases to serve as bellwethers, and scheduled bellwether trials beginning in September 2015 and ending in November 2016. (*Id*. at PageID 100948–49.) Juries reached verdicts in two bellwether trials, in favor of Plaintiff Carla Bartlett in the first bellwether and Plaintiff David Freeman in the third bellwether. (PTO 51, ECF No. 5214, PageID 126065–66, 18.) The parties settled the other four bellwethers. (*Id*.)

The Court's priority then became holding trials in the non-bellwether cases. (CMO 20, ECF No. 4624, PageID 100955.) At that time, 3,552 were pending. (*Id*.) The alleged injuries of all the plaintiffs stemmed from DuPont's release of C-8 from its Washington Works plant, contaminating six water districts located in this District or in the Southern District of West Virginia. (PTO 47, ECF No. 4633, PageID 101014.) Because of this geography, all cases were

properly venued in one of these two districts. (*Id*. (citing 28 U.S.C. § 1391(b).) Unlike a traditional MDL that centralizes cases for pretrial proceedings and bellwether trials only, remand in this MDL would have resulted in most cases remaining before this Court. (*Id*.) Further, due to the Science Panel process built into the *Leach* agreement, fourteen years had passed since the claims were first filed, and the C-8 MDL had been pending before this Court for two years. (CMO 20, ECF No. 4624, PageID 100955.)

Accordingly, the Court planned to provide trials first to the most severely impacted plaintiffs, as the Court would in any other case. (CMO 20, ECF No. 4624, PageID 100962.) Judges from this District and neighboring districts volunteered to assist the undersigned to set 40 cases for trial each year. (PTO 42, ECF No. 4294; *see, e.g.*, CMO 21, ECF No. 4741, PageID 106985 (the first tranche of non-bellwether trials were scheduled before Judges Walter H. Rice, Susan J. Dlott, Algenon L. Marbley, David L. Bunning, Michael H. Watson, Jack Zouhary, John P. Bailey, Amul R. Thapar, and Timothy S. Black).)

The undersigned presided over the first non-bellwether trial. The jury returned a verdict for Plaintiff Kenneth Vigneron, including an award of punitive damages. (PTO 51, ECF No. 5214, PageID 126067.) During the fourth week of the second non-bellwether trial, the parties reached the first global settlement. (*Id*. at PageID 126068.)

Following the first global settlement, additional plaintiffs filed more than 100 new cases. (DMO 42, ECF No. 5375, PageID 132091.) These plaintiffs made the same allegations as the plaintiffs who were part of the global settlement. (PTO 51, ECF No. 5214, PageID 126069.) Over DuPont's opposition, the JPML concluded that these cases should be transferred to the C-8 MDL to serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. (*Id*. at PageID 126070; Transfer Order, MDL No. 2433 (J.P.M.L. Apr. 4, 2018),

ECF No. 488.) The Court set four cases for trial, selected by the parties. (CMO 28, ECF No. 5188, PageID 125604.) The Court indicated it would hold consolidated multi-plaintiff trials to ensure that all litigants could have their cases heard in a timely manner. (PTO 51, ECF No. 5214, PageID 126084–86; *see, e.g.*, PTO 52, ECF No. 5233, PageID 126435.)

The first second-round trial included Plaintiffs Travis and Julie Abbott and Angela and Teddy Swartz. (DMO 42, ECF No. 5375, PageID 132089.) The jury returned a verdict in favor of the Abbotts, but indicated that it was deadlocked on the Swartz's case. (*Id*. at 132099–100.) The Court postponed the next scheduled cases due to the COVID-19 pandemic. During the interim, the parties reached a second global settlement, resolving all pending cases except the Abbotts' case, which was on appeal to the Sixth Circuit.

After the second global settlement, new plaintiffs filed cases. Over DuPont's opposition, the JPML determined that these cases should be transferred to the C-8 MDL. Transfer Order, MDL No. 2433 (J.P.M.L. Dec. 13, 2022), ECF No. 585. The JPML noted that this Court would be in the best position to determine when the C-8 MDL should be dissolved. *Id*.

After the JPML's decision, the Sixth Circuit denied DuPont's appeal in *Abbott*. *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912 (6th Cir. 2022). The full Circuit declined *en banc* review. No. 21-3418, 2023 WL 2237929, at *1 (6th Cir. Feb. 1, 2023). DuPont filed a petition of certiorari to the Supreme Court, which the Supreme Court denied. *E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16, 216 L. Ed. 2d 229 (2023).

The Court began to set the first of the third-round cases for trial. To ensure that the litigants would have a timely opportunity to have their cases heard, other active judges in the Southern District of Ohio, including Chief Judge Sarah D. Morrison and Judges Algenon L. Marbley, Michael H. Watson, and Douglas R. Cole, each volunteered to preside over multi-plaintiff trials.

(*See, e.g.*, PTO 69, ECF No. 5484, PageID 133076.) The undersigned would preside over the first of the third-round trials, which included plaintiffs Joseph and Donna Hall and Ian and Heather Lynn. (*Id.*) Judge Watson volunteered to preside over the second trial, which included plaintiffs Martha Marks and Cathy Clark. (*Id.* at PageID 133077.)

The Friday before the first week of the first trial, the parties indicated that they had reached a third global settlement, resolving all known cases. Subsequently, with consent and without opposition from DuPont, Plaintiffs' Co-Lead Counsel brought this motion to terminate the MDL. (Mot., ECF No. 5504.)

### DISSOLUTION OF THE C-8 MDL

The Court finds that dissolution of the C-8 MDL is appropriate. To be a member of the *Leach* class (and therefore a potential plaintiff in the C-8 MDL), a plaintiff must have consumed water from one of the six water districts for at least one year prior to November 2004. (*See Leach* Settlement Agreement, ECF No. 820-8; Settlement Notice, ECF No. 820-11.) The volume of cases has decreased as the relevant period has receded in time—the first settlement resolved over 3,500 cases, the second approximately 100, and the latest 73. *Leach* class members may receive Probable Link disease diagnoses in the future, but the Court does not expect that the number of cases to reach numbers where centralization is necessary. Moreover, as discussed above, new cases will be properly venued in this District or in the Southern District of West Virginia. New cases filed in this District likely would be docketed before the undersigned or before one of the judges named above who volunteered to preside over a third-round trial. Should future plaintiffs bring cases in the Southern District of West Virginia or another appropriate venue, the Sixth Circuit's *Abbott* decision and this Court's rulings provide ample guidance on the factual and legal issues in this litigation.

## CONCLUSION

After nearly 12 years of litigation before this Court, the Court **GRANTS** Plaintiffs' Co-Lead Counsel's Motion (ECF No. 5504.)  The Court **SUGGESTS DISSOLUTION** of the C-8 MDL to the JPML.  If the JPML agrees with this Court's recommendation, upon the JPML's order dissolving the C-8 MDL, the Cour**t VACATES** the duties and responsibilities of Plaintiffs' Leadership Counsel set forth in Case Management Order No. 1.  The Court retains jurisdiction over the parties and the current cases to enforce its orders and as necessary to effectuate the completion of settlements and associated distributions of funds, fees, and any common benefit assessments.  The Court **DIRECTS** the Clerk to send a copy of this Order Suggesting Dissolution of the C-8 MDL to the JPML.

**IT IS SO ORDERED.**

**Date:  2/12/2025**                                                        s/Edmund A. Sargus, Jr.
                                                           **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**